## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Criminal No. 21-CR-53 (CJN)** |
| | : | |
| | : | |
| **EDWARD JACOB LANG,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S
### MOTION FOR A DUE PROCESS VIOLATION FINDING
### AND TO DISMISS INDICTMENT

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, respectfully submits this opposition to defendant Edward Jacob Lang's

Motion for a Due Process Violation Finding and to Dismiss Indictment for Want of Jurisdiction.

ECF No. 69. Lang's arguments lack legal and factual support and are otherwise meritless.

### Factual and Procedural History

On January 15, 2021, United States Magistrate Judge G. Michael Harvey issued a sealed

warrant for Lang's arrest for crimes he committed during the January 6, 2021, attack on the United

States Capitol. ECF Nos. 1, 27. Lang was arrested in Newburgh, New York, the next day. ECF

No. 27. On January 19, 2021, Lang made his initial appearance before United States Magistrate

Judge Andrew E. Krause in the Southern District of New York. *Id*. Pursuant to Rule 5(c)(3),

Federal Rules of Criminal Procedure, and based on a sworn affidavit, the Court determined that

there was a valid warrant for Lang's arrest and that Lang was the person identified therein. *Id*.

During the hearing, which Lang and his current attorney of record attended remotely, Judge Krause

committed Lang to the custody of this Court and ordered that he be transported to the District of

Columbia. *Id*. at 7. Lang was detained pending trial and made his first appearance in this jurisdiction on February 9, 2021. February 9, 2021 Minute Order. At that hearing, with no objection from Lang, United States Magistrate Judge Zia Faruqui ordered Lang to remain detained pending trial. *Id*.

In the meantime, on January 29, 2021, a grand jury indicted Lang on 11 charges: two counts of Assaulting, Resisting, or Impeding Certain Officers with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 111(a) and (b); one count of Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a); three counts of Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); one count of Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; one count of Disorderly and Disruptive Conduct in a Restricted Building or Grounds, with a Deadly or Dangerous Weapon, in violation of Title 18 U.S.C. § 1752(a)(2) and (b)(1)(A); one count of Engaging in Physical Violence in a Restricted Building or Grounds, with a Deadly or Dangerous Weapon, in violation of Title 18 U.S.C. § 1752(a)(4) and (b)(1)(A); one count of Disorderly Conduct in a Capitol Building, in violation of Title 40 U.S.C. § 5104(e)(2)(D); and one count of Act of Physical Violence in the Capitol Grounds or Buildings, in violation of Title 40 U.S.C. § 5104(e)(2)(F). ECF No. 5. On September 15, 2021, the grand jury returned a superseding indictment removing two counts of civil disorder and adding several counts of assaulting law-enforcement officers. ECF No. 36. These charges stemmed from Lang's presence at the front of the police line on the Lower West Terrace of the United States Capitol on January 6, 2021 for more than an hour, where he engaged with officers, donning a gas mask and assaulting them, including with a stolen riot shield and an aluminum baseball bat.

After the original indictment, on April 29, 2021, this Court issued a protective order regulating the disclosure of materials produced in discovery. ECF 18. The order called for the defendant to sign a statement expressing agreement with the Order's prohibition against recording personal protected identification information. ECF 18 at 3. The defendant never signed the statement and has not consented to have his counsel sign on his behalf. ECF 50.

On August 23, 2021, Lang moved for release into the High Intensity Supervision Program with GPS monitoring. ECF No. 29. Among other things, Lang alleged that he had been physically abused and retaliated against at the District of Columbia Jail, where he was then incarcerated. *Id.* at 9-12. Lang further complained that he could not communicate privately with his attorneys and could not review all of the discovery in this case and asked to be provided with a laptop so that he could do so. *Id.* at 12-19. Lang further claimed that he was neither a risk of flight nor a danger to the community, and thus should be released on conditions. *Id.* at 19-25.

This Court denied Lang's motion at a September 20, 2021, hearing, September 20, 2021 Minute Order, finding, among other things, "the particular circumstances" of Lang's crimes to be "even more troubling" than the statutes under which the crimes were charged: Lang "was at times at the very front of a large mob seeking to enter the Capitol. Mr. Lang appears to have been one of the leaders. . . and instigators of the violence." Transcript of Arraignment/Status Conf./Motion Hearing, *United States v. Lang*, 21-cr-53-CJN (D.D.C. Sept. 21, 2021) ("Tr.") at 71. Video showed "Lang in front of the crowd, verbally encouraging violence, hitting Capitol Police with at times a metal baseball bat, another time a riot shield and also kicking a police officer[.]"*Id.* This conduct "continued over the course of several hours[.]" *Id.* at 72. Even after the attack on the Capitol, Lang "appear[ed] interested in the possibility of continuing to attack the United States government[.]"

3

*Id.* at 77. Thus, unlike other January 6 defendants, Lang "both engaged in substantial violence on the day of January 6th and then thereafter in his own messages both did not reflect any remorse about those events and indeed said very concerning things about the inauguration[.]" *Id.* The Court thus denied Lang's motion for release. *Id.* at 78.

With regard to Lang's complaints about the conditions at the D.C. Jail and his inability to review discovery, the Court noted that the "Jail has various policies in place to permit, at least to some extent, the review of that information." Tr. at 78. However, "the defense ha[d] not attempted to use those procedures to allow Mr. Lang to review the video and other record evidence." *Id.* The Court invited "additional motions" if the Jail's procedures proved "unworkable," but found that Lang's motion raised an "unripe dispute because defense counsel has not attempted to work under the currently operating policy." *Id.* And while the Court was "concerned about ensuring that Mr. Lang has the ability to talk with counsel," it was "not prepared to intervene at this time into how these communications are occurring." *Id.* at 80-81. On that issue, too, the Court denied the motion without prejudice and invited Lang to bring it again if he had "sufficient additional evidence about his ability to mount [a] defense." *Id.* at 82-83.

Lang appealed this Court's denial of his motion for pretrial release. *See United States v. Lang*, No. 21-3066 (D.C. Cir.). Among other things, Lang argued that the conditions at the D.C. Jail, and his inability to access discovery and meet with his lawyers there justified his pretrial release. Memorandum of Law and Fact on Behalf of Defendant-Appellant, Edward Jacob Lang, *United States v. Lang*, No. 21-3066 (D.C. Cir.) at 12-17. On January 12, 2022, the D.C. Circuit affirmed this Court's order denying Lang's motion for pretrial release in a per curiam judgment. Rejecting Lang's conditions-of-confinement argument, the court stated:

> [Lang] also argues that conditions at the D.C. Jail—specifically, his alleged inability to communicate confidentially with counsel and review discovery— should have warranted pretrial release. [Lang] relies primarily on the proposed Federal Bail Reform Act of 2020, which would have amended 18 U.S.C. § 3142 to provide that district courts deciding whether a defendant is a danger to others must consider, among other things, "the conditions of confinement, including . . . the person's ability to privately consult with counsel and meaningfully prepare a defense." H.R. 9065, 116th Cong., § 2 (2020). However, [Lang] concedes that the Federal Bail Reform Act of 2020 was not enacted into law. And as the Supreme Court has opined, "[o]ur charge is to give effect to the law Congress enacted." *Lewis v. Chicago*, 560 U.S. 205, 217 (2010).

Judgment, *United States v. Lang*, No. 21-3066 (D.C. Cir.) (Jan. 12, 2022).

On April 5, 2022, Lang moved to dismiss Count Nine of the indictment, which charged him with obstructing an official proceeding in violation of 18 U.S.C. § 1512(c)(2). ECF No. 54. This Court granted that motion June 7, 2022 Minute Order. On June 22, 2022, the United States appealed the Court's dismissal of Count Nine. ECF No. 65. The government filed its opening brief in that appeal—which was consolidated with others addressing the same issue—on August 8, 2022.

On July 15, 2022, Lang filed the instant motion claiming that he has "has suffered the deprivation of numerous constitutionally protected due process rights throughout the course of his pre-trial detention[.]" ECF No. 69. Based only on allegations, Lang seeks a "finding" to that effect, as well as "an order permitting him to possess in his cell a laptop computer so he can review all discovery and participate in his own defense, and to restrain the marshal's from threating or precluding Lang that he cannot exercise his First Amendment rights in speaking to anyone he so chooses to[.]" *Id.* (quoted verbatim)). Lang also seeks dismissal of the indictment on the ground that "the federal district court has failed to lawfully acquire jurisdiction over the 'Person' of Mr. Lang." *Id.*

Much of Lang's motion is dedicated to his alleged treatment at the D.C. Jail, where he has not been confined since February 2022. *See* ECF No. 69-1 at 5-14. According to Lang, he is currently incarcerated in Alexandria, Virginia, where he has been imprisoned since April 2022. *Id.* at 15. Lang alleges that, "for the first six months" of his confinement in Alexandria, he did not have "secure phone access to [his] attorneys[.]" *Id.* at 16.[1] Lang complains that, when he saw his attorney in person on April 2, 2022, he was "placed in a community room where there was no attorney client privileged means of communications at all" and that he was restrained in such a way that "made Mr. Lang's attorney visit both painful and non productive." *Id*. Also, according to Lang, on July 13, 2022, he "received a message that he was in violation of a United States Marshals (USMS) policy, whereby he could not communicate with the media." *Id*. On at least 30 different occasions, Lang has communicated while detained with print or broadcast media outlets.[2]

## ARGUMENT

### I.      Lang Seeks Relief That Has No Legal Basis.

As an initial matter, there is no legal basis for the relief Lang seeks in this motion. Lang requests what is, in effect, an advisory opinion declaring that he "has suffered the deprivation of numerous constitutionally protected due process rights throughout the course of his pre-trial detention." ECF No. 69. In addition to this "finding that his due process rights have been violated," Lang seeks the "dismissal of his Superseding Indictment." ECF No. 69-1 at 19. He also demands an order permitting him to possess a laptop computer in his cell, and to restrain the USMS from

---

[1] Lang filed this motion just three months after he says he was transferred to Alexandria.

[2] The actual number of such contacts is likely higher, because Lang has used the accounts of other detainees to make calls, which in itself is an entirely separate violation of detention facility policy and requirements. Additionally, not all of Lang's broadcasts like the ones referenced in in this response, *see infra* at 24-25 and 27, remain accessible online.

enforcing a policy addressing pretrial detainee communications with the media. His motion fails to provide legal support for any of these demands.

A. *This Court Should Decline To Make Findings That Lack Any Connection To A Remedy*

"'[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions.'" *Flast v. Cohen*, 392 U.S. 83, 96 (1968) (quoting C. Wright, Federal Courts 34 (1963)). But that is largely what Lang seeks here: a "finding that his due process rights have been violated" when the violations he complains of are moot. Lang complains of his treatment at the D.C. Jail, where he was detained between February 2021 and February 2022, ECF No. 69-1 at 5-14, and to a lesser extent, he criticizes his treatment at FCI Lewisburg, where he was detained between February and April, 2022. Lang is no longer being held at either facility, and thus there is no ongoing "injury" to remedy, particularly not in the context of this criminal matter. *See generally Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (explaining that Article III standing requires that "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision'") (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)).  Whatever the merits of his claims about either facility (and the United States makes no concession here that his unsupported allegations have merit), in the context of the above-captioned case, contentions about facilities where he was formerly held are moot. Lang fails to show what purpose any finding about these former facilities would serve in his ongoing criminal matter.

B.  *Lang Fails To Present Grounds For The Extraordinary Remedy Of Dismissing An Indictment*

Dismissal of an indictment is an extraordinary remedy reserved only for limited circumstances implicating fundamental rights. *United States v. Ruiz Gutierrez*, No. CRIM.A. 04-470 (ESH) at *1, 2005 WL 1115952 (D.D.C. May 11, 2005) (*citing United States v. Li*, 206 F.3d 56, 61-62 (1st Cir. 2000) (*en banc*)). Courts characterize the remedy of dismissal as "drastic," *United States v. Morrison*, 449 U.S. 361, 367 (1981), *United States v. Romano*, 706 F.2d 370, 374 (2d Cir. 1983) (dismissal of an indictment is "the most drastic remedy"), *United States v. Rogers*, 751 F.2d 1074, 1076 (9th[th] Cir. 1985) (because "it is a drastic step, dismissing an indictment is a disfavored remedy") and "draconian," *United States v. Gonzalez*, 248 F.3d 1201, 1205 (10th Cir. 2001).

Judges treat demands to dismiss an indictment with caution for reasons including the ongoing public interest in the administration of justice. *E.g.*, *Li*, 206 F.3d at 62. Additionally, the dismissal of an indictment encroaches on the role of the grand jury, *id.*, and the independence of the prosecutor, *e.g., United States v. Slough*, 679 F.Supp.2d 55, 61 (D.D.C. 2010)(*citing United States v. Isgro*, 974 F.2d 1091 1097 (9th Cir. 1992), and thus implicates concerns with the separation of powers. Dismissal is impermissible absent a clear basis in fact and law for doing so. *Slough*, 679 F.Supp.2d at 61; *United States v. Robinson*, Criminal Action No. 16-98 at *6, 2021 WL 2209403 (D.D.C. May 31, 2021); *see also United States v. Darui*, F.Supp.2d 25, 39 (D.D.C. 2009) (to obtain extraordinary remedy of dismissal, defendant must clearly identify the alleged government misconduct; denying post-trial motion to dismiss where defendant had not done so).

To justify dismissal of an indictment, it is not sufficient for a defendant to establish some wrongdoing by the government. Instead, a defendant must show wrongdoing that affects his fundamental rights in a way that taints the indictment or deprives him of a fair trial. *See United*

*States v. Ghailani*, 751 F.Supp.2d 502, 505 (S.D.N.Y. 2010) (for a due process violation to result in dismissal of an indictment there must be a causal connection between the violation and the deprivation of the defendant's life or liberty threatened by the prosecution; relief against the government is only appropriate if and only if a conviction would be the product of the misconduct violating the due process clause), *aff'd on other grounds,* 733 F.2d 29 (2d Cir. 2013), *cert. denied*, 572 U.S. 1010 (2014). In *Ghailani*, the defendant claimed that the Central Intelligence Agency (CIA) detained and interrogated him overseas for months under abusive conditions because of the same conduct for which he was later indicted. Because the CIA detention did not influence the decision to indict or provide evidence the prosecution was using for trial, the district court rejected Ghailani's effort to dismiss the indictment on due process grounds. *See also United States v. Valencia Vergara*, 264 Fed.Appx. 832, 834 (11th Cir. 2008) ("absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate")(quoting *Morrison*, 449 U.S. at 365); *United States v. Lin Lyn Trading, Ltd.,* 149 F.3d 1112, 1117 (10th Cir. 1998)(even where there is a deliberate violation of an important right or privilege, it is the defendant's burden to show prejudice or a substantial threat thereof, and not the government's burden to show lack of prejudice).

Lang does not show any connection between the conditions of his detention, which did not exist on January 6, 2021, and the conduct charged in his indictment. He does not allege that any part of the government's evidence for trial was acquired as a consequence of confinement conditions. He does not explain how conditions at any detention facility will result in his unfair conviction. Thus, he fails to show the required connection between the conditions of detention and

any prejudice in his case, thereby failing to provide the clear basis in fact that is necessary to justify dismissal of an otherwise valid indictment.

There is likewise no legal basis for Lang's request that the indictment be dismissed based on the (alleged) conditions of his past or present pretrial confinement.[3] Lang cites no case in which a court has dismissed an indictment because of the conditions of the defendant's pretrial detention, and the government is aware of none. *See generally United States v. Dominguez-Caicedo*, 40 F.4th 938, 949 (9th Cir. 2022) ("Indeed, the development of the outrageous government conduct concept [requiring dismissal of the indictment] suggests that it does not even apply to conditions of pretrial detention."); *United States v. Jayyousi*, 657 F.3d 1085, 1111 (11th Cir. 2011) ("Although we have never acknowledged the existence of the outrageous government conduct doctrine, we note that the actionable government misconduct must relate to the defendant's underlying or charged criminal acts.").[4]

Moreover, when defendants have attempted to raise conditions of pretrial detention as grounds for the dismissal of criminal charges, district courts have rejected such claims. *United States v. Hipp*, 3:14-cr-00554-JMC-5 at *1-2, 2015 WL 2240377 (D.S.C. May 12, 2015) (denying

---

[3] The assertions in Lang's motion are not supported by an affidavit or any other evidence. They are merely unsworn statements in a brief, which do not constitute evidence. *See, e.g.*, *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1269 (11th Cir. 2016) ("a sentence in an unsworn brief is not evidence"); *Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009) ("An attorney's unsworn statements in a brief are not evidence"); *Skyline Corp. v. Nat'l Labor Relations Bd.*, 613 F.2d 1328, 1337 (5th Cir. 1980) ("Statements by counsel in briefs are not evidence.").

[4] *See also United States v. Cottingham*, 5:19-cr-00010-LCB-JHE-1 at *4, 2020 WL 4341720 (N.D. Ala. July 6, 2020) ("The first clue that Cottingham's argument is misplaced is that none of the cases Cottingham cites for the proposition that his indictment is due to be dismissed are cases in which the court actually dismissed the indictment"). Similarly, none of the cases Lang cites involve a court's dismissal of an indictment, let alone a dismissal because of detention conditions.

motion to dismiss alleging detention center's failure to provide the defendant with adequate pain medication); *United States v. Bennett*, CR-08 447-RE and CR-08 441-RE at *4, 2011 WL 285221 (D. Or. Jan. 6, 2011) (defendant's claims that his pretrial confinement conditions violated the Eighth Amendment were irrelevant to his pending bank robbery charges and did not provide a basis for dismissal of his indictment); *United States v. Cottingham*, 5:19-cr-00010-LCB-JHE-1 at *4, 2020 WL 4341720 (N.D. Ala. July 6, 2020)( denying motion to dismiss because even if the defendant's due process rights were violated for failure to timely treat his neurocognitive disorder, he had not demonstrated prejudice from confinement, either to his ability to regain competency or to his ability to defend against the charges at trial, that dismissal of the indictment would remedy); *United States v. Zapata-Herrera*, No. 14-cr-3639-GPC at *2-3, 2015 WL 4878319 (S.D. Cal. August 14, 2015)(although cases provided strong support that defendant's due process rights were violated because of delay in treating his incompetency following commitment, cases did not support dismissal of indictment as appropriate remedy)(collecting cases).

Accordingly, Lang fails to justify the extraordinary, drastic, disfavored, and draconian remedy of dismissing a facially valid indictment. While such dismissal would be inappropriate, Lang has also failed to show that the particular claims he raises are properly before this Court in his criminal case. Because Lang objects to the conditions of his confinement, his objections are properly raised in a separate civil action rather than a criminal prosecution. *See Hipp*, 2015 WL 2240377 at *1 (noting that the Due Process Clause prohibits deliberate indifference to the serious medical needs of a detainee, but the appropriate relief for the lack of such care is through a civil lawsuit pursuant to 42 U.S.C. § 1983, *citing Romanelli v. Suliene*, 615 847 F.3d 848 (7th Cir. 2020)); *Bennett*, 2011 WL 285221 at *4 (a civil rights action is the appropriate means of raising a

constitutional challenge to conditions of confinement, *citing Badea v. Cox*, 931 F.3d 573, 574 (9th Cir. 1991)); *United States v. Simpson*, No. 3:09-CR-249-D 06, 2010 WL 4340683, at *2 (N.D. Tex. Oct. 26, 2010) (proper remedy, if any, for pretrial detainee objecting to conditions of confinement was not through motion for release from detention but instead through civil action), *aff'd*, 408 F. App'x 830 (5th Cir. 2011); *see also Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) ("[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life."); *United States v. Banks*, 422 F. App'x 137, 138 n.1 (3d Cir. 2011) (per curiam) ("We agree with the District Court that a motion filed in his criminal case was not the proper vehicle for raising the claims about prison conditions contained in that motion"); *United States v. Garcia*, 470 F.3d 1001, 1003 (10th Cir. 2006) (noting that, because the defendants' "challenge[s] to the conditions of confinement . . . were raised in motions filed in their respective criminal cases . . . they were properly denied by the district court"); *United States v. Folse*, Nos. CR 15-2485 JB, CR 15-3883 JB, 2016 WL 3996386, at *15 (D.N.M. June 15, 2016) ("The general rule is that a defendant must file a separate civil action to address his conditions of confinement."); *United States v. Luong*, No. Cr. 99-433 WBS GGH, 2009 WL 2852111, at *1 (E.D. Cal. Sept. 2, 2009) ("As several courts have recognized, the proper procedure to redress a defendant's grievances regarding treatment within a jail or prison is to file a civil suit against the relevant parties . . . rather than a motion in his criminal case."); *United States v. Wells*, Cr. No. 3:02CR-20-H, 2007 WL 3025082, at *2 (W.D. Ky. Oct. 15, 2007) ("[T]o the extent Wells is challenging his condition of confinement by claiming that his life is in danger, the appropriate course would be to file a civil action against the alleged wrongdoers, not a Rule 60(b) motion in his criminal action."); *United States v. Bencomo-Chacon*, No. CR.A. 07CR00095MSK, 2007 WL

2021850, at *3 (D. Colo. July 11, 2007) ("The Government argues that the Court cannot order that the Defendant receive any particular treatment within this context of this case, and that any claim of inadequate treatment must be made in a civil lawsuit. . . . The Court agrees that a request for provision of particular medical treatment cannot be maintained within the context of a criminal case.").

Proper parties to any claim about conditions of confinement include the United States Marshal and the warden of the facility where the defendant is being held. Neither are parties to the defendant's criminal prosecution. *See United States v. Cote*, No. 219CR134FTM38NPM, 2020 WL 4339351, at *2 (M.D. Fla. July 28, 2020) ("The only parties to this criminal action are the Government and Defendant. But Defendant's claims of not receiving a medical test involve the Marshal and Sheriff of Glades County who are responsible for his custody and care. Entertaining Defendant's motion would thus implicate serious due process concerns for them."). Accordingly, the defendant's criminal case is not the proper forum for the claims he raises in the above-captioned motion, and allowing him to seek adverse rulings against non-parties would create rather than remedy any due process violation.

Assuming for argument's sake that the defendant established a hypothetical violation of his due process or constitutional rights, dismissal of his indictment is not the remedy of choice. Instead, a district court must tailor relief that is appropriate to the individual circumstances of the defendant's case. *Morrison*, 449 U.S. at 365. Dismissal without consideration of less drastic remedies amounts to an abuse of discretion. *United States v. Lin Lyn Trading, Ltd.*, 149 F.3d 112, 1118 (10th Cir. 1998). Lang has not shown that dismissal is the only or even the appropriate recourse for the violations he claims. He fails to show either a clear basis in fact or in law for the

13

disfavored remedy he demands. This Court should therefore reject the demand for dismissal of the indictment.

**II.  Lang's Jurisdictional Arguments are Nonsensical.**

The Court can also easily reject Lang's challenge to its "jurisdiction" over his person. ECF No. 69-1 at 21-37. Here, a United States magistrate judge in this District issued a warrant for Lang's arrest for crimes he committed during the January 6, 2021, attack on the United States Capitol. ECF No. 1, 27. Lang was arrested at his home in Newburgh, New York, the next day. ECF No. 27. He made his initial appearance before a magistrate judge in federal court in the Southern District of New York, *id.*, and was then transported to this District and made his first appearance in this jurisdiction on February 9, 2021. February 9, 2021  Minute Order. A federal grand jury has indicted Lang for acts made punishable by enactments of Congress.  ECF No. 36.

Nothing about this process violated any law. Under Federal Rule of Criminal Procedure 4(c)(2), "[a] warrant may be executed, or a summons served, within the jurisdiction of the United States or anywhere else a federal statute authorizes an arrest." Under Rule 5(a)(1)(A), "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge . . . unless a statute provides otherwise." Pursuant to Rule 5(c)(2), "[i]f the defendant was arrested in a district other than where the offense was allegedly committed, the initial appearance must be: (A) in the district of arrest," among other places. The magistrate judge then "must transfer the defendant to the district where the offense was allegedly committed if: (i) the government produces the warrant, a certified copy of the warrant, or a reliable electronic form of either; and (ii) the judge finds that the defendant is the same person named in the indictment,

information, or warrant[.]" Fed. R. Crim. P. 5(c)(3)(D).  Lang does not dispute compliance with any of these steps.[5]

Instead, he disputes the existence of personal jurisdiction in his case; however, personal jurisdiction in a federal criminal prosecution is "supplied by the fact that the defendant is within the territory of the United States." *United States v. Burke*, 425 F.3d 400, 408 (7th Cir. 2005); *United States v. McLaughlin*, 949 F.3d 780, 781 (2d Cir. 2019) ("A defendant need not acquiesce in or submit to the court's jurisdiction or actually participate in the proceedings in order for the court to have personal jurisdiction over the defendant"); *United States v. White*, 480 F. App'x 193, 194 (4th Cir. 2012) (per curiam) ("Physical presence in the United States usually supplies the only necessary prerequisite for personal jurisdiction in a federal criminal prosecution"). Where a district court has subject matter jurisdiction over the offenses charged (which Lang does not dispute) it is "axiomatic" that the court has personal jurisdiction over the individuals charged in the indictment. *E.g.*, *United States v. Halkbank*, No. 15-cr-867 at *7, 2020 WL 5849512 (S.D.N.Y. Oct. 1, 2020); *also United States v. Williams*, 341 U.S. 58, 65, 71 S.Ct. 595, 95 L.Ed. 747 (1951) ("The District Court had jurisdiction of offenses against the laws of the United States. Hence, it had jurisdiction of the subject matter, to wit, an alleged violation of a federal conspiracy statute, and, of course, of the persons charged." (internal citation and footnote omitted)). Moreover, whether a defendant is properly extradited does not affect the court's authority over the charges against him. *See United States v. Alvarez-Machain*, 504 U.S. 655 (1992).

---

[5] Any such dispute would not merit dismissal.  Even an illegal arrest, which did not occur here, has never been viewed, without more, as a bar to subsequent prosecution. *United States v. Crews*, 445 U.S. 474 (1980) (*citing Gerstein v. Pugh*, 420 U.S. 103, 119 (1975)); *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886).

In an effort to overcome such fundamental principles, Lang resorts to the invocation and misquotation of inapplicable federal and state statutes. For example, he attempts to rely on the Assimilative Crimes Act of 1948, 18 U.S.C. § 13(a), ECF 69-1 at13, 23, which irrelevantly provides for the adoption of state laws for areas within the special maritime and territorial jurisdiction of the United States. When accurately quoted, that statute provides:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, or on, above, or below any portion of the territorial sea of the United States not within the jurisdiction of any State, Commonwealth, territory, possession, or district is guilty of any act or omission which, although not made punishable *by any enactment of Congress*, *would be punishable* if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 US.C. § 13(a) (emphasis added). The emphasized provisions of the statute were omitted from Lang's quotation and analysis of Section 13.[6] When correctly stated, the provisions of Section 13(a) are irrelevant to this case, because regardless of whether Lang's offense occurred in a place not within the jurisdiction of any State, he is only charged with offenses under statutes enacted by

---

[6] The defendant's quotation of Section 13, with omissions, appears in his Memorandum of Law as follows:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in Section 7 of this title, or on, above, or below any portion of the territorial sea of the United States [**not within the jurisdiction of any state**,] commonwealth, territory, possession, or district is guilty of any act or omission which, although not made punishable if committed or omitted within the jurisdiction of the state, territory, possession, or district in which such place is situated, by the laws thereof enforced at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment. (Emp added)

ECF No. 69-1 at 23 (bracketing and emphasis in defendant's Memorandum).

Congress.  Under the plain and unambiguous terms of this statute, there is no basis for application of state law.  Lang's meritless challenge to this Court's personal jurisdiction fails for any number of reasons; however, insofar as his challenge depends on a requirement to apply state law, Section 13 creates no such requirement for this case because Lang is charged with federal offenses.

None of the cases Lang cites address personal jurisdiction in a federal criminal case or call for an interpretation of Section 13 that differs from the plain meaning of its accurately quoted language. For example, *Pennoyer v. Neff*, 95 U.S. 714 (1878) concerned a civil *in rem* proceeding for recovery of a tract of land; not only is *Pennoyer* irrelevant to the personal jurisdiction challenge that Lang raises here, its holding was overruled in *Shaffer v. Heitner*, 433 U.S. 186 (1977). Similarly irrelevant is *United States v. Fox,* 94 U.S. 315 (1876), which involved a challenge to a will leaving property to the United States from a decedent in a state that only allowed the transfer of property to natural persons. *Gonzales v. Raich*, 545 U.S. 1 (2005), involved a declaratory judgment action challenging the application of the Controlled Substances Act to those growing or using marijuana for medicinal purposes; the decision did not address personal jurisdiction or construe 18 U.S.C. § 13. *Cuyler v. Adams*, 449 U.S. 433 (1981), involved a prisoner convicted of Pennsylvania state offenses whose transfer was sought by New Jersey for violation of its robbery statutes. The decision in *United States v. Love*, 425 F.Supp. 1248 (S.D.N.Y. 1977), concerned application of 18 U.S.C. § 1073 (flight to avoid prosecution), a statute which allows federal agents to arrest fugitives charged with crimes under state laws; the decision does not address personal jurisdiction over federal criminal charges or require federal authorities to comply with state extradition procedures in purely federal cases. In sum, the defendant fails to provide any legal authority supporting his challenge to personal jurisdiction.

17

Lang's effort to benefit from the provisions of another statute, 18 U.S.C. § 3182, (which he again does not quote in full), fares no better than his attempt to use Section 13 as a shield against prosecution. Section 3182 falls under Title 18's chapter addressing extradition, and it provides:

> Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District, or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District, or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.

18 U.S.C. § 3182.  Under its plain terms, the statute concerns the extradition of a person from one state to another state. The statute makes no reference at all to the federal government and imposes no requirements on federal authorities. Lang was not charged or demanded by any State or Territory, but instead by the federal government. He was arrested by federal, not state authorities. He had no right to extradition proceedings. *See Lovejoy v. Owens*, 94-4224, 1996 WL 287261 (6th Cir. May 28, 1996) (because neither Ohio nor Michigan authorities arrested defendant who was arrested by federal authorities, he had no right to extradition proceedings).

In any case, Lang does not dispute his presence in the United States, which placed him within the jurisdiction of the United States.  As a matter of simple common sense, he did not need to be 'extradited' from one location within United States jurisdiction to another location also within United States jurisdiction for prosecution not by a state but by the United States

government.[7] *See also* 18 U.S.C. 5 (defining "United States" in the territorial sense as including "all places and waters, continental or insular, subject to the jurisdiction of the United States, except the Canal Zone"). Moreover, as noted above, Lang's U.S. presence was all that was needed for this Court's personal jurisdiction. Lang fails to demonstrate the absence of such jurisdiction, and similarly fails to provide any valid basis to dismiss the indictment. This Court should thus summarily deny his jurisdictional challenge and demand for dismissal.

### III.  Lang's Request for a Computer Is Meritless

Inconsistently with his demand to dismiss the indictment, and perhaps in anticipation of the denial of that demand, Lang seeks an order allowing him to possess a laptop computer in his cell to review discovery. His memorandum of law makes only a passing reference to discovery, ECF No. 69-1 at 16, 20, in a list of other conditions that supposedly reflect due process violations; however, Lang provides no legal support for the proposition that his own lack of access to discovery material, if any, raises constitutional concerns or supports his demand for a personal computer he can use in his cell.  Moreover, Lang's attorney has received ample discovery materials, and nothing precludes Lang from making private arrangements with his attorney to access relevant materials. *But see infra* at 22-23 (noting Lang's refusal to comply with this Court's protective order).

There is no general constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 525, 846 (1977); *United States v. Celis,* 608 F.3d 818, 831 (D.C. Cir. 2010). Accordingly, Lang's demand is not one that implicates constitutional concerns. Moreover, his

---

[7] Lang's reasoning would produce the absurd result that a defendant's arrest at his home in Newburgh, New York would require his extradition from the State of New York to the federal Southern District of New York if federal charges were pending there.

complaint does not involve allegations of any failure to produce discovery or that discovery which the government has produced to his attorney is incomplete. Discovery in this case has been voluminous, as Lang's defense counsel has acknowledged.

Instead, Lang's objection rests on the faulty premise that he must himself be able to review every item within the prosecution's substantial discovery production. As noted, Lang is represented by counsel. His assumption that he must personally review every shred of discovery material is incorrect. *See, e.g., Celis*, 608 F.3d at 840-41. In *Celis*, the court of appeals rejected the claim that any requirement existed to translate discovery for a represented defendant who did not speak English. Because defense counsel was able to review English language discovery and discuss it with the defendant, the defendant's inability to personally review and understand the documents did not require the trial court's intervention or any order for translation.

In this case, this Court has also recognized that Lang need not review every single item produced in discovery.[8] Similarly, district courts have unanimously and explicitly rejected and have found no authority for the contention that a represented defendant must personally review all discovery. *E.g., Carillo v. United States,* 995 F.Supp. 587, 591 (D.V.I. 1998) ("[T]here is no constitutional duty to share discovery documents with petitioner. Petitioner cites no case law for this proposition, and this court finds none"); *United States v. Ingram*, No. 3:19CR113-MCR, 2021 WL 4134828, at *3 (N.D. Fla. Sept. 10, 2021)(professional obligations of defense counsel did not mandate that defendant see every item of available discovery material and court was not aware of any such constitutional requirement); *United States v. Thompson*, No. 2:10-CR-200-DBH, 2013

---

[8] *See* Tr. at 65 ("in practical terms, he [the defendant] very likely does not need to review every single minute of every video").

WL 1809659, at *6–7 (D. Me. Apr. 29, 2013) (rejecting argument that defendant needed to personally review discovery in order to enter valid plea because Courts appoint lawyers for defendants in criminal cases so that the lawyers can do the legwork in preparing for trial and give sound advice about whether a defendant should go to trial or plead guilty), *aff'd*, 851 F.3d 129 (1st Cir. 2017); *United States v. Stork*, No. 3:10-CR-132 JD, 2014 WL 1766955, at *7 (N.D. Ind. May 1, 2014)(a defendant represented by counsel does not have a right under either the Constitution or the Federal Rules of Criminal Procedure to be provided with discovery personally)(collecting cases); *United States v. Neff*, No. 3:11-CR-0152-L, 2013 WL 30650, at *6 (N.D. Tex. Jan. 3, 2013)("Contrary to what Defendant contends, he does not have a constitutional right to a personal laptop to help his attorney prepare his defense. Defendant is represented by counsel, who does not have any limitations on computer access or usage"), *aff'd,* 544 F. App'x 274 (5th Cir. 2013); *cf. United States v. Faulkner*, No. 3:09-CR-249-D(02), 2011 WL 3962513, at *4 (N.D. Tex. Sept. 8, 2011).[9]

---

[9] In *Faulkner*, the trial court issued an order allowing Faulkner to personally review electronically stored discovery on his own computer while detained. Nevertheless, the court denied Faulkner's efforts to delay his trial because he lacked sufficient time to complete his review of this discovery, reasoning that "Faulkner's personal review of the disclosed digital data prior to trial is *not* constitutionally required or otherwise legally mandated where, as here, Faulkner is represented by counsel who has had the ability to review the discovery before trial. And Faulkner has not demonstrated that his attorney has not had sufficient time to review the disclosed digital data, or that he has been unable in some specific way to assist his attorney in preparing his defense. Rather, Faulkner contends generally that he will be unable to assist his attorney in preparing his defense because he has not had sufficient time to personally review all the data before trial. The court finds that Faulkner has not shown a likelihood of serious prejudice from the court's denial of a continuance, and this factor weighs against granting a continuance. The court concludes that Faulkner's general concerns do not justify granting his motion." *Id*. at *4 (original emphasis). Like Faulkner, Lang has not identified any specific way in which he is precluded from assisting in his own defense absent his own computer, and he offers no authority showing he has any right to such relief.

This Court should also evaluate Lang's demand for provision of his own laptop in light of his refusal to comply with the protective order this Court issued. Appropriate grounds exist to restrict Lang's access to discovery, or at the very least to reject his demand for special treatment to facilitate such access, when Lang will not comply with this Court's protective order. Not surprisingly, in cases with protective orders, district courts have also ruled that criminal defendants have no right to personally review all discovery materials. *See, e.g., United States v. Torres*, No. 20-CR-00418, 2020 WL 4500046, at *5 (D.N.J. Aug. 5, 2020) ("The Government's proposed protective order does not violate Defendant's Sixth Amendment rights. Even with the protective order in place, Defendant will maintain the full effective assistance of counsel. The parties agree that the Government's proposal would allow Defendant to review all discovery, other than "Protected Information." Although Defendant will not personally have access to "Protected Information," Defendant's counsel will be able to review the "Protected Information" and can discuss it with Defendant to prepare his client's defense"); *United States v. Farese*, No. CR 21-877 (KM), 2022 WL 788880, at *6 (D.N.J. Mar. 15, 2022) ("it is not unusual in a criminal case to restrict the dissemination of confidential materials and prevent copies from being made and shared. Indeed, courts in this district have found that excluding even *defendants themselves* from reviewing information does not violate the Sixth Amendment") (original emphasis; internal citations omitted); *Noble v. United States*, No. 2:10-CR-51-JRG, 2018 WL 4441240, at *11 (E.D. Tenn. Sept. 17, 2018) (considering ineffective assistance of counsel claim, ruling that petitioner "possessed no constitutional right to physical copies of discovery" and quoting trial judge's statements that "the United States has historically, and as I understand it to this day, still places limits on the copying and distribution of discovery materials that are provided. So the fact that

[defense counsel] has not provided you with certain discovery materials is not a matter that troubles me at all. He has done, it sounds like, what he is supposed to do, which is to take those materials and then discuss those materials with you in preparation for this case"). In this case, Lang has declined to comply with the far less restrictive terms, compared to those in the cases above, of this Court's order; yet he seeks the Court's intervention to facilitate access to discovery through means that are not standard for his detention facility.

Finally, Lang's discovery-related demand for a computer is not ripe.  He has not identified policies or procedures at his current detention facility in Alexandria that address a detainee's access to discovery materials. He has not informed this Court of any effort to utilize those procedures.[10] He does not explain or specify in what way, if any, that such procedures now preclude his review of discovery. This Court previously took issue with defense counsel's failure to attempt to use available procedures to provide discovery to the defendant. Tr. at 67 ("The problem is you have a policy that you haven't actually—at least as it relates to videos, you haven't attempted to work under"); at 79 ("it seems to me that right now we have, essentially, an unripe dispute because defense counsel has not attempted to work under the currently operating policy"). The pending motion lacks the information this Court identified as a necessary prerequisite for consideration Lang's discovery demands. Just like his identical claim in September, Lang's discovery demand remains unripe and without proper factual support.

Accordingly, because he has failed to provide the information this Court appropriately requires, because Lang is not in compliance with an existing and unchallenged protective order,

---

[10] According to an August 24, 2022 communication from the ADC, that facility has not received any request for Lang to use a laptop.

and because Lang has no right, constitutional or otherwise, to his own laptop while detained, this Court should deny his demand for provision of a personal computer.[11]

### IV.  Lang's Meritless First Amendment Objections Are Not Properly Litigated In This Case

Lang objects to a notice he received that his communications with media violate USMS policy; he seeks an order from this Court for the USMS "not to interfere with Lang exercising his First Amendment rights in speaking to whomever he chooses to." ECF No. 69-1 at 17. Since 2011, the USMS has had a National Public Affairs Media Policy that, among other matters, addresses in-custody prisoner interviews. The policy calls for approval of such interviews from a Judge, the United States Attorney, the detainee, the detainee's defense counsel, and management for the facility (such as the Warden or Sheriff) where the prisoner or detainee is housed. It is not unreasonable *per se* for the USMS to have such a policy. *Cf.* Local Criminal Rule 57.7, Rules of the United States District Court for the District of Columbia (governing the release of information by attorneys and court personnel).  Insofar as Lang characterizes the policy as one which forecloses any contact with the media, he is wrong; instead, the policy calls for various stakeholders, including Lang himself and his counsel, to provide approval for the contact.

Lang offers no legal authority supporting the demand for the order he seeks restricting the USMS from applying its policy. He has not attempted to comply with the policy and has not alleged

---

[11] *See also* "WAR RAW The Daily Podcase: An American Political Prisoner Speaks Raw and Unfiltered," available at https://www.spreaker.com/user/usaradio/american-political-prisoner-speaks-raw-a (last checked on August 22, 2022).  At 24 minutes and 18 seconds into the broadcast on December 14, 2021, where Lang called from the D.C. Jail for an interview, Lang commented, "there's people inside on my video, on my cellphone I have um in my discovery, in my cellphone video that the government is using as evidence against me, my own cellphone video …"  Even without his own laptop, Lang is not uninformed about discovery or available evidence against him.

or offered evidence that the policy is actually interfering with his exercise of First Amendment rights.[12] He has also not addressed the scope of his First Amendment rights while detained.

Although pretrial detainees retain certain constitutional rights, those rights may still be subject to restrictions and limitations. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). The First Amendment rights of pretrial detainees are among the rights which may appropriately be restricted or limited. *Bell*, 441 U.S. at 550-51. Thus, in *Bell*, the Supreme Court upheld a prohibition against detainee receipt of hardback books, unless such books came directly from a publisher, book club or bookstore. *Id*. Lang acknowledges that the standard for such restrictions is that they must not be punitive, which will typically not be the case where they serve a legitimate governmental interest. *See* ECF No. 69-1 at 4, 18; *Bell*, at 550-51; *see also Turner v. Safley*, 482 U.S. 78, 89-90 (1987)(factors relevant to the reasonableness of a prison regulation impacting First Amendment concerns include whether a valid rational connection exists between the regulation and the

---

[12] If anything, there is evidence to the contrary. Lang states that he received notice of the USMS policy on July 13, 2022. ECF No. 69-1 at 16. After receiving such notice, without complying with the policy, Lang contacted the Washington Times and gave an interview. *See* https://www.washingtontimes.com/news/2022/jun/28/edward-jacob-lang-jan-6-prisoner-accuses-doj-denyi/ (last checked on August 23, 2022)("Mr. Lang told The Washington Times that he received a "notice of media violation" from the Alexandria, Virginia detention facility where he is being held after conducting an over-the-phone interview with The Epoch Times"). Even in interviews before he received notice of the USMS policy, interviewers questioned Lang about possible discipline for his contacts with media; however, Lang denied having concern with the potential for disciplinary consequences following such calls. *See* https://www.independent.co.uk/news/world/americas/crime/dc-jail-capitol-rioter-newsmax-b1984374.html (last checked August 23, 2022)(at the 9 second mark, Lang is asked, "So, um, Jake, uh, no doubt you're probably gonna face some repercussions for even doing this interview with us today; are you a little worried about that?" and he replies, "fear does not live in the hearts of patriots"); https://www.spreaker.com/user/usaradio/american-political-prisoner-speaks-raw-a (last checked August 23, 2022)(at 28 minutes and 30 seconds, Lang is asked, "but aren't you going to get punished when they find out you did a media interview with Wayne Allyn Root?" and Lang replies "Yeah, of course I am, but liberty, fear does not live in the hearts of patriots; I, I can't make my decisions based off of fear, that's why I showed up January 6 …").

legitimate governmental interest; whether the regulation is content-neutral; whether inmates have alternative means of exercising the right at issue; how accommodation of the constitutional right will impact correctional officers, inmates, and prison resources, and whether readily available alternatives to the regulation exist).

Lang's objection to the USMS policy suffers from the same deficiency as his argument seeking dismissal under the due process clause because it concerns the conditions of his confinement. He offers no example of a criminal case adjudicating the objection of a pretrial detainee to regulations limiting free speech. Like the detainees in *Bell* and the inmates in *Safley*, Lang must raise his First Amendment claims in a civil action involving the proper parties rather than in his criminal case, if he chooses to pursue relief from a USMS policy that has not yet resulted in any restriction of his access to the media. In the instant case, however, his motion for an order restraining the USMS, which is not a party in this criminal action, must be denied.

**V. Lang's Claims Regarding His Current Detention Facility Do Not Warrant Relief**

Without connecting them to any specific form of relief, Lang complains about miscellaneous conditions at the Alexandria Detention Center (ADC) where he is now housed.  He objects that he has only two hours a day to make calls, shower, or "have any interaction whatsoever," ECF No. 69-1 at 16, adding without explanation that this is "a demonstration of the disrupted nature to effective attorney / client communications and case preparations."  *Id*.  These

conditions have not, however, interfered with a recent visit between Lang and his family,[13] or his ability to call broadcasters while housed at the ADC,[14] or manage his own website. While at the ADC, Lang was able to call into a network broadcast aired on June 9, 2022, and explain that he had put together a documentary about January 6 with a "team" that had reviewed "thousands of hours" of video footage. *See* https://www.mediamatters.org/media/3989524 (last accessed on August 23, 2022). Presumably, if Lang has been able to call various media outlets, review thousands of letters, maintain a website, and work with "a team" to create and publicly promote a documentary, he has equal ability to access and work with counsel if he chooses.

Lang complains about an in-person meeting with counsel on April 2, 2022 (a Saturday), because he was in restraints and because the meeting occurred in a room where "there was no attorney client privileged means of communication at all." ECF No. 69-1 at 16. Lang does not explain what he means by "no attorney client privileged means of communication" or why the location of the meeting was inadequate. He does not address whether other such meetings have occurred and if so, whether obstacles to privileged communication are recurring. His restraints during the April 2 meeting appear to conform to standard USMS procedures for detainees in administrative segregation. *See United States v. Bundy*, No. 2:16-CR-00046-GMN-PAL, 2017 WL

---

[13] *See* https://player.fm/series/hearts-of-oak-podcast/jake-lang-jan-6th-political-prisoner-no-trial-no-visitors-no-justice (last accessed on August 23, 2022)(Lang calls foreign podcaster from ADC and mentions recent visit from family at 20 minutes and 16 seconds)(at 20 minutes and 58 seconds, Lang states he receives 2-3,000 letters from supporters).

[14] *See* https://www.youtube.com/watch?v=zhIagOiGCbw (last accessed on August 23, 2022)(Lang calls into Youtube broadcast aired on June 1, 2000; at 7 minutes 27 seconds, Lang states he is calling from ADC); https://www.victoriataft.com/this-is-me-jake-lang-in-his-own-words/ (last accessed on August 23, 2022)(Lang calls podcast that aired on May 28, 2022 from ADC); https://www.youtube.com/watch?v=_-5O7Yhbqlo (last accessed on August 23, 2022)(Lang calls broadcast aired on or about May 10, 2022 from ADC).

1458197, at *2 (D. Nev. Apr. 24, 2017) (quoting USMS report on use of restraints and access to counsel), *objections overruled,* No. 2:16-CR-46-GMN-PAL, 2017 WL 4251436 (D. Nev. Sept. 20, 2017). The use of restraints to secure detainees in administrative segregation outside of that housing does not suggest that the practice is punitive. The application of that practice in a distant jurisdiction indicates that it is not directed towards any individual detainee as punishment.

The ability of counsel to meet with Lang does not suggest that he is being denied access to counsel. The alleged inadequacy of a single meeting at the ADC does not suggest that Lang has no access to counsel. Lang's motion does not explain whether concerns with the April 2 meeting were raised with the ADC, whether the concerns are ongoing or have been resolved, or why counsel cannot work within the policies the ADC provides. In this context as well, the defense has failed to follow the Court's instructions from the September, 2021 hearing. *See* Tr. at 78 ( directing counsel to at least attempt to work within options provided by the facility housing Lang). Accordingly, Lang's complaints with the FDC are unpersuasive and seemingly unripe.  They do not warrant relief.

## **CONCLUSION**

For all of the foregoing reasons, this Court should deny Lang's Motion for a Due Process Violation Finding and to Dismiss Indictment for Want of Jurisdiction.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 415793

By:     *s/Karen Rochlin*
Karen Rochlin
Assistant United States Attorney Detailee

28

DC Bar No. 394447
99 N.E. 4th Street
Miami, Florida 33132
(786) 972-9045
Karen.Rochlin@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 24, 2022, I caused a copy of the foregoing motion to be served on counsel of record via electronic filing.

*/s/ Karen Rochlin*
KAREN ROCHLIN
Assistant United States Attorney
