# DECLARATION OF THOMAS A. DIBIASE

I, Thomas A. DiBiase, have personal knowledge of the following facts and will testify to them, if called to do so:

1. I have been the General Counsel for the United States Capitol Police ("USCP" or "Department") since August of 2020. From October 2019 to August of 2020, I served as the Acting General Counsel, and from April of 2010 to October of 2019, I served as the Deputy General Counsel. Between 1991 and 2010, I also worked as a litigator at a New York-based law firm and a District of Columbia law firm, and, between those positions, served for 12 years as an Assistant United States Attorney at the United States Attorney's Office for the District of Columbia.

2. As part of my duties at the USCP, I have authorized the release of camera footage from the Department's extensive system of cameras on U.S. Capitol Grounds ("Grounds"). These cameras, part of a sophisticated closed circuit video (CCV) system, are resident both inside and outside the buildings including the U.S. Capitol itself and the other Congressional office buildings on the Grounds. This CCV system provides the backbone of the security for the U.S. Capitol Grounds. The CCV system is monitored by sworn police officers 24-7 in our Command Center and is relied upon to provide real time information regarding any incident occurring on the Grounds. The first step whenever an incident occurs is for the Command Center to pull up the CCV cameras closest to the incident. This enables the Department to have a real-time view of the incident and provides an additional layer of safety for our officers when responding to any incident.

3. Access to this CCV system is strictly limited. Because the system is a closed circuit, access to the cameras only occurs from dedicated workstations and monitors located in a handful of

locations on the Grounds. Our system is not "in the cloud" and may not be monitored or hacked by anyone not connected via a dedicated workstation and monitor.

4. The disclosure of any footage from these cameras is strictly limited and subject to a policy that regulates the release of footage. Per Department Directive 1000.002, Retrieval of Archived Video (see Attachment 1), the release of *any* footage from the Department's CCV system must be approved by the Assistant Chief of Police for Operations, the Department's second highest sworn officer. The Directive notes that, "[t]he Capitol Police Board [which oversees the USCP] directed that cameras would only be used for matters related to national security and legitimate law enforcement purposes (e.g., serious crimes). The [Assistant Chief of Police for Operations] is the sole authority for the approval of any and all requests for archived video footage…." The Directive goes on to note that, "[v]ideo footage received through an approved request shall not be delivered, copied, or transmitted to anyone other than necessary parties (e.g., court, General Counsel) without approval from the [Assistant Chief of Police for Operations]."

5. There is a specific Department form, a CP-411 (Attachment 2), which must be completed and signed by several officials including the Assistant Chief of Police for Operations before any camera footage can be released.

6. As part of my duties as General Counsel and my prior duties as the Deputy General Counsel, I have often been consulted regarding the release of camera footage. The Office of the General Counsel has consistently taken a restrictive view of releasing camera footage in cases other than serious crimes or national security. We regularly deny footage to civil plaintiffs who may have been involved in accidents on the Grounds unless they involved serious injuries or death. (Even in those cases, I have only approved an attorney or

2

investigator coming to the USCP and viewing the footage in our offices with a USCP employee present.) We are also often asked for camera footage related to non-USCP administrative investigations, and we generally do not provide that footage. We will, however, allow investigators from agencies with which we regularly work, such as the Architect of the Capitol, to view such footage in the presence of a USCP employee. Even a member of Congress looking to view footage of our officers' interactions with his staff had to come to our office and view the footage with our employees present.

7. In 2014, the USCP, with the assistance of the District of Columbia's Office of the Attorney General (OAG), litigated the release of USCP camera footage in Driving under the Influence ("DUI") cases. The Department successfully argued that any footage of a DUI defendant, including arrest footage and footage of the defendant being processed in our prisoner processing area, should be subject to a protective order. Since 2015 the Department provides any relevant DUI arrest footage to the OAG who in turn provides it to the defendant subject to a protective order. (A sample protective order in a DUI case along with a sample motion is attached as Attachments 3 and 4.) As noted in this protective order, an attorney for a DUI defendant "may only show the street video to the defendant and any investigators working on this case and shall not share street video nor show it to any other person not directly affiliated with this case…." (Attachment 3 at 1.) The order further notes that the attorney for a DUI defendant may not "reproduce, share, disseminate, nor discuss with any person not named in this Order, the depictions shown in the video; and … must return the street video to the [OAG] after the later of a plea, trial or sentencing in the above-entitled case." *Id.*

8. As noted in the motion for these protective orders, the OAG argues that:

> Here, the release of Capitol security street videos could compromise USCP's ability to protect the Capitol. The USCP's primary mission is to police the United

3

    States Capitol Buildings and Grounds, and it has the power to enforce the laws of the District of Columbia pursuant to 2 U.S.C. §1961. As part of its policing responsibilities, the USCP maintains and controls a series of video surveillance cameras throughout the Capitol Grounds. The purpose of the cameras is to assist in the maintenance of national security by detecting threats to U.S. Congressmen, their staff, and constituents, deterring and preventing terrorism, and providing for the safety and security of the Capitol Buildings and Grounds. The cameras are generally not used to collect evidence in criminal matters.

(Attachment 4 at 3.)

9. It is my understanding that these protective orders are regularly signed by District of Columbia Superior Court judges, and the USCP has provided hundreds of videos pursuant to these orders since 2015.

10. Pursuant to 2 U.S.C. § 1979, USCP information designated as "security information" may only be released with the approval of the Capitol Police Board. Security information is defined as information that:

    (1) is sensitive with respect to the policing, protection, physical security, intelligence, counterterrorism actions, or emergency preparedness and response relating to Congress, any statutory protectee of the Capitol Police, and the Capitol buildings and grounds; and

    (2) is obtained by, on behalf of, or concerning the Capitol Police Board, the Capitol Police, or any incident command relating to emergency response.

11. I understand that, in any trial related to the events of January 6, 2021, the U.S. Attorney's Office will use as evidence footage obtained from the CCV system. To present such evidence, the government necessarily must present a general description of where the camera is located. For example, a camera near the Columbus Doors, facing the Capitol Building's rotunda, could be described as "facing the rotunda." But allowing the U.S. Attorney's Office to present—or the defense to ask questions about—exact physical locations of each camera would severely compromise USCP's ability to police and protect the Capitol Building and

grounds.

12. I am also aware that in order to find relevant footage from the CCV system, one would need to use two maps of the CCV system. One map shows the location of all of the exterior cameras on Capitol Grounds ("exterior map") and a second map that shows the location of the interior cameras inside the U.S. Capitol ("interior map").

13. These maps are "security sensitive" and may only be released to a third party with the approval of the Capitol Police Board pursuant to 2 U.S.C. §1979.

14. It is my understanding that these maps were provided to the FBI shortly after January 6, 2021 in order for the FBI to more efficiently conduct its investigation. In turn, the FBI provided these maps to individual Assistant United States Attorneys working on the prosecution of January 6th defendants.

15. As part of discovery, both maps were provided to defense counsel with the "Highly Sensitive" designation. Under the standard protective orders filed in the January 6th cases, documents or information designated Highly Sensitive are subject to special protections including that they cannot be shared with defendants unsupervised, they cannot be reproduced and they must be maintained in the custody and control of the legal defense team and authorized persons. In addition, Highly Sensitive information may only be used solely in connection with the defense of January 6th cases, may not be disclosed to any persons other than the defendant, the legal defense team, or the person to whom the Highly Sensitive information solely and directly pertains or his/her counsel, without agreement of the United States or prior authorization from the Court. Finally, absent prior agreement by the parties or permission from the Court, no party shall disclose materials designated as Highly Sensitive in any public filing with the Court and such materials shall be submitted under seal, and no

party shall disclose materials designated Highly Sensitive in open court without agreement by the parties that such materials may be disclosed in open court or prior consideration by the Court.

* * * * *

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 28th day of March 2022.

_____<br>Thomas A. DiBiase