## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

           Plaintiff,

      vs.

EDWARD JACOB LANG,

           Defendant.
_____/

CR Action
No. 1:21-053

Washington, DC
February 23, 2022

11:02 a.m.


TRANSCRIPT OF VIDEO STATUS CONFERENCE
**BEFORE THE HONORABLE CARL J. NICHOLS**
UNITED STATES DISTRICT JUDGE

APPEARANCES:


**For the Plaintiff:**      **KAREN E. ROCHLIN**
                           DOJ-USAO
                           99 Northeast 4th Street
                           Miami, FL 33132

                           **MELISSA JOY JACKSON**
                           U.S. ATTORNEY'S OFFICE FOR D.C.
                           555 4th Street, NW
                           Washington, DC 20530


**For the Defendant:**     **STEVEN A. METCALF, II**
                           METCALF & METCALF, P.C.
                           99 Park Avenue, 6th Floor
                           New York, NY 10016


**Reported By:**         **LORRAINE T. HERMAN, RPR, CRC**
                           Official Court Reporter
                           U.S. District & Bankruptcy Courts
                           333 Constitution Avenue, NW
                           Room 6720
                           Washington, DC 20001
                           202-354-3196

**P R O C E E D I N G S**

1    **COURTROOM DEPUTY:**  Good morning, Your Honor.  This
2    is criminal case year 2021-053, *United States of America*
3    *versus Edward Jacob Lang*, who is not present.
4
5         Counsel, please introduce yourselves for the
6    record, beginning with the government.
7         **MS. ROCHLIN:**  Good morning, Your Honor.  Assistant
8    U.S. Attorney Karen Rochlin and Assistant U.S. Attorney
9    Melissa Jackson for the United States.
10        **THE COURT:**  Good morning, Counsel.
11        **MR. METCALF:**  Good morning, everyone.  Steven
12    Metcalf on behalf of Mr. Lang.  Good morning, Your Honor.
13        **THE COURT:**  Good morning, Mr. Metcalf.  Will Mr.
14    Tankleff be joining us this morning?
15        **MR. METCALF:**  Not this morning, Your Honor.  He
16    just got bronchitis and he is still recovering from that.
17        **THE COURT:**  I hope he recovers quickly.
18        **MR. METCALF:**  Thank you.
19        **THE COURT:**  We are proceeding this morning by
20    video without Mr. Lang's presence, because as I understand
21    it at least, Mr. Lang refused to participate by video.
22        I think for the record, this is my understanding
23    of what transpired over the last week or two.  This status
24    was originally set to be done virtually.  I then received in
25    a communication to the Court regarding the defendant's

1    willingness or as it turns out unwillingness to sign the

2    attachment to the protective order.

3            It was also communicated to me that Mr. Lang would

4    not consent to appear for any further proceedings other than

5    in person, because at the time he was, at least as I

6    understood it, detained at the D.C. jail.  I then converted

7    this hearing to an in-person one.

8            At some point -- I don't know exactly when,

9    Mr. Lang was transported and is now detained at Lewisburg, a

10   Lewisburg facility, which is obviously quite a bit further

11   away from Washington than the D.C. jail.

12           So in light of that and in light of the

13   complications and difficulties and the like in having

14   someone detained in Lewisburg appear in person for something

15   as simple as a status conference, I converted this hearing

16   back to a videoconference.  It was at that point, as I

17   understand it, that Mr. Lang refused to participate.

18           Since this is just a status conference, I don't

19   think there is any requirement that Mr. Lang participate.

20   It's not a plea hearing or other substantive proceeding, so

21   I think it is fine to go forward without him, and I thought

22   it was appropriate to do so because I think there are

23   several topics that can be discussed without him.  So in my

24   view that is why we are here today by video without

25   Mr. Lang.

1          Mr. Metcalf, is there anything you would like to

2     state or add on this issue.

3          **MR. METCALF:**  On this issue, no, Your Honor.

4          **THE COURT:**  Okay.  Thank you.

5          So why don't we begin with the government.  Can

6     you bring me up to speed on any developments since our last

7     status conference, and then let's just walk through the

8     issues you think we should discuss and/or I should resolve

9     today.  Ms. Rochlin?

10         **MS. ROCHLIN:**  Yes, Your Honor.  I don't know that

11    things are significantly different from the last status

12    conference.  I have been speaking with defense counsel as

13    recently as this morning right before the hearing.

14         The defense continues to express their frustration

15    to me with their ability to get discovery materials, up

16    until recently, to the D.C. jail.  And I'm happy to do

17    whatever I can to assist them with that process to the

18    extent that I can be of help.  I'm certainly willing to try.

19    They haven't really actively sought my involvement with that

20    process beyond having discussions about it, and I'm not

21    going to guarantee that I would be successful, but one never

22    knows, I might be.  And if I can weigh in, I am happy to do

23    so on that front.

24         Beyond that, I've attempted to discuss with

25    counsel scheduling and what may be contested issues during

1    the case. And I don't mean to get too far ahead of counsel,

2    but I think Mr. Metcalf would be comfortable discussing the

3    proposed motions schedule, and we may be able to give the

4    Court, really, kind of a preview at this stage. I'm not

5    saying anything has settled or scheduled, but a preview of

6    what some of the more substantive issues might be in the

7    case.

8              Based on my discussions with counsel, we did talk

9    about a schedule for the filing of motions. And what we had

10   agreed upon in those discussions was a general motions

11   cutoff of May 3rd, which falls on a Tuesday. I'm proposing

12   three weeks to file responses to motions, which would make

13   the deadline counsel agreed to fall on May 24th, and a

14   proposed deadline of July 3rd.

15             For what it's worth, Your Honor, we agreed on

16   those deadlines with my extreme ignorance of what is common

17   practice for scheduling motions in this district. So if the

18   Court has a different view of what works, I'm flexible on my

19   end and counsel can weigh in, but that's a feel for the

20   schedule that we had agreed to.

21             Beyond that, I think we had also spoken about

22   carving out an exceptions to the schedule for Motions in

23   Limine, which might be more productive closer to an actual

24   trial date.

25             And I don't know if counsel is comfortable at this

1    point in time addressing a trial date.  So perhaps we should

2    hold off on working out a separate date, if the Court agrees

3    with our position for Motions in Limine or if the Court

4    prefers it could be worked into a general deadline.

5          But that's the progress we've made on addressing

6    scheduling issues.  And if the Court would like me to pause

7    I can do that or I can sort of trudge ahead and flag some

8    issues that may be in play.

9          **THE COURT:**  That seems at least not inconsistent

10   with how I've proceeded in certain cases.  There are some

11   where we, for lack of a better word, bifurcate the motions

12   because there's some substantive motions that are not really

13   in limine, they are not as trial-like as others.  So this

14   seems quite reasonable to me.

15         I think on the overall schedule, what my

16   preference would be -- and by the way, this motions

17   schedule -- and of course, I want to hear from Mr. Metcalf

18   see if he is in general agreement, of course, it seems just

19   fine to me.

20         What I would want to do here is likely have

21   Ms. Lesley communicate to the parties, and ask the parties

22   to see if they can negotiate an overall scheduling order

23   that would include, essentially, these bifurcated dates, the

24   non-motions in limine motions and the other motions later.

25   And if it would be helpful, we can communicate a model of

1    that for the parties to discuss.

2              But before we get to substance, Ms. Rochlin, why

3    don't we go to you, Mr. Metcalf, and see if you agree

4    generally, at least, with those dates for the non-motions in

5    limine and questions around discovery and Mr. Lang's review

6    of it.

7         **MR. METCALF:**  I do agree with those.  That was

8    dates that I proposed, specifically May 3rd, I believe,

9    falls on a Tuesday.  And I asked that it not fall on a

10   Monday.  So I agree with the overall time frame.

11             With that being understood, we have also

12   continuously expressed to the Court the various different

13   issues regarding discovery, communication with Mr. Lang.  We

14   plan on updating an argument based on due process that

15   somewhat will be an update to the portions that we did in

16   our bond application.  So that motion in particular will be

17   submitted to the Court well in advance of May 3rd.

18             So I plan on filing that motion relatively soon

19   and then the remaining general motions by the dates that we

20   just spoke about.

21        **THE COURT:**  Do you have a date in mind for when

22   you would file that discovery-related motion?

23        **MR. METCALF:**  I don't, Your Honor, because of the

24   various different things you spoke about.  Mr. Lang being

25   transferred.  He is now in Lewisburg and I'm trying to

1    figure out the situation there as far as how I'm able to

2    communicate with him.  There are a couple of different kink

3    that I need to work out with him before I can file.  So the

4    best thing I can say is within 30 days or so I plan on

5    having that perfected and filed.

6              **THE COURT:**  Okay.  Very well.

7              So it sounds to me that we'll have that motion.

8    We'll take that motion up.  When it's filed, I think I'd ask

9    the government to inform the Court through Ms. Lesley how

10   much time it would like to respond.

11             **MS. ROCHLIN:**  Yes, Your Honor.

12             **THE COURT:**  And they we can schedule that motion

13   for an opposition and a reply if you want one, Mr. Metcalf.

14   And we can possibly have argument as necessary; so that's

15   that motion.

16             There's then the second motions schedule, which

17   we've already discussed.  And I think it will make sense,

18   likely, to incorporate at least the second motions schedule

19   of May 3rd, May 24th, June 3rd, into an overall pretrial

20   order, if we can get there, because obviously May 3rd is

21   still more than two months away.  Then as Ms. Rochlin

22   indicated, the motions in limine would come later.

23             So, Ms. Rochlin, do you want then to at least give

24   me a preview of the substantive issues you see coming down

25   the pike so to speak?

1        **MS. ROCHLIN:**  There are not many, at this point in

2   time, Your Honor.  One was the challenge that counsel is

3   saying that he'll file within 30 days.  So I think I will

4   cross that one off the list.

5        There is a potential challenge to venue that the

6   defense may raise and then exclude any other motions in

7   limine.  One issue the United States has flagged is its

8   overall sense that a defense based on justification or some

9   form of self-defense may be raised.

10       What I discussed with counsel is, in part, the

11  process of raising that motion.  The United States believes

12  it would be appropriate, at a minimum, for the defense to

13  present a proffer to the Court so that there can be some

14  assurance that each element of such a defense can be proven

15  so that it's not raised in an incomplete fashion during

16  trial, and there is case law to support that.  I'm happy to

17  brief it for the Court if the Court wants something in

18  advance.

19       I don't think Mr. Metcalf is opposed to that

20  procedure.  Where the parties may disagree is the

21  admissibility of the defense as a matter of substance.

22       **THE COURT:**  Thank you for that.

23       Mr. Metcalf, any additional substance or previews

24  you'd want to note that you think are likely to arise beyond

25  the ones that Ms. Rochlin identified?

1          **MR. METCALF:**  Not at this time.  But can I address

2     the justification situation --

3          **THE COURT:**  Certainly.

4          **MR. METCALF:**  -- the defense, that is a defense

5     that we will be raising.  And I do not mind briefing the

6     issue.  I actually would want to address this issue head on,

7     and I would defer to the Court as far as how we could

8     schedule that or how Your Honor will want to hear that.  But

9     I most certainly want to address that way before we go to

10    trial and have it -- find ourselves in a situation where we

11    are talking about jury instructions and justification

12    becomes an issue.  So I do want to address that issue head

13    on.

14         **THE COURT:**  Fold it into the May 3rd, May 24th,

15    June 3rd?

16         **MR. TANKLEFF:**  I would ask for it to be more a

17    part of the later portion of the motions, with the motions

18    in limine, because I am going to have to go through various

19    different videos still.  I am going to have to do a lot of

20    work on my end before I could pinpoint -- excuse me --

21    specifically every single instance for the Court.  So I

22    would ask for the justification defense to be part of the

23    second part of motion practice.

24         **THE COURT:**  Ms. Rochlin, any objection to that?

25         **MS. ROCHLIN:**  Um, it -- no, Your Honor.  I just

1    want to flag that not having a trial date may complicate

2    things a little bit.

3         **THE COURT:**  I was about to get there.

4         **MS. ROCHLIN:**  I think -- the only thing I'd point

5    out -- and forgive me for stating the obvious, but if -- and

6    it really is more to the benefit of the defense I believe.

7    But if they are going to, for example, lose that defense and

8    then have to pivot to another strategy, I'm guessing it

9    would be more beneficial to have some kind of ruling from

10   the Court sooner rather than later.

11        If the Court disagrees with the United States,

12   then it's obviously going to have less of an impact on

13   scheduling, I believe.  Just putting that out there.  If we

14   can reach a schedule where that motion is filed later, but

15   sufficiently in advance of trial for the Court to address

16   the issue comfortably on its own timetable, I have no

17   problem doing the later.

18        **THE COURT:**  Why don't we do the following, where

19   the parties prepared to discuss a trial date.

20        **MS. ROCHLIN:**  The United States is ready.  I don't

21   know if defense counsel is, Your Honor.

22        **THE COURT:**  Mr. Metcalf?

23        **MR. METCALF:**  Your Honor, if I may.

24        **THE COURT:**  Yes.

25        **MR. METCALF:**  Your Honor, as I said to Your Honor

1     at our last status conference, between my injuries at the

2     time and what was going on with Mr. Lang -- and that will

3     all be detailed in our motion -- I did not have the ability

4     to thoroughly go through, setting a trial date, and various

5     different issues with him before we got to that point.

6             Discovery and sharing discovery with Mr. Lang has

7     been an ongoing problem since we were in front of Your Honor

8     in September of last year.  I sit here today, again in a

9     possession where I am not able to say that I am comfortable

10    even setting a scheduling date.

11            Now, I could propose something very simple.  We

12    set another status conference in a very short period of time

13    now, and I could -- I'm very wishful in my thinking on my

14    communication changing substantially with Mr. Lang while

15    he's in Lewisburg.

16            But as we sit here today, I want Mr. Lang to be a

17    part of that conversation.  I want him to be involved the

18    same way we've said to Your Honor at our bond hearing.  He

19    wants to be involved in his defense.  I want him to hear and

20    be a part of us scheduling trial dates.

21            So as I sit here before Your Honor, I want to

22    propose -- I'm more than willing to do as many scheduling --

23    as many scheduling dates and agreements as I possibly can,

24    but I cannot commit to a trial date in good conscience,

25    because I need to involve my client a little bit more in

1    those discussions.  And I ask that we just address that at

2    the next status conference.

3             **THE COURT:**  Very well.

4             Considering that we are talking about a motion

5    within 30 days on the discovery due process questions, then

6    another set of motions to be filed or briefed between May

7    3rd and June 3rd, I don't think it's -- and I hope the

8    continued relaxation of some rules around here that will

9    enable more trials to go on in the courthouse at the same

10   time -- I don't think it's a problem if we wait one more

11   period between now and the next status conference to set a

12   trial date.

13            I also, just based on my experience, it may be

14   that communications with Mr. Lang are somewhat easier in

15   Lewisburg, just for various reasons.  So it may be that you

16   have more success in the near term in communicating with

17   him.

18            I do think, however, it would be helpful -- and I

19   am going to have Ms. Lesley communicate to the parties an

20   example of a recent pretrial order I entered in which,

21   obviously there is a trial date, but basically a set of

22   bifurcated motions schedules.  Not that there's any magic to

23   it, but certainly in that matter it will avoid the need to

24   have all substantive motions decided on the eve of trial, as

25   Ms. Rochlin was indicating we would rather not do, and as

1    the parties have agreed not to do.

2              And at least that would provide a potential

3    template for the parties to start talking about, filling in

4    the dates, when we set a trial date.  Because obviously a

5    lot of them back up from the trial date.  So let's do that.

6    Let's just set another status, and then we can set a trial

7    date at the next status, and then either the parties can be

8    discussing in advance of that trial date or once we set the

9    trial date, you can discuss the interim dates that would go

10   in the pretrial order.

11             At least as to that, are the parties available --

12   this would just be a little bit more than four weeks from

13   today, but it would be after the likely motion has been

14   filed about the discovery and due process issues but still

15   well before the May 3rd other motions deadline.  Are the

16   parties available March 29 for a status at 11 a.m.?

17             **MS. ROCHLIN:**  From the United States, yes, Your

18   Honor.  I can tell you I'm available.

19             **THE COURT:**  Ms. Jackson?

20             **MS. ROCHLIN:**  She is giving a thumbs up.

21             **MS. JACKSON:**  I'm sorry.  I'm slow with the mute

22   button.  Yes, Your Honor, I am available then.

23             **MR. METCALF:**  Your Honor, is there any chance that

24   we would be able to do the following week, the first week of

25   April?

1          **THE COURT:**  Yes.  I'm just looking at my calendar,

2     Counsel.

3          **MR. METCALF:**  Take your time.

4          **THE COURT:**  Would 4:00 on April 1st work for the

5     parties?  Ms. Rochlin?  Ms. Jackson?

6          **MS. ROCHLIN:**  Yes, Your Honor.

7          **MS. JACKSON:**  Yes, Your Honor.

8          **THE COURT:**  Mr. Metcalf, does that work?

9          **MR. METCALF:**  That works, Your Honor.

10          **THE COURT:**  Okay.  So let's do another status on

11     March 5th at 4 p.m.  Ms. Jackson?

12          **MS. JACKSON:**  I thought you said April --

13          **THE COURT:**  You're 100 percent right.  April 5th,

14     4 p.m.  I was looking at April 5th but March was popping up

15     on my calendar.  April 5th at 4:00 p.m.

16          Mr. Metcalf, do you have a view about whether your

17     client will refuse to participate by video in that hearing

18     and therefore would participate only if he's in person?

19          **MR. METCALF:**  I don't have a view on that, Your

20     Honor, because this just came to my attention.  I would ask

21     respectfully request if we can set that date for in person,

22     and if there are any issues before him we can address them.

23          **THE COURT:**  That seems appropriate to me.  I think

24     there are going to be enough potential issues getting

25     resolved on April 5th and discussed that setting it in

1    person makes sense for various reasons.

2            **MR. METCALF:**  Thank you, Your Honor.

3            **THE COURT:**  So we'll do an in-person status at

4    4 p.m. on April 5th.  Does that change your ability to

5    appear, Ms. Rochlin?

6            **MS. ROCHLIN:**  Sorry, Your Honor.  I don't believe

7    it will.  And if it does, I'll work out some other

8    arraignment, but I think I can be here.

9            **THE COURT:**  So we'll do April 5th, 4 p.m., in

10   person.

11           It seems to me that we still have one lingering

12   issue, which is the protective order and Mr. Lang's

13   unwillingness to sign or authorize counsel to sign the

14   attachment on his behalf.  Is that still his position, as

15   far as you know, Mr. Metcalf?

16           **MR. METCALF:**  I haven't spoke to him about it

17   since, but nothing has changed on my end.

18           **THE COURT:**  Ms. Rochlin, it seems to me that the

19   protective order is presently binding on Mr. Lang.  There's

20   at least one provision in the protective order that arguably

21   is conditioned on his undertaking that -- or assigning that

22   attachment and that would be --

23           **MS. ROCHLIN:**  Paragraph 4(c).

24           **THE COURT:**  -- 4(c), yes.

25           As a practical matter, what is his unwillingness

1    to sign that attachment holding up?

2                **MS. ROCHLIN:**  Your Honor, what it's holding up is

3    his access in the jail to online databases for discovery

4    that we have labeled global.  In other words, it's not

5    necessarily specific to this particular case.  Without his

6    signing the protective order or allowing counsel to sign for

7    him, if the combination of jail and COVID make obtaining the

8    signature difficult or there is a third option involving an

9    admonishment from the Court to the defendant regardless of

10   whether he signs the attachment or not.

11                He will not have the same access as other detained

12   defendants to global discovery materials.  There is also

13   some concern to the extent that case-specific discovery will

14   be an issue, but I think probably defense counsel and the

15   United States can work out a means of addressing that.  But

16   the bottom line is anything labeled "highly sensitive" or

17   "sensitive" it might not be something Mr. Lang could possess

18   on his own or access on his own regardless of whether he

19   signs the protective order.  It remains material.  We would

20   not want disclosed by Mr. Lang to the broader public, at

21   least in certain respects.

22                So what I would propose is that at the very least

23   by the April 5th status conference, the Court plan to

24   admonish Mr. Lang, whether he signs or not, about the

25   Court's determination that the protective order is

1    nevertheless binding as to him and that he is required to

2    honor its terms.

3            My hope is that that will be sufficient to get

4    Mr. Lang on board but should be sufficient to get him access

5    that is similar to other defendants with the computer set up

6    and databases made available within the jail locally.

7            If he's at Lewisburg, then the protective order

8    doesn't matter.  We are not set up to provide that access to

9    him at Lewisburg.  For now it's a moot point, since he's not

10   cooperating.

11           **THE COURT:**  Right.  Let me understand this just a

12   bit more.  The discovery that the government has already

13   made available to Mr. Lang's counsel, for lack of a better

14   term, case-specific or non-global discovery, is his having

15   not signed that attachment limiting his ability to view that

16   material in your view?

17           **MS. ROCHLIN:**  That material, Your Honor, is

18   required under the protective order to be reviewed with the

19   supervision of counsel.  And it's not something that

20   Mr. Lang should be able to possess or disseminate on his

21   own.

22           Going forward on those terms, I don't really think

23   there is much of an issue with respect to specific discovery

24   in this case.  And materials designated as sensitive or

25   highly sensitive are going to be fairly limited in scope,

1    especially with respect to the highly sensitive designation,

2    and would constitute certain forms of surveillance videos

3    from the Capitol and materials relating to the Architect of

4    the Capitol with respect to sensitive discovery, that's

5    going to encompass personal identification information, for

6    example, that I don't think anybody would want distributed

7    publicly or broadly.

8          And I don't know that that's really Mr. Lang's

9    issue with the protective order, frankly.  I am not entirely

10   sure he understands the protective order because there is

11   certainly a large amount of discovery that he might be able

12   to circulate in any way that he chooses even under the terms

13   of the protective order.  Whether that satisfies him or not

14   is not something I'm going to speak to.

15         **THE COURT:**  Let's do this then.  I agree that it

16   is, at least for present purposes, a moot point because the

17   global discovery wouldn't be available to him in Lewisburg,

18   at least under current conditions, if he is there.  And we

19   can take this issue, whether it's admonishment or signature

20   or a walking through the protective order to make sure that

21   everyone is on the same page about it.  We can take that up

22   when we are in person in April.

23         Why don't we table that question until then.

24         **MS. ROCHLIN:**  If I could be clear on the record

25   that Mr. Metcalf can have full access to discovery.  This

1    doesn't limit the ability of defense counsel to review

2    material.

3            **THE COURT:**  Right.  No, I appreciate that

4    clarification, but I think the protective order is pretty

5    clear on this.  The only person who, as I understand it, is

6    limited is Mr. Lang because of his unwillingness at this

7    time, at least, to have executed the attachment.

8            **MS. ROCHLIN:**  Yes, Your Honor.

9            **THE COURT:**  Thank you for that.

10           So to go back to scheduling, Mr. Metcalf.

11   Recognizing that you have been unable to speak with

12   Mr. Lang, as I understand it, do you have a view or do you

13   know his position on whether it's appropriate to exclude

14   time under the Speedy Trial Act between today's date and

15   April 5th, our next status?

16           **MR. METCALF:**  Your Honor, in light of several

17   different issues, and some of which I just addressed with

18   the Court, Mr. Lang being able to review the discovery,

19   Mr. Lang being able to go through the discovery with me,

20   voluminous discovery that I dropped off at the D.C. jail at

21   the beginning of December, him being moved, the various

22   different times he spent in D.C. in what has been referred

23   to in the hole, in the interest of Mr. Lang, in the interest

24   of all the balancing that has to be done here, it is our

25   position to waive speedy time under all of those

1    circumstances.

2            **THE COURT:**  Thank you, Mr. Metcalf.

3            And, Ms. Rochlin, I assume the government agrees

4    it is appropriate to exclude time.

5            **MS. ROCHLIN:**  Yes, Your Honor.

6            **THE COURT:**  I agree, as well, for the various

7    reasons discussed today, to include trial preparation,

8    discovery review, discovery consultation with counsel and

9    the like, that the ends of justice are best served and

10   outweigh the interest of the public and Mr. Lang in a speedy

11   trial; therefore, it is appropriate to exclude time from

12   today's date through April 5, 2022.

13           Are there other topics we should discuss today

14   from the government's perspective, Ms. Rochlin?

15           **MS. ROCHLIN:**  Nothing I can think of now, Your

16   Honor.

17           **THE COURT:**  Thank you.

18           Mr. Metcalf?

19           **MR. METCALF:**  Nothing further, Your Honor.

20           **THE COURT:**  Thank you, Counsel.

21           And I just want to say thank you for working

22   together on things like scheduling.  It's very helpful.  I'm

23   hopeful that as it relates to the overall trial schedule,

24   when we get to setting a trial date and working back from

25   that, that we'll have a fair amount of agreement on the

1    interim dates.

2         Obviously I can resolve any disagreements, but it

3    seems to me that counsel are working well together to the

4    extent that that's possible.  So I appreciate that very

5    much.  Thank you, all.

6         **MS. ROCHLIN:**  Thank you, Judge.

7         **MR. METCALF:**  Thank you, Your Honor.

8         (Proceedings concluded at 11:34 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          **C E R T I F I C A T E**

2

3              I, **Lorraine T. Herman, Official Court Reporter,**

4    certify that the foregoing is a true and correct transcript

5    of the record of proceedings in the above-entitled matter.

6

7              **Please Note:**  This hearing occurred during the

8    COVID-19 pandemic and is therefore subject to the

9    technological limitations of court reporting remotely.

10

11

12

13    ___September 26, 2022___              ___/s/_____
                 **DATE**                    **Lorraine T. Herman**
14

15

16

17

18

19

20

21

22

23

24

25