**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**


UNITED STATES OF AMERICA,

          Plaintiff,

        vs.

EDWARD JACOB LANG,

          Defendant.
_____/

CR Action
No. 1:21-053

Washington, DC
April 5, 2022

4:09 p.m.


TRANSCRIPT OF IN-PERSON STATUS CONFERENCE
**BEFORE THE HONORABLE CARL J. NICHOLS**
UNITED STATES DISTRICT JUDGE


APPEARANCES:

**For the Plaintiff:**      **KAREN E. ROCHLIN**
                        DOJ-USAO
                        99 Northeast 4th Street
                        Miami, FL 33132

**For the Defendant:**      **STEVEN A. METCALF, II**
                        METCALF & METCALF, P.C.
                        99 Park Avenue, 6th Floor
                        New York, NY 10016



**Reported By:**           **LORRAINE T. HERMAN, RPR, CRC**
                        Official Court Reporter
                        U.S. District & Bankruptcy Courts
                        333 Constitution Avenue, NW
                        Room 6720
                        Washington, DC 20001
                        202-354-3196

1      **P R O C E E D I N G S**

2          **DEPUTY CLERK:**  Good afternoon, Your Honor.  This

3   is criminal case year 2021-053, *United States of America*

4   *versus Edward Jacob Lang.*

5          Counsel, please come forward and introduce

6   yourselves for the record, beginning with the government.

7          **THE COURT:**  And, counsel, my practice in motions

8   and other hearings, non-trial settings, is to have counsel

9   at the podium, take his or her mask off.  It's easier for

10  everyone to hear, including the court reporter, me and

11  opposing counsel, and then put your mask back on when not at

12  the podium.  Okay?

13         **MS. ROCHLIN:**  Yes, Your Honor.  Thank you.

14         For the protective order, Your Honor, Karen

15  Rochlin for the United States.

16         **THE COURT:**  Ms. Rochlin, welcome.

17         **MS. ROCHLIN:**   Thank you.

18         **MR. METCALF:**   Steven Metcalf on behalf of Edward

19  Jacob Lang.  Good afternoon, Counsel.  And good afternoon,

20  Your Honor.

21         **THE COURT:**  Good afternoon, Mr. Metcalf.

22         Why don't we start with Ms. Rochlin.

23         I guess I should note for the record that the

24  government filed, on April 1st, a proposed scheduling order,

25  which I have reviewed.

1          I also noted the extent to which you were able to

2     meet and confer with defense counsel and then separately the

3     defendant has filed a Motion to Dismiss Count 9.  I guess

4     that was filed today.  I assume the government will want an

5     opportunity to respond to that.

6          So those are recent developments.  But more

7     generally, Ms. Rochlin, can you bring me up to speed where

8     things stand?

9          **MS. ROCHLIN:**  Your Honor, things stand in pretty

10    much the same spot where they stood at the last status

11    conference.  The case is in a trial posture.

12         The United States believes case-specific discovery

13    is as complete as it can be.  Although I will add, I was

14    very recently provided with a seven-minute video clip that

15    briefly depicts defendant Lang.  And I will be forwarding

16    that clip to defense counsel, for whatever value it may be

17    to the defense.  That was the result of something recovered

18    during a recent arrest that was not in the government's

19    possession previously, but I plan on forwarding that at the

20    first opportunity.

21         Other than that, I am happy to entertain questions

22    from the Court, but I can't think of anything specific or

23    new besides the two developments the Court has mentioned,

24    the filing of the government's proposed scheduling order and

25    the defendant's filing of the Motion to Dismiss, Count 9.

1          **THE COURT:**  So what I would say with respect to

2     the former is -- I'm just pulling up my calendar for a

3     reminder.  So the one thing I can note, just now I currently

4     have another trial in another January 6th matter scheduled

5     for October 17th; so that date at least won't work.

6          I can certainly find other dates today.  But

7     before we talk specifics, have you had a chance to discuss,

8     since the submission, with defense counsel, either the trial

9     date or the specifics in the proposed order?

10          **MS. ROCHLIN:**  I'm afraid not.  Miami is still

11     feeling the effects of spring break, which made flying out

12     of there and getting here on Monday an unusually long

13     process, for reasons I won't detail, and time just didn't

14     allow this morning for me to reach out to defense counsel.

15     I assume he was in the same position, since he did not reach

16     out to me.

17          **THE COURT:**  Do you -- I just don't recall from the

18     filing, but we may have discussed it before, what is the

19     government's view of how long the trial in this matter will

20     take?

21          **MS. ROCHLIN:**  Your Honor, I think -- again, it

22     would be helpful to be able to confer further with defense

23     counsel, but my recollection of the discussions we've had so

24     far is that I think it's reasonable that the government's

25     case in chief will take approximately two weeks.  I'd like

1    to pad it with a little bit of additional time, just to take

2    care of unforeseen contingencies; but that's my sense, from

3    the government's view, what it would take to try this case.

4    Of course, that doesn't account for the presentation or not

5    of a defense case.

6        **THE COURT:**  Yes, of course.  Thank you,

7    Ms. Rochlin.

8        Why don't I hear from defense counsel on -- well,

9    before we go there.  I assumed but I should ask, does the

10    government intend to oppose the Motion to Dismiss Count 9?

11        **MS. ROCHLIN:**  I think we will, Your Honor.

12        I'm planning on having that conversation with my

13    office, but I assume given the split within the District and

14    the analysis of this issue, my office would at least like to

15    make a record.  Of course, with nothing but respect for the

16    Court and its analysis.

17        **THE COURT:**  Yes.

18        By when do you anticipate filing something?  Do

19    you have a date in mind?

20        **MS. ROCHLIN:**  I don't have a date in mind but

21    would ask for the standard 14 days, if that sounds about

22    right.

23        **THE COURT:**  Okay.  Why don't we -- I'll hear from

24    defense counsel on the briefing schedule question and

25    everything else, and then if there's anything else you would

1    like to respond to, I can hear from you.

2         **MS. ROCHLIN:**  Yes, Your Honor.  Thank you.

3         **THE COURT:**  Thank you.

4         Mr. Metcalf?

5         **MR. METCALF:**  Thank you, Your Honor.

6         Now, I understand that the Court may not be as

7    happy with as fast as this case is moving forward, and

8    myself I join in that.

9         Ever since January, even going back further to

10   December, there have been numerous different hurdles that --

11   I want to address one of them with Your Honor today -- that

12   have made it where I have not been able to adequately

13   consult and speak to Jake about the details and specifics of

14   this case.

15        So everything -- every time I try to get somewhere

16   going forward with him -- and I'll give you the biggest

17   example -- getting him discovery.  I dropped off a hard

18   drive at the D.C. jail on December 11th, that took me over a

19   week to get all the material on there.  He never got that

20   disk.

21        February -- mid-February, before the last court

22   appearance on the 23rd of February, he gets moved.  Now he's

23   starting to get settled again.  His family wants to go see

24   him.  They scheduled trips so he can actually see his

25   parents.  I'm figuring out ways to have legal calls with him

1      and then try to get him the discovery.

2              Now I'm hearing he's moved to Alexandria

3      yesterday.  So my mail that was mailed to him this week is

4      now left out in the open, as is my disk/hard drive that took

5      me probably over a week to do.  I can't tell you how many

6      hours, not just myself but my staff took just putting that

7      together.  Yet we find ourselves here in April, and Jake has

8      not even seen discovery from me, literally, since August of

9      2021.

10             So I apologize for not being able to give the

11     government some of the answers that they need as far as

12     scheduling goes, because I can't commit to some of these --

13     some of these dates.

14             Now, I have no problem going through the

15     scheduling order.  I think the April and May dates I would

16     need just a little bit more time.  But, Judge, I filed our

17     Motion to Dismiss Count 9 today because I had to get that to

18     Your Honor as soon as possible.

19             I've indicated that I was going to be filing a

20     separate due process motion, that I have been working on for

21     over a month now, just putting everything together.  I plan

22     on filing that within the next two weeks or so.

23             I have to address these issues with Your Honor

24     because Jake -- although we could talk, and I was

25     successfully able to set up a couple legal calls with him in

1    Lewisburg.  We can't get to the core of some of these

2    issues.  Jake wants to review this material.  Jake has

3    valuable information that he could assist in me going

4    forward, in him being able to view the material.  I just

5    can't seem to get it to him, as crazy as it sounds.

6          Now, before this court date, he gets moved to

7    Alexandria.  I am scratching my head because he just

8    indicated to me that he's been classified as being on

9    administrative segregation.  I don't know why a jail would

10   classify him as administrative seg or ag seg it's called,

11   when he is still a pretrial detainee.  He's not sentenced

12   yet.  And there is no justification for the classification

13   of him being classified in administrative segregation.  That

14   usually requires notice.  That usually requires a detailed

15   explanation from the jail as to why he is classified as

16   such.

17          If he's going to be in this segregation, he's

18   going to be back to the 22 hours in a day.  And this is

19   where I'm constantly having to address this issue; and

20   that's the communication and being able to speak with him

21   and allowing him to be part of his defense.  So that is what

22   I have been dealing with, Your Honor, basically since

23   December.

24          **THE COURT:**  As you may recall, Mr. Lang requested

25   all future hearings -- he requested his participation in

1    person.  I don't happen to know whether his movement to

2    Alexandria is permanent, potentially, or is to facilitate

3    his appearance today in person.  Do you know?

4         **MR. METCALF:**  I don't, Your Honor.  That is the

5    question I had for him, as soon as I saw him today.  He

6    seems to have gone through the classification stage at

7    Alexandria, which would indicate he was being placed there.

8    That was my first question.  I don't want to raise this as

9    an issue, if he is ultimately being moved there to

10   facilitate court appearances such as this one.

11        But my conversation with him, before Your Honor

12   came out on the bench, indicated everything but that; and

13   that he is going to, basically, be classified as such in

14   Alexandria; and that he was transferred there for reasons

15   other than him being transferred to the Court today.

16        **THE COURT:**  So why don't we start small, take the

17   low-hanging fruit so to speak.

18        Do you oppose the government having 14 days to

19   respond to the Motion to Dismiss Count 9?

20        **MR. METCALF:**  Absolutely not.

21        **THE COURT:**  Do you want an opportunity to file a

22   reply brief?

23        **MR. METCALF:**  I would, Your Honor, yes.

24        **THE COURT:**  How long would you like for the reply

25   brief?

1    **MR. METCALF:**  A week or so.  And if -- they

2    indicated that they wanted to put a deposition on the

3    record.  If I feel no reply is required, I will indicate to

4    everyone, especially the Court, right away.

5        **THE COURT:**  So let's have this as the briefing

6    schedule then.  The government's opposition is due April

7    19th.

8        **MR. METCALF:**  Your Honor, do you mind if I grab my

9    calendar real quick?

10        **THE COURT:**  No.

11        **MR. METCALF:**  Thank you.

12        **THE COURT:**  The government's Motion to Dismiss

13    Count 9 will be due April 19th.  Mr. Lang's reply, if any,

14    in support of that motion, is due April 26th.  I will then

15    take that motion up as quickly as possible.

16        I've already written one opinion on at least the

17    core 1512 question.  I've decided multiple motions.  I

18    didn't redo the opinion on the question.  And I do think --

19    I'll just say this to, frankly, both parties.  I, of course,

20    care about the substantive issues.  So I want to hear from

21    the parties about that.

22        The government, in the *Miller* case, where I first

23    addressed it, has moved for reconsideration and is arguing

24    that, even assuming from the government's perspective my

25    interpretation is correct, that dismissal of the count there

was not warranted because the language of the indictment was

adequate, even under my interpretation to survive our Motion

to Dismiss.  So I would want to hear from the parties on

that question as well.  Okay.  So that's that motion.

As to Mr. Lang's current custodial status, I have

no information.  I don't know if Mr. Lang was brought to

Alexandria for the purpose of coming to court today or if

that was a "more permanent move."  So I don't have any way

to resolve that question.

As to the broader issue of Mr. Lang's ability to

review discovery, as I said before, I obviously care about

that a lot.  He, just like every detained defendant --

January 6th or otherwise -- should have the opportunity to

review the discovery, to consult with counsel about it.

But as I've also said in prior hearings, I don't

presently have in front of me -- I still don't have in front

of me a motion seeking relief or an order from me forcing

any custodian to do anything different than what is

happening.  So both because I don't have such a motion and

because I don't have any information about his current

custodial status, I don't think there is anything I can do

today about that question.

**MR. METCALF:**  I didn't think that there was

either.  I just wanted to bring it to Your Honor's

attention --

1          **THE COURT:**  Understood.

2          **MR. METCALF:**  -- that that is my understanding.

3          **THE COURT:**  Now, it may be, that as a result of

4    this hearing today, seeing him in person, perhaps afterwards

5    you will be able to glean more information about it or

6    either talking to Ms. Rochlin or perhaps the current

7    custodians, you learn more.  And, again, to the extent that

8    you want relief from me, vis-a-vis, Lewisburg or Alexandria

9    or wherever, I am here for those motions.

10         **MR. METCALF:**  Thank you.

11         **THE COURT:**  So now, I have the government's

12   proposed scheduling order.  As I indicated, sort of starting

13   at the top, in terms of the trial date, the government's

14   proposed trial date doesn't work for me because I have

15   another trial scheduled.

16         And thinking about where this case could fit

17   within my trial schedule is dependent on knowing how long

18   this trial might last.  Are you in a position today, given

19   the limitations you've articulated, to know approximately

20   how long you think this trial might last?

21         **MR. METCALF:**  Your Honor, with the information

22   that I have, I don't see why this case would last longer

23   than three weeks.  So if the government's case in chief is

24   going to be two, I would say the longest that our case would

25   be a week; that's why I don't see it lasting any longer than

three.

**THE COURT:**  What I'm doing now, Counsel, is I am looking through my calendar to see when I have three weeks available, even if we were able to discuss a trial date today.

I guess I should ask that question first, Mr. Metcalf.  Would you be able to at least discuss trial dates today?  Because I do think that if we were able to set a trial date, then the parties could potentially meet and confer and work backward from the trial date.  That assumes you are in a position to talk about how long you need between today's date and trial.

**MR. METCALF:**  I don't think it is reasonable and fair for me to commit to a trial date at this point in time. I could discuss approximations, but I don't think that in representing Mr. Lang that it is -- under all the circumstances we have had over the last couple of months, I don't think that it is right for him, for me to lock down such a date.

**THE COURT:**  Let me ask a slightly different question, which is, again, let's just assume I am not going to set a trial date today and taking this as merely your approximation, what's your best guess regarding how long would be an appropriate time between today's date and a trial date?  I'm not holding you to a specific time frame.

1     Do you think --

2          **MR. METCALF:**  Between now and when we would be

3     ready to go --

4          **THE COURT:**  Right.  Approximately how many months

5     would you be ready to go?

6          **MR. METCALF:**  I think the best way I could answer

7     that is I would need at least six to seven months -- that's

8     off the top of my head -- which ultimately I would need at

9     least until November, is what I am thinking; that's the best

10    way I can answer Your Honor's question.

11          I have to figure out what the details are with the

12    jail he's going to be in now.  I need to figure out how to

13    now get him the legal information.  I need to finalize

14    everything we have to do with the scheduling order and then

15    ultimately have more meaningful conversations with regard to

16    the discovery with him.  So my best guess right now is at

17    least six to seven months.

18          **THE COURT:**  All right.  Which is mid -- basically

19    October and November.  And here's the problem.  If this

20    trial really does need to take three weeks, I essentially

21    have no three-week periods available for trial, because I am

22    booked with trials from September 26th through the end of

23    the year.

24          I have some shorter periods of time in that window

25    but they are shorter.  And I have a three-week window in --

1    basically in September.  But once I start trials -- or start

2    this round of trials, September 26th, I have --

3             **MR. METCALF:**  Your Honor, quick question.

4             **THE COURT:**  Please.

5             **MR. METCALF:**  Pretrial motions, you go straight

6    then right into trial?  Meaning there is no way we could

7    schedule, maybe, a couple daytime slot, September, October

8    to do maybe the pretrial motions, and then a later time

9    frame to do trials?  Is that possible?

10             **THE COURT:**  So the government's proposed

11    scheduling order, I think, takes examples I have used in

12    other cases and in this case in particular spreads those

13    motions out.

14             **MR. METCALF:**  Uh-huh.

15             **THE COURT:**  And would -- I think implicit in the

16    schedule the government has proposed, is that all pretrial

17    motions would be resolved before the trial starts.

18             And the government, I think it may be fair to say,

19    has proposed a trifurcated schedule.  Certain motions filed

20    and briefed early, and then resolved, and then another set

21    filed and briefed relatively early resolved and then the

22    last set filed and briefed before trial.

23             **MR. METCALF:**  Yes.

24             **THE COURT:**  So I'm not really talking about trial

25    days that would be taken up with motions practice or

1    hearings or anything like that.  We would attempt to have

2    everything resolved before the trial.  Does that --

3         **MR. METCALF:**  Understood.  I was trying to think

4    creatively.

5         **THE COURT:**  Yeah.  Does that, in your view,

6    suggest perhaps three weeks is longer than necessary?

7         **MR. METCALF:**  No.  I think that a day or two or a

8    hearing or two would allow for everything outstanding to be

9    finalized before a jury is selected.  So I was just trying

10   to think, is there a way where the end motions -- maybe we

11   could set up a conference or maybe we could set up something

12   where we could utilize a day or two of your availability now

13   during September, October, before they actually fill up.

14   For whatever it may be, anything outstanding, conference,

15   whatever.  Because I'm sure more issues are going to pop up

16   before we start.

17        **THE COURT:**  Yes.  I think --

18        So two things:  One is, my intent is to continue

19   having regular status -- even if, hypothetically, we picked

20   a trial date eight months from now -- and I'm not saying we

21   are going to -- I would still have regular status

22   conferences and hearings from now until the beginning of

23   trial.  Some of which would be like today, sort of

24   scheduling a status.  Some of which would be argument, very

25   likely, on whichever side's motions we are going to take up.

1          It may be that the government's way of proceeding,

2    which is some motions, you know, assumed decision, hearing

3    and decision, more motions, decision, won't work for you.

4    But I think the consequences with what the government's

5    proposed is we would do a lot of what you are talking about,

6    way before the trial date.  But that still doesn't resolve

7    the question of, When can this trial get squeezed in?

8          And just so you have it, let me be very clear

9    about my schedule.  Beginning September 26th, the weeks in

10   which I do not have trial, are the week of October 24th, the

11   week of November 21st, which is Thanksgiving week, the week

12   of November 28th, which is the week of Thanksgiving.  So

13   those two weeks, the 21st of November through November 22nd,

14   I don't have trials but, of course, that is Thanksgiving.

15         Then I have another trial that begins on the 5th

16   and ends on the 16th now.  So I have the week of the 19th,

17   which is right before Christmas.  So there is no three-week

18   period at all between now and the holidays.

19         After we get to January -- and I hope I'm not

20   about to speak incorrectly, Ms. Lesley -- I believe I have

21   no trials on the calendar.

22         Is that right, Ms. Lesley?

23         **DEPUTY CLERK:**  Yes.

24         **THE COURT:**  I'm a little reluctant to set this

25   over for trial that long from now considering Mr. Lang is a

1    detained defendant.  As you've heard me express in this case

2    and I've expressed in other cases, I don't want detained

3    defendant cases to just pend, unless there is a really good

4    reason.

5              **MR. METCALF:**  Your Honor, can I just have one

6    minute to confer with my client?

7              **THE COURT:**  Yes.  Please.

8              **MR. METCALF:**   Thank you.

9         (Discussion off the record between Mr. Metcalf and

10   Mr. Lang.)

11             **MR. METCALF:**   Your Honor, while I join your

12   thoughts on that, I'm not concerned because I could -- if I

13   could speak with him a little bit further, I can and do have

14   the ability to ask for reconsideration or come up with

15   another creative solution to readdress bond with Your Honor.

16   I do plan on making this motion regarding what I'm calling

17   due process violations with regards to him and the jail.  So

18   I have -- I'm not as concerned about that.

19             I would rather spend the time doing what I have to

20   do in representing Mr. Lang than having to worry about

21   scheduling a date that I know I cannot comply with.  So I

22   am -- my position is I would rather re-address these issues

23   with Your Honor during such time, than to worry about how

24   long is it going to be before, if he's in, he goes to trial.

25             **THE COURT:**  It sounds to me what that would mean

1    then is we should pick a trial date when I first have three

2    weeks available, which would be January 9th, is the first

3    time.

4              **MR. METCALF:**  Okay.

5              **THE COURT:**  That's the first time; that would be

6    our trial date.  We would book it for the three weeks, from

7    January 9th to January 27th.  I am going to assume something

8    like a day or a day and a half of voir dire.  The procedure

9    for voir dire we will discuss well in the future, because

10   they are changing all of the time in light of standing

11   orders and the like here.

12             I understand  what you've just said, Mr. Metcalf,

13   of course, about the detention order and the due process

14   motion and the like.

15             So let me just say it slightly differently.  We

16   are setting the trial in this matter to begin no later than

17   January 9, 2023.  In light of that, I would like the parties

18   to meet and confer again.  And I understand the government

19   attempted already.  But I would like the parties to meet and

20   confer and propose a joint scheduling order, a jointly

21   proposed scheduling order, that would essentially work

22   backward from that trial date, and would have whatever set

23   of motions scheduled the parties think would be appropriate.

24             I thought that the government's structure made

25   good sense, just so you know, just in terms of the way that

1    it separated out different dates so that you can resolve

2    different issues along the way, which would obviate the need

3    for doing everything on the eve of trial.

4         But having said all of that, I also want to at

5    least keep in the back of our minds the possibility if

6    either the parties are ready to go earlier than we've been

7    discussing or my trial schedule substantially clears up,

8    that we could get three weeks somewhere in the, you know,

9    October 3rd to December 23rd time frame.

10        Obviously other cases go away.  They shorten.  It

11   may be that we can find three weeks before the end of the

12   year.  And so what I would like the parties to do, as they

13   are discussing how we get to trial January 9th, is to think

14   about a schedule that could be relatively easily modified,

15   if between now and say mid-summer we are able to grab an

16   earlier trial date.  If you understand what I am saying.

17        In other words, I would rather not just -- I mean,

18   I think we have to assume January 9th is going to be the

19   trial date.  But I don't want to give up all hope that we

20   can't do it earlier.  And I therefore don't want to bake in

21   a schedule that makes anything earlier completely

22   impossible.

23        I would like the schedule that the parties discuss

24   and propose to have some wiggle room and flexibility in it

25   such that, hypothetically, again, a November 7 trial date,

1    or whatever it is that I have, frees up, then we can grab

2    that slot.  Okay?  Is that clear enough?

3            **MR. METCALF:**  Understood.  Sure.

4            **THE COURT:**  So, Mr. Metcalf, are there any other

5    topics from your perspective you would like to discuss?

6            **MR. METCALF:**  No.  I think I about hashed it out.

7            I need to figure out exactly what is going on with

8    where he's going to be placed and address that immediately.

9    If I see fit, address that with Your Honor.  I have other

10   applications that are going to be filed, in addition to the

11   motion that was filed today, and I look forward to setting

12   up motion schedules for each one of those as well.

13           And I thank you.

14           **THE COURT:**  Thank you.  Thank you, Mr. Metcalf.

15           Ms. Rochlin.

16           **MS. ROCHLIN:**  If I may, Your Honor.

17           **THE COURT:**  Please.

18           **MS. ROCHLIN:**  I'd like to make a suggestion, which

19   is in light of the Court's directive for the parties to

20   again meet and confer, my suggestion is for the Court to put

21   a date by which the parties should meet and confer tied to

22   when the next status conference is.

23           I think that will help, because lawyers have a

24   tendency to put out the most immediate fire.

25           **THE COURT:**  Yes.

1          **MS. ROCHLIN:**  This will, I think, focus the

2    parties in a way that keeps the same events from occurring.

3          **THE COURT:**  Thank you for that, for two reasons.

4    One, is that was the one thing I indicated earlier I wanted

5    to do, which is not just have the trial happen and not have

6    statuses in this matter.  I want to do a status and pegging

7    the parties meeting, conferring and submission.  Hopefully

8    it will be a largely-agreed-upon pre-trial schedule to me

9    before that will be helpful.

10         And as I indicated, unlike in the non-detained

11   defendant context, I think it is important to have status

12   conferences in cases like this one more regularly.

13         But the -- well, let me ask Mr. Metcalf one

14   question, which is, Mr. Metcalf, again, assuming that what

15   we are talking about right now is only a status conference

16   at which we are just talking about scheduling, perhaps even

17   maybe legal argument.  Does your client want to be in person

18   for that?  Because I think it will affect Ms. Rochlin will

19   have travel schedule questions or issues, if we are doing

20   all future hearings in person.  That's why I ask.

21         **MS. ROCHLIN:**  Your Honor, before we go there let

22   me say this.  While Monday was unique in its own ways as far

23   as traveling.  I am open to whatever works best.  I do not

24   mind traveling to Washington.  I will do it as often as

25   needed.  I am equally comfortable with VTC, so whatever is

1    the most convenient, I will be fine with.

2         **THE COURT:**  Thank you for that.

3         I just think it's -- as we talk about scheduling,

4    I think you need to know, are you sitting at your computer

5    for an hour on VTC or getting on a plane to come here.  It's

6    a different question.

7         **THE COURT:**  Mr. Metcalf?

8         **MR. METCALF:**  The best way I can answer that is I

9    am not authorized to have any appearances without taking the

10   position that Mr. Lang be in person.

11        With that being said, I like to consider myself

12   being a reasonable person with the job that I do.  And any

13   time I confer with any opposing side, I don't care that we

14   are adversaries, I will always work something out.  I am

15   always flexible, and I am always willing to accommodate any

16   request.  But as far as Mr. Lang is concerned, I have been

17   specifically requested that going forward he be in person.

18        **THE COURT:**  And that's fine.  And as I've

19   indicated in the past, that's fine with me.  I just wanted

20   to make sure we understood that so when we talk about what

21   the calendar looks like, Ms. Rochlin understands what we are

22   talking about an in-person hearing.

23        So with that, are the parties available on May 4th

24   at 2 p.m. for an in-person status?

25        I guess -- why don't we just say this, May 4th,

1    2 p.m. for an in-person status, possibly, unless you hear

2    from me otherwise, argument on the Motion to Dismiss Count 9

3    and discussion, as needed, about the pretrial schedule.

4                  **MR. METCALF:**  That works for us, Your Honor.

5                  **THE COURT:**  Ms. Rochlin?

6                  **MS. ROCHLIN:**  Yes, Your Honor, that works.

7                  **THE COURT:**  So then what I would like to have

8    happen is, I would like the parties to meet and confer and

9    propose -- entirely jointly, if possible, and noting

10   disagreement where not -- a joint status report on April

11   29th, which is the Friday before that next status, regarding

12   what would be the proposed scheduling order for this case,

13   assuming a January 9 trial date.

14                 So, again, I think just to round it off, we are

15   notionally setting the trial date in this case on January

16   9th.  The parties are to meet and confer and to discuss a

17   schedule for all pretrial events, and to submit what will

18   hopefully be an agreed-upon schedule and, if not, places

19   where disagreements are noted, to submit by April 29th,

20   2022, that proposal or proposals.

21                 We will then have a status conference on May 4th

22   at 2 p.m. in person in this courtroom.  At that status

23   conference, we will discuss the schedule, we will discuss

24   other status issues.  And unless you have heard to the

25   contrary from me before then, we will have argument.  And I

1    may decide orally the Motion to Dismiss Count 9.

2              Okay?  Is that all clear enough?  Mr. Metcalf?

3              **MR. METCALF:**  Yes.

4              **THE COURT:**  Ms. Rochlin?

5              **MS. ROCHLIN:**  Yes, Your Honor.

6              **THE COURT:**  Okay.  Thank you.

7              So I look forward to those submissions, and then

8    we will see everyone in person May 4th.

9              **MR. METCALF:**  Your Honor, can I just address

10   something completely unrelated to the case?

11             Mr. Lang, his father had it set up where they were

12   supposed to go see him at Lewisburg.  And I believe that

13   that schedule was supposed to take place.  And now that he's

14   been transferred and confirmed to me that Alexandria is more

15   of a permanent location now, he has not been able -- he was

16   not able to have any visitors, other than myself, during the

17   entire time he was in D.C.

18             I know -- I did ask the marshals this, but it's

19   better for me to ask you.  Is there any chance that Jake can

20   give his father a little hug or embrace?  He has not been

21   able to see his father the last 15 months.

22             **THE COURT:**  I'm fine with that.  Do the marshals

23   have a serious problem with that?

24             **MARSHAL:**  No.

25             **THE COURT:**  You don't have a serious problem with

1    it?

2                **MARSHAL:**  (inaudible)

3                **THE COURT:**  Very briefly.

4                **MR. METCALF:**  Thank you, Your Honor.  I really

5    appreciate that.

6                **MR. METCALF:**  Thank you for that, Judge.

7                **MR. LANG:**  Thank you.

8                **THE COURT:**  Okay.  May 4th.  See you all then.

9                **MR. METCALF:**  Thank you.

10        (Proceedings concluded at 4:49 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    **C E R T I F I C A T E**

2

3            I, **Lorraine T. Herman, Official Court Reporter,**

4    certify that the foregoing is a true and correct transcript

5    of the record of proceedings in the above-entitled matter.

6

7

8

9

10   September 23, 2022             /s/_____
                **DATE**                       **Lorraine T. Herman**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25