### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

            Plaintiff,

      vs.

EDWARD JACOB LANG,

            Defendant.

_____/

Criminal Action
No. 1:21-053

Washington, DC
October 24, 2022

1:38 p.m

TRANSCRIPT OF TELEPHONE STATUS CONFERENCE
**BEFORE THE HONORABLE CARL J. NICHOLS**
UNITED STATES DISTRICT JUDGE

APPEARANCES:

**For the Plaintiff:**    **CRAIG ESTES**
    USAO
    John Joseph Moakley Fed Courthouse
    1 Courthouse Way
    Boston, MA 02210
    **KAREN ROCHLIN**
    DOJ-USAO
    99 Northeast 4th Street
    Miami, FL 33132

**For the Defendant:**    **STEVEN ALAN METCALF, II**
    METCALF & METCALF, P.C.
    99 Park Avenue, 6th Floor
    New York, NY 10016
    **ROBERT JENKINS**
    BYNUM & JENKINS, PLLC
    1010 Cameron Street
    Alexandria, VA 22314

**Reported By:**    **LORRAINE T. HERMAN, RPR, CRC**
    Official Court Reporter
    U.S. District & Bankruptcy Courts
    333 Constitution Avenue, NW
    Room 6720
    Washington, DC 20001

*** Proceedings recorded by stenotype shorthand.
*** Transcript produced by computer-aided transcription.

1                  **P R O C E E D I N G S**

2          **DEPUTY CLERK:**  Good afternoon, Your Honor.  This

3   is criminal case year 2021-053, *United States of America*

4   *versus Edward Jacob Lang*, who is present by telephone.

5          Counsel, please introduce yourselves for the

6   record, beginning with the government.

7          **MS. ROCHLIN:**  Good afternoon, Your Honor.

8   Assistant U.S. Attorneys Karen Rochlin and Craig Estes, for

9   the United States.

10         **THE COURT:**  Good afternoon.

11         **MR. METCALF:**  Good afternoon, Your Honor.  Steven

12   Metcalf on behalf of Mr. Lang.

13         **MR. JENKINS:**  Good afternoon, Your Honor.  This is

14   attorney Robert Jenkins on behalf of the defendant,

15   Mr. Lang.

16         **THE COURT:**  Thank you, Mr. Jenkins.

17         Mr. Metcalf, does Mr. Lang consent to proceed with

18   this call by phone, not in person, in light of the fact that

19   the status conference and the CARES Act and the like?

20         **MR. METCALF:**  At this time, Your Honor, yes.

21         **THE COURT:**  Okay.  Thank you.

22         I agree it's appropriate to proceed by phone.

23         So, obviously, I recall our most recent discussion

24   about scheduling this matter on the 1512 count.

25         Ms. Rochlin, would you like to proceed and just

1    bring me up to speed on any discussions you may have had

2    already with defense counsel.  And then, Mr. Metcalf, I will

3    turn to you.

4              **MS. ROCHLIN:**  Yes, Your Honor.  The --

5              **THE DEFENDANT:**  Your Honor, excuse me.  This is

6    Mr. Lang.  I haven't had an opportunity to talk to my

7    attorney, Mr. Jenkins.  I would like to request a breakout

8    room to speak with him for about five minutes, if that would

9    be possible.

10              **THE COURT:**  To Mr. Jenkins and Mr. Metcalf or just

11   Mr. Jenkins?

12              **THE DEFENDANT:**  I'd like to speak to them both,

13   please.

14              **THE COURT:**  We do not have the ability to put you

15   into a breakout room on a phone call like this.

16              Mr. Lang, have you not had the opportunity since

17   the status conference last week to talk to your counsel

18   about this?

19              **THE DEFENDANT:**  Obviously, there's been an ongoing

20   problem as far as receiving legal calls in any facility I

21   have been at, and I was recently moved to Rappahannock.

22              And my attorney, Robert Jenkins, actually traveled

23   down here twice from Alexandria, drove down here two hours,

24   and was rejected twice by the jail, twice in a row, just

25   last week.  It's been impossible for him to see me in

1     person, and the legal calls have not been figured out.

2             The U.S. Marshals have rejected the ability to do

3     legal calls.  And I can't make outgoing legal calls here.

4     So as far as I'm concerned, I really don't have any contact

5     with my attorneys.  My due process rights are being

6     consistently and systematically violated and it continues at

7     this facility.

8             **MS. ROCHLIN:**  Your Honor, if I may.

9             **THE COURT:**  Yes.

10            **MS. ROCHLIN:**  I was on and off the phone with

11    Mr. Metcalf before today's hearing, because Mr. Metcalf was

12    speaking with his client, the defendant in this case.  So

13    there has been some communication with counsel.  I

14    understand Mr. Lang wishes to speak with Mr. Jenkins.  I

15    would just note, what the Court is probably already aware

16    of, which is Mr. Jenkins has filed a notice to withdraw.

17            But I leave going forward in the hands of the

18    Court and defer to Your Honor.

19       (Multiple speakers)

20            **THE DEFENDANT:**  These aren't even legal calls.

21    Sorry, Your Honor --

22            **MR. METCALF:**  Your Honor -- Your Honor -- Jake.

23    Jake, hang on one second.

24            **THE DEFENDANT:**  Please don't speak over me.  I'm

25    not finished talking.

1          These calls that I was just on my attorney with

2    have not been privileged calls.  I've had to make them

3    through the wall phone at the jail.  So there's been many

4    discussions and details I haven't been able to discuss with

5    any of my attorneys in person or on any privileged legal

6    call for a very long time, extending into Alexandria, and

7    way before that as well.

8          The ability to make legal -- specific legal calls,

9    where I can speak openly and in a manner that is not being

10   listened to by enumerous [sic] amounts of FBI or DoJ agents,

11   has not been afforded to me for years I've been locked up.

12   I need to make that point very clear that while I have been

13   on the phone with my attorney at times, none of it's been

14   privileged.  I've been, you know, basically, held back from

15   speaking in manners that are clear and concise and to the

16   point with my attorneys.  I haven't had any opportunity to

17   speak with Mr. Jenkins about this.

18          **MR. METCALF:**  Your Honor, Steven Metcalf, if I

19   may.

20          **THE COURT:**  Yes, please.

21          **MR. METCALF:**  Your Honor, yes, I have had the

22   ability to speak to Jake since he's been moved to

23   Rappahannock and since last week but, again, like Mr. Lang

24   just pointed out, they are not on legal calls.  They are not

25   done by legal video, visits or anything along those lines.

1    So they have been under Jake's account and definitely

2    monitored and definitely not privileged calls; and that

3    continued up until today.

4         I think that Mr. Lang would like to spend just a

5    couple minutes, which I tried to facilitate this morning but

6    just was unable to, to have a word with Mr. Jenkins with me

7    being present.

8         So I ask Your Honor if -- I wouldn't mind if we

9    had a couple minutes to be able to do that.  I don't know

10   how it's possible.  I just want to let Your Honor know that

11   those are the circumstances.

12   **THE COURT:**  One possibility to facilitate a call

13   directly between Mr. Lang or among Mr. Lang, Mr. Jenkins and

14   Mr. Metcalf, if it's possible -- I don't know if it's

15   permissible -- that the guard in the office where Mr. Lang

16   is presently could -- Mr. Lang, you could ask him this --

17   could email Mr. Metcalf the number where you are to have a

18   call, and we could resume this call.  But this is not like a

19   Zoom where we can just do a breakout.

20   **MR. METCALF:**  Your Honor, Steven Metcalf.  I

21   understand that and I really appreciate it.  Thank you.

22   **UNIDENTIFIED SPEAKER:**  (indiscernible)

23   **THE COURT:**  Whoever that was that just spoke, I

24   could not hear a word that you said.

25   **THE DEFENDANT:**  It was just the radio going off in

1    the guard's room.  Sorry, Your Honor.

2             **THE COURT:**  Is there somebody there, Mr. Lang, who

3    would be willing to provide the number you are at to

4    Mr. Lang -- excuse me -- Mr. Metcalf, or vice versa, for you

5    to hang up here and call Mr. Metcalf directly?

6             **CORRECTIONAL OFFICER:**  Yes.  Judge Nichols, this

7    is Mr. Fife one more time.  I'm the case manager at the

8    jail.

9             **THE COURT:**  Hi.

10            **CORRECTIONAL OFFICER:**  I am going to give the

11   phone number right now to everyone involved.

12            **THE COURT:**  Okay.

13            **THE DEFENDANT:**  Thank you.

14            **CORRECTIONAL OFFICER:**  Ready for the phone number?

15            **MR. METCALF:**  I'm ready.

16            **CORRECTIONAL OFFICER:**  540-288-5245, extension 4

17   --

18            **MR. METCALF:**  I'm sorry.  540-288 --

19            **CORRECTIONAL OFFICER:**  52 --

20            **MR. METCALF:**  -- 5245?

21            **CORRECTIONAL OFFICER:**  Yep.

22            **MR. METCALF:**  What was the extension?  I didn't

23   mean to cut you off.

24            **CORRECTIONAL OFFICER:**  478.

25            **MR. METCALF:**  Your Honor, could we have

1    potentially 5 to 10 minutes to be able to speak to Mr. Lang

2    and resume this call?

3              **THE COURT:**  Yes.  Let's do 10 minutes.  Ms. Lesley

4    will remain on this line.  Everyone can either hang this

5    line up or stay on, if they want.  But you, Mr. Metcalf and

6    you Mr. Jenkins, you can drop from here.  And then you can

7    just dial back in, and Ms. Lesley will let me know when

8    everyone has reconvened.  Okay?

9              **MR. METCALF:**  Thank you, Your Honor.

10              **THE COURT:**  Okay.  Thank you.

11         (Break)

12              **THE COURT:**  Ms. Lesley, I understand everyone is

13    back on the line, could you reconvene this hearing?

14              **DEPUTY CLERK:**  Yes, Your Honor.  We are now back

15    on the record.

16              **THE COURT:**  So why don't we go back to where we

17    began, which is where I was asking Ms. Rochlin, from the

18    government's perspective, at least, to tell us where we are.

19    And then I will turn it over to Mr. Metcalf.

20              So, Ms. Rochlin?

21              **MS. ROCHLIN:**  Yes, Your Honor.

22              Before this status began, we did have the

23    opportunity to speak with Mr. Metcalf.  And my understanding

24    is the parties are actually in agreement that we believe the

25    case should be stayed until a ruling issues from the U.S.

1          Court of Appeals for the District of Columbia Circuit.

2                    I will obviously let Mr. Metcalf speak for himself

3          on that point, but that is what the parties have arrived at.

4                    **THE COURT:**  Thank you, Ms. Rochlin.

5                    **MR. METCALF:**  Yes.  Thank you, Your Honor.  Steven

6          Metcalf.

7                    In regards and in light to Mr. Lang's recent

8          transfer and our inability to communicate the way that we

9          want to be able to communicate and to be able to have access

10         to various different discovery pieces and discovery dumps

11         that have been put on, and it's been our position that we

12         want Mr. Lang's involvement in his own defense because he

13         does provide a crucial component to his defense, based on

14         the video evidence, so on and so forth.

15                   With that, in conjunction to the District of

16         Columbia Court of Appeals and oral arguments being heard on

17         December 12th and the holidays that follow, I think a stay

18         is appropriate, because that will allow us to be in a better

19         place to ascertain various different decisions before going

20         to trial.

21                   And one of them being if Mr. Lang is going to have

22         to be subject to two different trials and incur such

23         expenses.  So there's a financial component to this.

24         There's various different aspects outlaid in our current

25         motions that are pending with regards to our due process

1    motion and those are continuing.  We believe that this is

2    the best position in going forward, Your Honor.

3              So, yes, we did agree that a stay pending the

4    opinion in the D.C. Court of Appeals with regard to the 1512

5    motion is the most appropriate way to proceed.  And we would

6    defer to the Court as to how the Court wishes to rule on

7    this matter.

8              **THE COURT:**  Mr. Metcalf, have you consulted with

9    Mr. Lang and advised him fully on all of the considerations

10   at least from your perspective about a stay, his detention,

11   the inter-relationship between the 1512 appeal and this case

12   and, in particular, the fact that a decision from the Court

13   of Appeals could be many months from now?  Have you advised

14   him on all of those issues?

15             **MR. METCALF:**  A hundred percent, Your Honor.  We

16   have gone through those.  Although we have not been on a

17   legal call since he's been at Rappahannock jail.  Yes, Your

18   Honor, we've discussed this fully.

19             We have various motions pending regarding his

20   detention.  Regardless of the outcome of those applications

21   before this Court, we feel that this is the best way to

22   proceed.  And I have advised him accordingly with regard to

23   all of the issues Your Honor has mentioned and I mentioned

24   as well.

25             **THE COURT:**  Mr. Lang, this question is for you.

1    Do you feel comfortable that you have been advised about all

2    of the considerations, and do you agree that it is

3    appropriate, in light of the appeal that the government has

4    taken from my dismissal of the count we have been talking

5    about, and the fact that there's an appeal scheduled to be

6    argued in a month and a half, that it makes sense to stay

7    this case?

8         **THE DEFENDANT:**  Your Honor, it is my opinion, and

9    I agree with that circumstantially.  Obviously, in the last

10   status conference we had last week, there were ideas thrown

11   out that, you know, it may not be exactly equitable to

12   justice to remain in detention indefinitely while this case

13   gets pushed out.

14        So I defer to the Court, as to the motions we are

15   about to file regarding that, just to take that in greater

16   consideration because it's been over 22 months.  So that's

17   all I have to say about that.

18        **THE COURT:**  Thank you.

19        So here's what we are going to do.  Essentially,

20   because the parties are in agreement that this case should

21   be stayed, I will stay it for a period of time.  Sort of in

22   an interim sense.  I will -- we will take the

23   currently-operative trial date off the calendar.  So this

24   case will not be going to trial in January.

25        I don't want to simply impose something like an

1    indefinite stay until the Court of Appeals either issues a

2    panel opinion or, perhaps, further appellate processes work

3    their way through.  Because, of course, the losing party

4    might seek en banc review or even file a cert petition.

5    That seems like that might all happen, if at a minimum if we

6    have a panel opinion, that might give us some clarity around

7    this question.

8          But even before that, even before the panel

9    opinion, I don't want to simply assume this case is going to

10   sit and nothing is going to happen if a lot of time pends

11   between today's date and the panel opinion.

12         So just sort of ticking through things in order,

13   one, we will take this case off the trial calendar; two, we

14   will "stay" it.  But as I said, I don't want that to be,

15   essentially, a stay for all purposes or without at least

16   having some check-ins just to make sure that, you know,

17   things don't just languish.

18         What I would like to do, as a result, is I want to

19   set another status in this matter for approximately two

20   months from now.  I recognize that that will be very

21   contemporaneous with the Court of Appeals oral argument in

22   the *Miller* case, but two months is still a pretty long time

23   and it may be that some other developments may arise in the

24   interim.  So on this question, are the parties available for

25   a status by phone at 2:30 p.m. on December 16th?  Not quite

1    two months from now but --

2         **MR. METCALF:**  Your Honor, this is Steven Metcalf,

3    if I may.  I don't -- maybe I should have articulated this a

4    little better.  I don't want there to be an outright stay of

5    everything.  And I discussed with the assigned government on

6    the scenario about maybe amending our scheduling order so we

7    could continue motions throughout such time.

8         Is there any way that we could encompass that into

9    Your Honor making a new status conference date and how we

10   proceed going forward?

11        **THE COURT:**  So the way I would think about it then

12   is, what we are really talking about is moving the trial

13   date back, but continuing to litigate the case --

14        **MR. METCALF:**  Exactly.

15        **THE COURT:**  -- on a different schedule.  I'm fine

16   with that too.  That's not really a stay; that's a -- just a

17   shifting the trial schedule back.  So when there is a trial

18   in this case, we may know what the Court of Appeals has done

19   and has decided.

20        Just looking at my calendar as a result.

21   Obviously, to make the time period meaningful, we have to

22   build in -- I'm just looking at my calendar.  So bear with

23   me for a second.

24        **MR. METCALF:**  Take your time, Your Honor.

25        **THE DEFENDANT:**  Your Honor, if I may add

1    something, this is Mr. Lang.

2            **THE COURT:**  Sure.

3            **THE DEFENDANT:**  With the continuance of the

4    litigation of the case, it is my opinion and my legal team's

5    opinion that it's been proven impossible, systematic due

6    process violations, for me to contribute to these pretrial

7    motions.  It's been extremely difficult for me to do.

8            This is my ninth facility the government has moved

9    me to.  With every single one there is COVID quarantine,

10   re-acclamation, an understanding of getting legal calls and

11   the legal video visits.  It's just becoming such an

12   hindrance and an obstacle to my entire legal case.

13           If we are going to continue to litigate out while

14   the trial has been put on stay, just in the interest of

15   justice, it is proving to be impossible, just on the basic

16   level of how we are seeing everything pan out -- and, you

17   know, I just would like to enter that into the record, and

18   just to let you know that the continued obstacles, with nine

19   different facilities and, you know, legal call access and

20   being able to have my discovery laptop in jails, which has

21   not been granted to me yet.  All of those different matters

22   have just become such a hindrance to justice that the Court

23   should, you know, definitely understand we are seeking

24   relief on that, and that has continued, living under duress

25   for me here in many different ways, legally, socially,

1    spiritually.

2              So, you know, I just have to put that out into the

3    record that, you know, I want to contribute to my own legal

4    defense, and I've been denied that right systematically for

5    almost two years now; that's just my opinion.  And I think

6    the Court should understand that it has been backed by

7    hundreds of grievances I've filed.  My attorneys have also

8    been in congruence with this, trying to reach out to me.

9    It's not just me, it's the entire system has been failing

10   us.

11             **THE COURT:**  Your views are noted for the record.

12   As we've discussed many times in the past, I am here to

13   decide any and all appropriate motions that are filed before

14   me.  There is a Motion to Dismiss the case for due process

15   violations, which I will resolve.

16             We have discussed, in the past, the filing of

17   motions relating to either, of course, your detention more

18   generally or access to counsel and, you know, it seems to me

19   that some, but not all of those questions, are currently

20   before me.  But as always, if your lawyers want to file

21   motions that tee them up, I will decide them.

22             And as we think about the schedule, even if all --

23   even if we were going to "stay" the case, and to have a mere

24   status conference in a couple of months, I was and do intend

25   to file the already-briefed motion, the so-called Motion to

1    Dismiss Case for Lack of Jurisdiction and Due Process

2    Violation.  So I will resolve that.  And your views are

3    noted for the record, Mr. Lang.

4          As it relates to scheduling, because -- and I

5    recognize that there's a question of what Mr. Lang would

6    like by way of, you know, being released and access.  But

7    for now, Mr. Lang, is obviously still a detained defendant.

8    In my view, as I said before, that means his trial takes

9    precedence over all non-detained defendants' trials.

10          But from my perspective I will, basically, bump

11    off of my schedule any other trial for Mr. Lang.  I have,

12    essentially, a full trial schedule beginning April 1 through

13    mid- to late-June.  That would mean if we would reschedule

14    the trial in this matter for any period in the couple-month

15    window, I would have to bump a trial.  And there isn't

16    really any magic to which trial gets bumped.

17          The question then is, effectively, what do the

18    parties believe is the most appropriate, approximate

19    schedule to set this case for trial in, in light of the

20    desire to have clarity from the Court of Appeals?

21          And I'll just tell you right now, if it's argued

22    in December, it seems unlikely that there would be an

23    opinion -- I mean, it may be, but it seems relatively

24    unlikely there will be an opinion in January.  It's

25    possible.  More likely February or more likely March or by

1        then.

2              Do the parties believe, in light of their

3        discussions, that they want to have a month or two after

4        receiving the panel opinion for the trial date or have they

5        not had that granular of a conversation?

6              Ms. Rochlin, from your perspective?

7              **MS. ROCHLIN:**  Your Honor, from my perspective, I'm

8        not sure we've had that granular a discussion.

9              This may be an appropriate time to let the Court

10       know, for whatever assistance it provides in planning, I no

11       longer believe the government's case will last as long as

12       two weeks.  I believe I can fashion a case or the government

13       can fashion a case that will last approximately one full

14       week.  So if that's helpful to the Court in terms of

15       thinking about other openings when the time arises, I wanted

16       to flag that.

17             From there -- I learned a long time ago not to

18       predict what courts, especially Court of Appeals, are going

19       to do.  So I think it makes sense to allow some space

20       between any ruling and a trial date.  I would think 30 days

21       would be sufficient, but I will defer to the Court after

22       hearing from Mr. Metcalf what works best.

23             **THE COURT:**  Mr. Metcalf, what say you?

24             **MR. METCALF:**  Your Honor, I thought about

25       approaching the subject, and I may have attempted to, but

1      essentially, yes.

2              Your Honor hit the nail on the head.  I would

3      like -- my position is, I would want two months after a

4      decision.  Because then there's a lot of logistics.  We have

5      to submit everything that would have to do with the jury

6      instructions and the jury panel and all of that jazz,

7      getting ready and more closer to trial.  So my position

8      would be at least two months.  A little bit longer than 30

9      days.

10             **THE COURT:**  Understood.  Thank you.

11             I'm looking at my calendar.  Here is what I would

12     like to do -- and this is obviously subject to the parties'

13     availability -- it's taking into account all sorts of

14     considerations, including my trial schedule and, frankly,

15     other trials.  In light of Ms. Rochlin's note that the

16     government's case is substantially shorter, perhaps, than it

17     was originally anticipated to be -- and we can really think

18     about this possibly as a two-week trial -- let's set this

19     trial -- again, subject to party availability -- to begin

20     May 29th.

21             It seems to me -- and there's no guarantee, of

22     course, that the D.C. Circuit is going to decide the appeal

23     in any particular time, but it gives us quite a bit of

24     wiggle room.  We will move the trial date to that day.  And

25     then it will be for the two weeks from May 29 to June 9.

1    Let's just start here:  Are the parties available

2    those two weeks?

3    **MS. ROCHLIN:**  For the United States, yes, Your

4    Honor.

5    **THE COURT:**  Mr. Metcalf?

6    **MR. METCALF:**  Your Honor, just one second.  I'm

7    going through my calendar.  I don't have any conflicts at

8    that point in time.  At this point I would have to say, yes,

9    I would be available to that, subject to anything that

10    potentially could happen in the future.

11    **THE COURT:**  Yes.  Many things could get in the way

12    of this.  So we are going to change the trial date in this

13    matter from the currently-operative trial date to May 29th.

14    That, then, as we discussed in the last hearing,

15    provides substantial additional flexibility in the

16    currently-operative dates under the scheduling order.  And

17    what I want then, as a result, is for the parties in the

18    first instance to discuss how they would propose to,

19    basically, amend the scheduling order.

20    And Ms. Lesley notes to me that someone dropped

21    off, she believes.  Do we still have --

22    **MR. METCALF:**  Your Honor, Steven Metcalf.  I can

23    clarify that.  I did not mean to cut you off.  I just

24    received a message from Attorney Jenkins that he dropped off

25    and is coming back in.

1          **THE COURT:**  Okay.  Great.  I just wanted to make

2     sure we had not lost the court reporter.  It sounds like we

3     have not.

4          So a new trial date, as we discussed.  I would

5     like the parties to meet and confer and to propose to me a

6     complete joint agreement -- and if not those areas of

7     disagreement noted -- to me by November 14th, what would be

8     a new scheduling order working back from the new trial date.

9     That can include timing of any and all things that the

10    parties anticipate needing to do, either as currently

11    contemplated by the scheduling order or as newly

12    contemplated.

13         I will, of course, resolve all fully-briefed and

14    ripe motions.  The schedule should then include schedule for

15    all other motions.  I do think it still makes sense,

16    however, to do a status conference sometime in mid- to

17    late-December.  But the parties can discuss the

18    appropriateness of that and include that, should they wish,

19    in their submission on November 14th.

20         What I am basically envisioning -- now that we've

21    moved the trial date as we discussed -- for the parties,

22    over the next three weeks, to discuss what an appropriate

23    schedule looks like between now and then.  And, as I said, I

24    will resolve all currently-ripe motions.

25         The last thing, from my perspective, that we need

1      to cover is whether, in light of this discussion,

2      Mr. Metcalf, does Mr. Lang believe it's appropriate to

3      exclude time under the Speedy Trial Act between what was the

4      old trial date and what is the new trial date?

5           **MR. METCALF:**  Your Honor, yes.  In the interest of

6      the public's availability and the interest of the

7      overwhelming discovery and everything that was discussed

8      today, absolutely, we waive time.

9           **THE COURT:**  And, Ms. Rochlin, the government

10     agrees, I assume?

11          **MS. ROCHLIN:**  Yes, Your Honor.  And I believe the

12     pending interlocutory appeal is a further basis for

13     excluding time, but we agree exclusion of time until the

14     trial date is appropriate.

15          **THE COURT:**  Yes.  And this may be even belts and

16     suspenders because there are pending motions, which likely

17     have the effect of excluding time, but just for the good of

18     the order, I think it is appropriate to do so.

19          I find that for the various reasons discussed

20     already today, and mentioned by Ms. Rochlin, and generally

21     on the record in this case, that the ends of justice are

22     best served and outweigh the interests of the public and

23     Mr. Lang in a speedy trial.  And, therefore, the time

24     between the -- well, certainly the time between today's date

25     and the new trial date of May 29, 2023, shall be excluded

1    under the Speedy Trial Act.

2            I think there is some question of whether time has

3    been excluded throughout this case.  And I certainly had

4    intended to do so, as we resolved the scheduling issues and

5    the like.  And whether we've done that or not, I am going

6    to, today, just to be crystal clear, say that the time

7    should be excluded nunc pro tunc from June 7, 2022, which

8    may be the last time which time was excluded, at least

9    perhaps as reflected in the docket.

10            So nunc pro tunc back to June 7th, 2022 through

11    the new trial date of May 29, 2023, that period shall be

12    excluded in computing time in which the trial must commence

13    in this case under the Speedy Trial Act.

14            With all of that, are there any other topics,

15    Ms. Rochlin, from the government's perspective that needs to

16    be discussed?

17            **MS. ROCHLIN:**  Um -- only, Your Honor, if the Court

18    chooses now, but I suppose it could also wait to address the

19    pending Motion to Withdraw from Mr. Jenkins.

20            **THE COURT:**  Does the government oppose that?

21            **MS. ROCHLIN:**  No, Your Honor.  We really don't

22    have a dog in the fight.

23            **THE COURT:**  And, Mr. Metcalf, you're obviously

24    continuing to serve as counsel?

25            **MR. METCALF:**  That's correct, Your Honor.

1        **THE COURT:**  Mr. Lang, you are aware of this

2    motion, the motion by Mr. Jenkins to withdraw as your

3    counsel?

4        **THE DEFENDANT:**  Yes, I am aware of it, Your Honor.

5        Also part of, you know, the continued -- just

6    difficulty of managing a legal case from being behind bars

7    and without legal calls, it's caused so much stress, that

8    even bringing in a new attorney and him trying to

9    navigate -- like I just told you, he visited down here at

10    Rappahannock two days, just a week or two ago, to try to

11    visit me and bring me all of my legal documents and things

12    I've been working on for almost two years from Alexandria.

13    He was denied access.

14        The environment for him to be able to come in and

15    to be able to work for me and for my legal defense has been

16    so toxic by the systematic deprivation of my constitutional

17    rights, my due process rights, it's even impossible for me

18    to bring a new attorney in and to set them up in an

19    ecosystem and environment where they can actually get work

20    done.  There is no access to his client.  It's become an

21    impossibility for me to do anything in regards of building a

22    solid, legal battle and defense, here, on my side.

23        It's just shown by an attorney such as Robert

24    Jenkins, who is experienced, trying to come into a team that

25    has been just absolutely so dysfunctional because of my

1    detention in the systematic deprivation of my rights, that

2    he can't even contact me, he can't even get -- and really

3    just jump into my legal battle, because there is no way for

4    him to really be a part of it.

5           So that's just a further -- another one of the

6    hindrances of my detention and the government's continued

7    abuse of my constitutional rights.

8           **THE COURT:**  Are you opposed to his withdrawing?

9           **THE DEFENDANT:**  No, I'm not.  No, Your Honor.

10          **THE COURT:**  Okay.  Thank you.

11          I was going to enter an order granting the Motion

12   to Withdraw, but since Ms. Rochlin raised it, I grant that

13   motion orally.  I'll enter an order to that effect.

14          Mr. Jenkins, are you on?

15          **MR. JENKINS:**  I am, Your Honor.

16          **THE COURT:**  Did you, in fact, travel to

17   Rappahannock twice to try to visit Mr. Lang and get turned

18   away?

19          **MR. JENKINS:**  I actually made three attempts, Your

20   Honor.  There is reasoning behind why I was unable to

21   actually have the visit.  I don't know if the Court would

22   like me to augment the record by sharing my views as to why

23   those three efforts were unsuccessful.  If that's the

24   pleasure of the Court, I certainly am prepared to do so.

25          **THE COURT:**  Yes.  I'd like to hear from your

1    perspective.

2              **MR. JENKINS:**  Yes.

3              Your Honor, consistent with other clients I have

4    had detained at the Rappahannock Regional Jail, who are

5    federal pretrial detainees, they have a process that only

6    those who are approved by the United States Marshal Service

7    are permitted to have access to inmates there; and that

8    includes counsel of record.

9              So on my first trip down to the facility, that's

10   what I was told is because, even though I was counsel of

11   record, but because the facility did not have my name or for

12   that matter any names on Mr. Lang's approved legal team

13   visiting list, I was denied the ability to see him.

14             On my second trip down, once I had obtained

15   approval, I waited at the facility for approximately two

16   hours.  Mr. Lang -- another inmate, not Mr. Lang, was

17   mistakenly brought to me for the visit.  Once they

18   discovered that the wrong inmate had been brought to me, the

19   time for legal visitation had all but expired.  I think

20   there might have been 10 minutes left or something like that

21   nature.  So I departed the facility a second time without

22   gaining access to Mr. Lang.

23             On my third visit, it was on the weekend.  I

24   traveled down to Rappahannock on a Saturday.  I arrived

25   sometime after 12 p.m. only to be informed at that point in

1    time that Saturday visits are limited between the hours of

2    8 a.m. and 12 p.m., and I was arriving outside of that

3    timeframe.  So those were my three failed efforts for

4    visiting and attempts to visit Mr. Lang.

5              **THE COURT:**  Thank you, Mr. Jenkins, for that.

6              So as I noted, your Motion to Withdraw is granted.

7    We'll so order it, just so the record is clear.

8              Are there other topics other than that,

9    Ms. Rochlin, from the government that you would like to

10   raise?

11             **MS. ROCHLIN:**  No, Your Honor.

12             **THE COURT:**  Mr. Metcalf, from your perspective?

13             **MR. METCALF:**  Your Honor, I have nothing further

14   unless Mr. Lang wishes to be heard.

15             And I just want to make sure that I'm clear, the

16   next scheduling hearing date, are we going to decide that in

17   our submissions by 11/14?  I'm just unclear about that

18   component.

19             **THE COURT:**  Yes.  I would like to have -- frankly,

20   I would like to have fairly-regular status calls in this

21   matter, just in case something comes up that we should

22   discuss.

23             For example, if the D.C. Circuit were to decide

24   the *Miller* appeal somewhat quicker or if there is some other

25   intervening event, because Mr. Lang is detained, I don't

1    want a seven-month or eight-month period until the trial

2    date without interim status conferences.  My idea is one in

3    the middle of December makes sense, as the first next one.

4    But I leave it to the parties to discuss that question and

5    to include that in a scheduling order that you will propose

6    on the 14th.  Okay?

7            **MR. METCALF:**  Understood, Your Honor.  And I thank

8    you for that clarification.

9            **THE COURT:**  Thank you, all.

10           **MR. METCALF:**  Thank you.

11           **MS. ROCHLIN:**  Good afternoon, Your Honor.

12       (Proceedings concluded at 2:39 p.m.)

1                                    **C E R T I F I C A T E**

2

3              I, **Lorraine T. Herman, Official Court Reporter,**

4       certify that the foregoing is a true and correct transcript

5       of the record of proceedings in the above-entitled matter.

6

7              **Please Note:**  This hearing occurred during the

8       COVID-19 pandemic and is therefore subject to the

9       technological limitations of court reporting remotely.

10

11

12

13

14       ___November 5, 2022___          __/s/_____
                 **DATE**                    **Lorraine T. Herman**

15

16

17

18

19

20

21

22

23

24

25