**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-cr-00053 (CJN)** |
| **v.** | : | |
| | : | |
| **EDWARD JACOB LANG,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OMNIBUS OPPOSITION**
**TO DEFENDANT'S MOTIONS *IN LIMINE***

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, respectfully opposes the various motions *in limine* and requests, ECF

102 & 103, filed by defendant Edward Jacob Lang (hereinafter, "Lang" or "the defendant"). In

particular, the defendant (1) seeks to preclude introduction of a "45-minute Instagram chat" and

"all Telegram chats" at trial, (2) seeks to preclude use of "certain terms" at trial, and (3) asks the

Court to agree *prior to* trial to instruct the jury on self-defense and defense of others.[1]  *See* ECF

102. In addition, the defendant also asks the Court to release him from his obligation to provide a

pretrial proffer of evidence sufficient to raise self-defense/defense of others affirmative defenses,

or in the alternative, to forbear from precluding him from raising those defenses based solely on

the limited and facially insufficient facts that he "is willing to proffer at this point."  *See* ECF 103

at 4.

Respectfully, the Court should deny the defendant's motions and requests. In essence, the

defendant asks the Court to exclude his recorded statements about his activities and motives on

---

[1]     In his request regarding self-defense and defense of others, the defendant acknowledges
that "it is reasonable for this Court to hold in abeyance whether it will instruct the jury with an
instruction along these lines: if (1) Lang actually believes that the other person is in imminent
danger of bodily harm, and if (2) Lang has reasonable grounds for that believe."  ECF 102 13-14.

January 6, 2021, together with language that accurately describes both his criminal conduct and the unprecedented assault on the U.S. Capitol building—and the law officers who sought to defend it—on January 6, 2021. The defendant (prematurely) asks the Court to agree to give jury instructions for his claimed affirmative defenses in advance of trial, while simultaneously insisting that he should not be required to provide any pretrial proffer of evidence in support of such defenses. In the alternative, Lang asks that the Court consider the inadequate proffer he is willing to make "at this time" sufficient to avoid preclusion of those defenses at trial, despite having been initially ordered to file his self-defense proffer over a year ago. Lang's motions and requests are without merit and should be denied.

## BACKGROUND

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

After attending the Save America rally on January 6, 2021, Lang along with others made his way to the U.S. Capitol, arriving at its West Plaza. Once there, he climbed scaffolding to an upper level of the Capitol where he watched clashes between rioters and police struggling to prevent a breach of the Capitol's West Front. By 2:30 p.m., the mob broke through the police line defending the West Front. Officers retreated from the West Front to the Capitol's Lower West Terrace. Lang observed dozens of those officers entering the inaugural archway located at a

narrow entrance to the Capitol building.  At approximately 2:41 p.m., Lang was among the earliest

rioters who entered the archway.  Over the next two and a half hours, Lang repeatedly pushed,

punched, and kicked at police officers defending the Lower West Terrace entrance to the Capitol

building.  He also slammed a door against one officer's head and struck other officers first with a

stolen riot shield and later with a metal baseball bat.  *See United States v. Lang*, No. 21-3066 (D.C.

Cir. January 12, 2022) (per curiam), ECF 52-1.

Based on his actions on January 6, 2021, Lang was charged in a Superseding Indictment

with assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. §§ 111(a)(1) and

2 (Counts One through Four);  assaulting, resisting, or impeding certain officers using a dangerous

weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b) (Counts Five and Six); assaulting, resisting,

or impeding certain officers inflicting bodily injury and using a dangerous weapon, in violation of

18 U.S.C. §§ 111(a)(1) and (b) (Count Seven); committing the offense of civil disorder, in violation

of 18 U.S.C. § 231(a)(3) (Count Eight); obstructing an official proceeding, in violation of 18

U.S.C. § 1512 (Count Nine); engaging in disorderly or disruptive conduct in a restricted building

or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(2) and

(b)(1)(A) (Count Ten); engaging in physical violence in a restricted building or grounds with a

deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A) (Count Eleven);

engaging in disorderly or disruptive conduct within the United States Capitol grounds and in any

of the Capitol buildings, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Twelve); and engaging

in an act of physical violence within the United States Capitol grounds and in any of the Capitol

buildings, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count Thirteen).  ECF 36.

## ARGUMENT

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The general rule is that relevant evidence is admissible," *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993), a "liberal" standard, *United States v. Moore*, No. 590 F.Supp.3d 277, 283 (D.D.C. 2022). "Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court," while "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. Additionally, Rule 403 does not require the government "to sanitize its case, to deflate its witnesses' testimony or to tell its story in a monotone." *United States v. Gartmon,* 146 F.3d 1015, 1021 (D.C. Cir. 1998).

### I. Lang's Recorded Instagram and Telegram Chats Are Admissible

Defendant's initial motion *in limine*, ECF 102, seeks to preclude the government from using various (and unspecified) Instagram and Telegram chats based on a laundry list of meritless claims. First, the defendant insists that the chats "have no relevance to any issue at controversy, or to any of the elements of the counts charged in this Superseding Indictment." ECF 102 at 3, 5. He next claims that any relevance that might exist "is substantially outweighed by its unfair prejudice or even the danger of prejudicing Lang to a degree of no return." *Id.* at 3, 7. He then attempts to argue that such chats cannot be authenticated, *id.* at 3-4, 5-6, and goes on to suggest that any such statements contained within such chats are inadmissible hearsay. *Id.* at 6. Finally, he concludes that the statements are inadmissible because they represent protected First Amendment speech. *Id.* at 7. None of his claims withstand scrutiny.

As a threshold matter, defendant's motion fails even to identify the particular recorded statements to which he objects beyond describing them as "the 45-minute Instagram chat" and

"Telegram chats."  ECF 102 at 3, 5, 6, 7, 14, 15.  In the government's "Memorandum in Support of Pre-Trial Detention," ECF 8, the government described a "nearly 45-minute long public live video interview posted on Instagram on January 7, 2021," in which the defendant described his conduct on January 6, 2021.  ECF 8 at 8.[2]  It may be that this is the "Instagram chat" to which defendant refers in his motion *in limine*.  Likewise, in the Government's "Opposition to Defendant's Motion for Release," ECF 31, the government explained that a search of Lang's cellular telephone showed that he had conducted group discussions directed at "forming militias and pursuing further violence in Washington D.C. and elsewhere, including efforts to impede the inauguration of President Biden on January 20, 2021" and that he "attempted to use the Telegram group chats to organize a militia with factions or 'regiments' in different parts of the country."  *Id.* at 20.  The government's Opposition then described a number of those Telegram chats, ECF 31 at 20-23, and addressed excerpted sections of those chats that were produced as Exhibits AA, BB, CC, and DD.  Insofar as the audio- and video-recording described in ECF 8 and the various chats described in ECF 31 are in fact the intended objects of defendant's first motion *in limine*, the motion is without merit.

In the course of that audio- and video-recorded interview, Lang makes a number of statements about his actions on January 6, 2021, including but not limited to the following:

- "It was war.  This was no protest."

- Describing being shot in the foot with a rubber bullet "after already three hours face-to-face with them.  We gave them not an inch.  We tried getting in through the

---

[2]    The same interview was also discussed in the "United States' Motion *in Limine* to Preclude Improper Arguments That the First Amendment Justified or Immunized the Defendant's Offense Conduct," ECF 75 at 19-20, filed on September 16, 2022.

front but we couldn't.  Other people got access through a couple of windows, stuff like that and slowly funneled in but we were trying to get through the main gates."

- "You know I had a gas mask on for the first two, three hours.  I was fighting them face-to-face but eventually they started using the stuff that goes right through the gas mask."

- "Six, seven times at least I got hit.  Kept getting whatever the eyewash spray out, waiting 5 or 10 minutes, get back in there.  You know and I even had a gas mask on.  I got a gas mask with me, it is full of blood from the top, my head just leaked down into it."

- "A lot of people were thinking it was a game, for like their Snapchat or to be a part of history, then they started getting hit with batons, and people started coming out with blood and people were getting trampled.  And I am like straight up get the women and children out of this little corridor right here.  We are talking war.  We need men up there, men who are going to pull cops down and out of there.  Men who are going to take a bullet if need be, you know.  This was tyrants versus freedom fighters.  At the end of the day painting us as insurrectionists, a mob.  This was no mob.  A mob is a bunch of people like attacking each other.  This was an organized unit of patriots trying to take on tyrants.  You know what I mean.  A mob has no goal.  A mob is just, uh, just screaming and shit.  This was patriots on a goal, on a mission to have the Capitol building.  To stop this presidential election from being stolen so that we at least have one presidential veto left from all of these bullshit laws and restrictions."

ECF 8 at 8-9.

Likewise, in the various Telegram chats, Lang and other members of various militia "regiments" he sought to form made a number of statements about January 6, 2021, and their intention to disrupt the government and keep President Biden from taking office, including but not limited to the following:

- Ex. AA: "From [redacted] Jake (owner) (Must Read) REGIONAL USAP MILITIA CODE OF CONDUCT: DO NOT ADD STRANGERS TO YOUR REGIONAL REGIMENT CHAT 1. This chat is anonymous – hide your number in privacy settings from everyone & change your username / pick alias @ Patriot ___ (mine is @patriotjake) . . . 3. No doomsday / negative / scared talk – we are the patriots and we have every right to defend our Constitution [sic] any means necessary 4. We need to move as many patriots to this main telegram chat as possible – I have a team that will be vetting people and adding the [sic] to State Regional Regiments, we need to be armed, ready and organized – the dems are coming after all of our liberties / Bill of Rights."

- Ex. BB: includes sample messages between militia group chat members concerning whether and how to disrupt the government, including references to "in DC the other day when they certified the illegitimate election"; "No violence if it can be avoided, but if we do not act now, we will become Venezuela 2.0"; and "Being peaceful is what got us in the situation.  Founding fathers would've stacked bodies by now.");

- Ex. CC: a series of chats including various communications sent from "Jake Lang (owner)," such as:

  - "I would have died with you on Capitol Hill"

- o "Can't wait for the 20th I'm getting a fucking Arsenal together"

- o "This group is with ZERO fear of the feds . . . . They know this is war. This is war. You obviously weren't at the capitol this week. Let me show you what war is."

- o "[R]espectfully my name and face is all over national news and I'm not scared about these alphabet boys whatsoever and we are the people we have the power" and "They know what I'm up to. I'm bringing the patriots together and theirs [sic] nothing they can do to stop me but kill me."

- o "Our best and honestly easiest option right now is to make sure Joe Biden never gets in that office."

- Ex. DD: a series of chats including various communications sent from "Jake (owner)," such as:

- o "Wednesday was the Shot heard around the world – The Second American Revolution and now the redcoats get to hide and wonder if they are safe at night."

- o "I have some more savage videos for you guys too" (followed by videos of his actions on January 6, 2021)

- o "I got the redcoats full gear, gas mask, shield, helmet"

For the reasons set forth below, such statements are relevant, not unduly prejudicial, capable of being authenticated in multiple ways, not hearsay, and not barred by the First Amendment.

*First*, defendant's statements are highly relevant to the currently pending charges of the superseding indictment. As described above, Lang is charged in the superseding indictment with

a number of offenses, including assaulting federal officers, in violation of 18 U.S.C. § 111(a)(1) [Counts One, Two, Three, and Four]; assaulting federal officers using a dangerous weapon, in violation of 18 U.S.C. § 111(a)(1) and (b) [Counts Five, Six, and Seven]; obstructing/impeding/interfering with law enforcement officers during the commission of a civil disorder in violation of 18 U.S.C. § 231(a)(3) [Count Eight]; obstruction of justice, in violation of 18 U.S.C. §1512 [Count 9], and several misdemeanors predicated upon unlawful Lang's presence within the United States Capitol building or grounds, in violation of 18 U.S.C. § 1752(a)(2), (a)(4), (b)(1)(A), and 40 U.S.C. § 5104(e)(2)(D) and (F) [Counts Ten, Eleven, Twelve, and Thirteen]. Lang's recorded "chat" statements serve to demonstrate elements of each of those charges.

To prove a violation of 18 U.S.C. § 111 (Counts One through Seven), the government must show (among other elements) that the defendant forcibly and voluntarily/ intentionally assaulted, resisted, opposed, impeded, intimidated, or interfered with officers engaged in the performance of their official duties. Defendant's admissions are highly relevant to show that:

- his actions were "forcible" ("It was war. This was no protest."; "We gave them not an inch. We tried getting in through the front but we couldn't."; and "They know this is war. This is war. You obviously weren't at the capitol this week. Let me show you what war is");

- his actions were "voluntary and intentional" ("I was fighting them face to face"; "We need men up there, men who are going to pull cops down and out of there."; and "we are the patriots and we have every right to defend our Constitution [sic] any means necessary"); and

- that he "assaulted, resisted, opposed, impeded, intimidated, or interfered with" officers engaged in the performance of their official duties ("I was fighting them

face-to-face"; "This was patriots on a goal, on a mission to have the Capitol

building."; and "They know what I'm up to.  I'm bringing the patriots together and

theirs [sic] nothing they can do to stop me but kill me.").

Likewise, to prove a violation of 18 U.S.C. § 231 (Count Eight), the government must

show (among other elements) that the defendant acted to obstruct, impede, or interfere with law

enforcement officers carrying out their duties during a civil disorder.  Defendant's admissions are

highly relevant to show that:

- he acted to obstruct/impede/interfere with law enforcement officers carrying out

  their duties ("It was war.  This was no protest."; "We need men up there, men who

  are going to pull cops down and out of there.  Men who are going to take a bullet if

  need be, you know.  This was tyrants versus freedom fighters."; and "Wednesday

  was the Shot heard around the world – The Second American Revolution and now

  the redcoats get to hide and wonder if they are safe at night.");

- that his actions were incident to civil disorder ("then they started getting hit with

  batons, and people started coming out with blood and people were getting

  trampled"; "I would have died with you on Capitol Hill"; and "[R]espectfully my

  name and face is all over national news and I'm not scared about these alphabet

  boys whatsoever and we are the people we have the power").

Finally, to prove violations of 18 U.S.C. § 1752(a) and 40 U.S.C. § 5104(e)(2) (Counts Ten

through Thirteen), the government must show (among other elements) that the defendant willfully

and knowingly engaged in disorderly and disruptive conduct and/or physical violence near the

United States Capitol intending to impede/disrupt/disturb the orderly conduct of Congress.

Defendant's admissions are highly relevant to show that:

- he willfully/knowingly engaged in disruptive conduct/physical violence ("I was fighting them face-to-face but eventually they started using the stuff that goes right through the gas mask"; "Six, seven times at least I got hit.  Kept getting whatever the eyewash spray out, waiting 5 or 10 minutes, get back in there.  You know and I even had a gas mask on."; and "I would have died with you on Capitol Hill"); and

- that he intended to disrupt the orderly conduct of Congress ("We gave them not an inch.  We tried getting in through the front but we couldn't.  Other people got access through a couple of windows, stuff like that and slowly funneled in but we were trying to get through the main gates"; "This was patriots on a goal, on a mission to have the Capitol building.  To stop this presidential election from being stolen so that we at least have one presidential veto left from all of these bullshit laws and restrictions."; and "Our best and honestly easiest option right now is to make sure Joe Biden never gets in that office.").

The defendant's contention that such evidence has "no relevance to any issue at controversy, or to any of the elements of the counts charged in this Superseding Indictment" is without merit.

*Second*, Lang's statements are not unduly prejudicial in violation of Federal Rule of Evidence 403.  "Rule 403 establishes a high barrier to justify the exclusion of relevant evidence, by requiring that its probative value must be 'substantially' outweighed by considerations such as 'unfair' prejudice."  *United States v. Lieu*, 963 F.3d 122, 128 (D.C. Cir. 2020), aff'g 298 F. Supp. 3d 32 (D.D.C. 2018).  Moreover, "Rule 403 does not bar powerful, or even prejudicial evidence. Instead, the Rule focuses on the danger of unfair prejudice, and gives the court discretion to exclude evidence only if that danger substantially outweigh[s] the evidence's probative value." *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) (citing and quoting *United States v.*

*Gartmon*, 146 F.3d 1015, 1021 (D.C.Cir.1998); *United States v. Cassell,* 292 F.3d 788, 796 (D.C.Cir.2002) ("Virtually all evidence is prejudicial or it isn't material. The prejudice must be unfair.") (internal quotations and citation omitted).

In support, the defendant offers nothing beyond his conclusory insistence that the probative value of his own statements concerning his actions on January 6 and intention to continue to obstruct the government are substantially outweighed by unfair prejudice. That is insufficient. "Evidence is unfairly prejudicial if it prejudices a defendant's case 'for reasons other than its probative value,' such as by creating 'an undue tendency to suggest decision on an improper basis." *United States v. Wilkins*, 538 F. Supp.3d 49, 70 (D.D.C. 2021) (internal citations omitted); *see also Old Chief v. United States*, 519 U.S. 172, 180, (1997) ("The term 'unfair prejudice' . . . speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."). Here, the defendant fails to identify any aspect of any of his statements that might unduly suggest an improper basis for conviction. The fact that his recorded statements are highly inculpatory does not make them unfairly prejudicial; it is what makes them probative. *United States v. Roberson*, 581 F. Supp.3d 65, 76 (D.D.C. 2022) ("As the Court has explained, the emails are probative in part *because* they demonstrate defendant's sexual interest in children, and Rule 403 does not countenance exclusion of evidence because it too effectively suggests that the defendant committed the charged crime."). Lang's various recorded statements about assaulting law enforcement officers at the United States Capitol building on January 6 in an effort to obstruct and impede Congressional business certainly suggests that he committed the charged offenses, but that is hardly a basis for exclusion under Rule 403. "[U]nfair prejudice does not simply mean damage to the opponent's cause. If it did, most

relevant evidence would be deemed [unfairly] prejudicial." *United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009).

*Third*, there existed numerous ways in which the various statements may be authenticated. As defendant acknowledges, the proponent's burden of proof for the authentication of evidence is slight; the ultimate question of authenticity is one for the jury; circumstantial evidence of authenticity is sufficient; and evidence of authenticity need not rule out all alternative possibilities. ECF 102 at 4-5. Nonetheless, defendant then goes on to claim that "[o]nly witnesses with knowledge of the events depicted in a photograph or video can authenticate the evidence, including but not limited to the person who took the photograph or video" and that "the government must authenticate the specific time or place of a [sic] chats [sic] and videos using metadata to make a *prima facie* showing that a photograph or video was made at the time or place reflected in the metadata." *Id.* at 5. Defendant's claims are without merit. There are any number of ways in which photographs, videos, and chats may be properly authenticated, any one of which is sufficient for admissibility. For example, Federal Rule of Evidence 901(b)(1) allows for authentication by means of testimony of a witness with knowledge. Here, there are any number of witnesses with knowledge of the defendant's physical appearance and voice able to testify that the person in the video who explained, "You know I had a gas mask on for the first two, three hours. I was fighting them face-to-face but eventually they started using the stuff that goes right through the gas mask" was the defendant. Likewise, Federal Rule of Evidence 901(b)(4) provides for authentication based on "distinctive characteristics." Here, the content of Lang's statements about January 6 represents "distinctive characteristics" that can be linked to other evidence (for example, hours of video, including the videos he sent in chats) documenting Lang's actual conduct on January 6, *e.g.*,

the fact that he was wearing a gas mask for a significant period of time while assaulting law enforcement officers at the U.S. Capitol.

*Fourth*, Lang's recorded statements are not hearsay and are admissible pursuant to Federal Rule of Evidence 801(d)(2)(A). As described in the United States' Omnibus Motion *in Limine*, ECF 98 at 4, an opposing party's statement is not hearsay if it "was made by the party in an individual or representative capacity," Fed. R. Evid. 801(d)(2)(A), or if it "is one the party manifested that it adopted or believed to be true" *id.* 801(d)(2)(B). *See, e.g.*, *United States v. Blake*, 195 F. Supp. 3d 605, 609 (S.D.N.Y. 2016) ("[A] party's own statement, if offered against him, is not hearsay."). Here, introduction of the defendant's statements, including those made during interviews and in recorded communications (e.g., text messages, emails, social media posts and chats, and media appearances) prior to and after January 6, fall within the scope of that Rule. Assuming proper foundation is laid that the statements were made by the defendant, such statements are admissible when offered by the government against the defendant—even if offered for the truth of the matters asserted—because they are statements by a party-opponent and, therefore, non-hearsay evidence under Rule 801(d)(2)(A). Defendant's response to the government's motion *in limine* on this issue was due on February 24, 2023. ECF 90 at ¶2. To date, he has filed no response.

*Finally*, the admission of Lang's statements not is not barred by the First Amendment. The government can introduce the defendant's statements into evidence, even if those statements might themselves be shielded from prosecution as protected speech. This should be uncontroversial; the use of speech to prove a crime is commonplace and well established. As the Supreme Court has noted: the First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993).

"Evidence of a defendant's previous declarations or statements is commonly admitted in criminal trials subject to evidentiary rules dealing with relevancy, reliability, and the like." *Id*.[3]

Courts across the country, including judges in this District, have allowed evidence of a defendant's statements for the purposes sanctioned by *Mitchell*.  In a different January 6 case, Judge Lamberth noted, "even if [defendant's] statements were themselves protected, the First Amendment does not prohibit their consideration as evidence of motive or intent."  *United States v. Chansley*, 525 F. Supp. 3d 151, 164 (D.D.C. 2021).  Likewise, Judge Cooper ruled similarly:

> Nor does the Court find any First Amendment concerns in the government's use of Robertson's statements to show intent.... If Robertson had expressed his views only through social media, he almost certainly would not be here. But he also allegedly took action—entering the Capitol without lawful authority in an alleged attempt to impede the Electoral College vote certification.  His words remain relevant to his intent and motive for taking those alleged actions.

*United States v. Robertson*, 588 F.Supp.3d 114, 124 (D.D.C. 2022) (internal citation omitted). Outside of the context of January 6, courts have cited *Mitchell* to uphold the admission of a wide range of statements, including but not limited to rap lyrics and terrorist writings.  *See, e.g., United States v. Smith*, 967 F.3d 1196, 1205 (11th Cir. 2020) (rap lyrics); *United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015) ("The speech was not the basis for the prosecution, but instead it was used to establish the existence of, and [defendant's] participation in, the alleged RICO enterprise") (internal citation omitted) (rap lyrics and tattoos); *United States v. Salameh*, 152 F.3d 88, 111-12 (2d Cir. 1998) (the defendants were not "prosecuted for possessing or reading terrorist materials.

---

[3] The Government previously filed a motion *in limine* that anticipated claims similar to those now belatedly raised by the defendant.  *See* United States' Motion *in Limine* to Preclude Improper Arguments That the First Amendment Justified or Immunized the Defendant's Offense Conduct," ECF 75, filed on September 16, 2022.  To date, Lang has failed to file any response to the Government's motion *in limine*.

The materials seized … were used appropriately to prove the existence of the bombing conspiracy and its motive").

Such speech is particularly relevant here.  The defendant's charges include multiple counts that require the government to prove his intent.  The defendant is not being prosecuted *for* his speech; rather, his speech is evidence of the crimes he committed.  Accordingly, the First Amendment does not bar admission at trial of defendant's statement offered to establish defendant's motive, intent, or an element of the crime, such as whether he assaulted law enforcement officers at the U.S. Capitol building on January 6.

Defendant's initial motion *in limine* seeking to preclude the government from using various (and unspecified) Instagram and Telegram statements and chats should be denied.

## II. Lang's Motion to Preclude Certain Terms Should Be Denied

Lang next argues that the Court should bar terms such as "terrorism," "terrorist," "insurrection," "insurrectionist," "mob," "rioter," "treason," "traitor," "attack on the Capitol," "attack on democracy," "attack on Congress," and "stormed the Capitol" to describe him and other individuals unlawfully at the U.S. Capitol on January 6 and their actions.  This motion should also be denied, because what took place at the Capitol on January 6, 2021, may properly be described as a riot, an insurrection, a breach, an attack on the Capitol, an attack on democracy, an attack on Congress, and a storming of the Capitol, and thus the individuals who participated in that riotous mob are properly described as "rioters," "insurrectionists," and members of a "mob."  Indeed, considering only a few of the comments excerpted from the lengthy exhibit described above, the defendant *himself* used the same or remarkably similar terms to describe the attack on the Capitol on January 6:

> It was *war*.  This was *no protest* . . . .  We are talking *war*.  We need
> men up there, men who are going to *pull cops down and out of there*.
> Men who are going to take a bullet if need be, you know.  This was

> *tyrants versus freedom fighters*. At the end of the day painting us as
> *insurrectionists*, a *mob*. This was no *mob*. A *mob* is a bunch of
> people like attacking each other. This was an organized unit of
> *patriots* trying to take on *tyrants*. You know what I mean. A *mob*
> has no goal. A *mob* is just, uh, just screaming and shit. This was
> *patriots* on a goal, *on a mission to have the Capitol building*. To
> *stop this presidential election from being stolen* so that *we at least
> have one presidential veto left from all of these bullshit laws and
> restrictions*.

ECF 8 at 8-9 (emphasis added). Defendant's motion to attempt to sanitize for the jury the terms

he himself employed to describe his own conduct on January 6 should be denied.

On January 6, 2021, thousands of people forced their way into the Capitol building during

the constitutionally mandated process of certifying the Electoral College votes, threatened the

peaceful transfer of power after the 2020 presidential election, injured more than one hundred law

enforcement officers, and caused more than two million dollars in damage and loss. As the

defendant himself stated, this was not a "protest" – this was a "war" and an insurrection. As Judge

Howell observed in denying a similar motion *in limine* in which the defendant sought to preclude

the use of terms such as "insurrection," "riot," "attack," "rioters," "mobs," the "[d]efendant . . .

does not grapple with the fact that the words also accurately describe the events that occurred on

January 6, 2021" and explained that, in any event, the "terms also overlap with elements of the

charged offenses . . . . Obstructing, influencing, or impeding an official government proceeding

with intent to disrupt an electoral vote is a revolt against an established government, or an

insurrection." *United States v. Vincent Gillespie*, 22-cr-060-BAH, ECF 43 at 5-6; *see also United

States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can

be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss).[4]

Evidence or language is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Sanford Ltd.*, 878 F. Supp. 2d 137, 143 (D.D.C. 2012) (quoting Fed. R. Evid. 403, advisory committee's note). By their very nature, criminal charges involve an accusation that someone has wronged another person or has wronged society. Accordingly, such charges arouse emotion—and there is nothing improper about that. Indeed, while cautioning against prosecutorial misconduct in *United States v. Berger*, the Supreme Court simultaneously recognized that "[t]he United States Attorney . . . may prosecute with earnestness and vigor—indeed, he should do so." *Berger*, 295 U.S. 78, 88 (1935). "[T]he law permits the prosecution considerable latitude to strike 'hard blows' based on the evidence and all reasonable inferences therefrom." *United States v. Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996) (*quoting United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir. 1993)). When a prosecutor's comments fairly characterize the offense, fairly characterize the defendant's conduct, and represent fair inferences from the evidence, they are not improper. *Cf. Rude*, 88 F.3d at 1548 (the use of words like victim, deceit, outlandish, gibberish, charlatan, and scam was not improper); *Guam v. Torre*, 68 F.3d 1177, 1180 (9th Cir. 1995) ("[T]here is no rule [of evidence or ethics] requiring the prosecutor to use a euphemism for [a crime] or preface it by the word 'alleged.'").

---

[4]    Likewise, in *United States v. James Doughlas Rahm, Jr.*, 21-CR-00150-TFH, the defendant sought to preclude the government and its witnesses from using terms such as "terrorists," "terrorist attack," "rioters," "breach," "assault," "insurrection," or "carnage" to describe the events of January 6. *Id.* at ECF 35. Judge Hogan denied the motion without prejudice. Minute Order dated August 15, 2022. The defendant was subsequently found guilty after a stipulated bench trial. Minute Order dated October 13, 2022.

Here, the government should not be required to dilute its language and step gingerly around Lang's crimes. What took place on January 6, 2021, was, in fact, a riot involving rioters, and an attack on the United States Capitol, the government of the United States, and American democracy—as Lang himself previously acknowledged. After carefully considering the facts of other January 6 cases, many members of this Court have recognized the riot as just such an attack. *See*, *e.g.*, *United States v. Vincent Gillespie*, 1:22-cr-00060 (BAH) (collecting cases in which the D.C. Circuit and numerous Judges of this Court have used such terms throughout the January 6 proceedings to describe the events at the U.S. Capitol); *United States v. Brock*, 1:21-cr-00140 (JDB) Trial Tr. 5, 16-17 , Nov. 16, 2022 (describing the defendant as participating "in the riot at the United States Capitol on January 6th"; the various barricades that were "breached by the thousands of rioters . . . . Mr. Brock was part of that mob"; and the "rioters entering through those broken glass windows"); *United States v. Mostofsky*, 1:21-cr-138 (JEB), Sent. Tr. at 40–41, May 6, 2022 (describing the riot as an "attack," describing the Capitol as "overrun," and describing Mostofsky and other rioters as engaged in "an attempt to undermine [our] system of government."); *United States v. Rubenacker*, 1:21-cr-193 (BAH), Sent. Tr. at 147–48, May 26, 2022 (describing the defendant as "part of this vanguard of people storming the Capitol Building" as part of the initial breach, and finding that his conduct "succeeded, at least for a period of time, in disrupting the proceedings of Congress to certify the 2020 presidential election"); *United States v. Languerand*, 1:21-cr-353 (JDB), Sent. Tr. at 33–34, January 26, 2022 ("[T]he effort undertaken by those who stormed the Capitol . . . involved an unprecedented and, quite frankly, deplorable attack on our democratic institutions, on the sacred ground of the United States Capitol building, and on the law enforcement officers who were bravely defending the Capitol and those democratic values against the mob of which the defendant was a part.").

None of this language is hyperbole; rather, these findings used vivid and violent language because they described a visceral and violent event. "While these terms could trigger emotional responses in some individual, the mere use of these terms does not, at this stage, signal prejudice substantially outweighing their probative value. Thus, muzzling the government and witnesses from employing commonly used phrases to describe the events on January 6, 2021, is impractical and does not amount to unfair prejudice in violation of Federal Rule 403." *United States v. Vincent Gillespie*, 22-CR-00060-BAH, ECF 43 at 6-7. Prosecutors also need to use appropriate language—and not euphemisms—to describe accurately the nature and gravity of Lang's conduct. The defendant's second motion *in limine* should be denied.

### III. Lang's "Point Three" Seeking Jury Instructions on Affirmative Defenses Is Premature and His "Proffer" In Support of Self-Defense/Defense of Others Affirmative Defenses Is Insufficient to Evade Preclusion of Such Defenses at Trial

Defendant's "Point Three" asks the Court to find, prior to the introduction of *any* evidence at trial, that a sufficient basis exists to instruct the jury on the affirmative defenses of self-defense and defense of others. ECF 102 at 11-14. As described in the Government's previous filing addressing this same issue, ECF 87 at 13-14, and as set forth below, Lang's request is premature: whether or not jury instructions on any affirmative defense are appropriate is contingent upon what, if any, evidence in support of such defenses is actually introduced at trial. The defendant's request for a ruling on jury instructions as to his claimed affirmative defenses should be denied because it is not yet ripe.

A timely proffer from Lang might have at least provided this Court with a basis to rule on the admissibility of such affirmative defenses. Nevertheless, in a separate filing (his "Self-Defense and Defense of Others Proffer," ECF 103), the defendant resists this court-ordered obligation to provide a factual proffer regarding those claimed affirmative defenses prior to trial. *Id.* 2-3. In the same filing, Lang demands in the alternative that the Court not preclude him from raising self-

defense and/or defense-of-others affirmative defenses at trial based on the facially insufficient proffer that is all "at this time [Lang is] willing to proffer." *Id.* 4. Respectfully, defendant's contentions are without merit and should be denied. As described below, Lang has explicitly acknowledged his obligation to provide an evidentiary proffer *prior to* raising such defenses to the jury at trial and has repeatedly sought additional time to comply with the Court's numerous orders to do so. Now that Lang has failed once again to provide a sufficient proffer and articulates no legal basis why such a proffer should not be required, the Court should preclude him from raising self-defense/defense of others affirmative defenses at trial—which is scheduled to start in less than two months. *See, e.g., United States v. Combs*, 267 F.3d 1167, 1179 (10th Cir. 2001) (defendant who failed to seek relief from court's discovery instructions tacitly assented to instruction that parties exchange witness lists before trial and was subject to sanction excluding evidence for failing to comply with that instruction).

*First*, even if Lang had at last provided a proffer sufficient to permit him to present evidence concerning his claimed affirmative defenses to the jury at trial—and he has not—whether *jury instructions* concerning those defenses will be appropriate remains contingent upon the evidence actually admitted at trial. *United States v. Al-Rekabi*, 454 F.3d 1113, 1122-23 (10th Cir. 2006) ("To qualify for an instruction on an affirmative defense such as necessity a defendant must produce evidence of each element sufficient to warrant its consideration by the jury."); *Lakin v. Stine*, 80 Fed.Appx. 368, 374 (6th Cir. 2003) ("No due process violation occurs from the failure to give an instruction on a defense where there was insufficient evidence as a matter of law to support such a charge."). A defendant is entitled to have the jury instructed on a recognized defense for which sufficient evidence has been admitted to allow a reasonable jury to find in his favor. *Mathews v. United States*, 485 U.S. 58, 63 (1988). Since Lang's trial has not yet occurred, the

nature of what evidence, if any, will be admitted regarding self-defense/defense-of-others is unknown. Even if the defendant convinces this Court to allow in evidence of such affirmative defenses, any jury instruction will depend on the evidence actually presented to the jury at trial. *United States v. Barrett*, 797 F.3d 1207, 1218 (10th Cir. 2015) (self-defense instruction warranted if, based on evidence presented, jury could have had a reasonable doubt that defendant believed he was in imminent danger of death or great bodily harm). Defendant's "Point Three" should be denied as premature.

Second, in his "Self-Defense and Defense of Others Proffer," ECF 103, the defendant initially asks the Court to exempt him from the requirement that he file *any* pretrial proffer demonstrating an evidentiary basis for his claimed affirmative defenses, and then suggests that in the alternative the Court should instead accept the facially inadequate proffer he is willing to make "at this time" in lieu of a sufficient "detailed proffer" and not preclude him from raising those defenses at trial. *Id.* 3-4. Both suggestions are without merit.

Lang argues that "[T]he government's position that the defense must provide this Court with a pretrial proffer of facts supporting such a claim must be denied." ECF 103 at 2. Defendant's newly adopted objection to providing a pretrial proffer is both unsupported and untimely. "A judge may, and generally should, block the introduction of evidence supporting a proposed defense unless all of its elements can be established." *United States v. Haynes*, 143 F.3d 1089, 1090–91 (7th Cir. 1998) (citing *United States v. Bailey,* 444 U.S. 394, 415–17, 100 S.Ct. 624, 637–38, 62 L.Ed.2d 575 (1980) and *Mathews v. United States,* 485 U.S. 58, 63, (1988)); *United States v. Gottesfeld*, 319 F. Supp. 3d 548, 553 (D. Mass. 2018) ("A district court can assess the sufficiency of a defendant's affirmative defense before it is presented to a jury as part of its gate-keeping responsibilities.") (citing *United States v. Portillo–Vega*, 478 F.3d 1194, 1197 (10th Cir. 2007)).

A defendant is not entitled to present an affirmative defense that lacks evidentiary support. *See United States v. Fraser*, 647 F.3d 1242, 1245 (10th Cir. 2011) ("No one, after all, has a right under the Constitution or at common law to present evidence that is insufficient as a matter of law to establish any recognized defenses."). Lang's insistence that he should not be required to provide a pretrial proffer of evidence in support of his claimed affirmative defense is simply wrong; unsurprisingly, he fails to provide any legal basis for his refusal to do so.

Further, Lang's objection to filing a detailed pretrial proffer of evidence in support of his claimed affirmative defenses also contradicts his previously stated position. On February 23, 2022, this Court held a status conference. In anticipation that the defendant would raise a self-defense claim, the prosecutor advised:

> The United States believes it would be appropriate, at a minimum, for the defense to present a proffer to the Court so that there can be some assurance that each element of such a defense can be proven so that it's not raised in an incomplete fashion during trial . . . I don't think [defense counsel] is opposed to that procedure.

Transcript of Video Status Conference, February 23, 2022 ("Tr.") at 9. Defense counsel voiced no objection to filing a proffer in support of a self-defense claim. Tr. at 10 ("I actually would want to address this issue head on, and I would defer to the Court as far as how we could schedule that . . ."). Taking the defendant at his word, the Court issued a scheduling order that, among other deadlines, required the defense to file a proffer supporting a claim of self-defense by June 24, 2022. Scheduling Order, ECF 60 (May 2, 2022) at ¶2 ("any pretrial proffer supporting a claim of self-defense, shall be filed by **June 24, 2022**"). The defendant failed to meet the June 24 deadline, and over the following year, repeatedly sought additional extensions in which to prepare a sufficient evidentiary proffer in support of his claimed affirmative defenses. *See* First Motion for Extension of Time to the Scheduling Order, ECF 68 (June 29, 2022); Minute Order dated July 5,

2022 ("any pretrial proffer supporting a claim of self-defense shall be filed by August 17, 2022); Second Motion for Extension of Time to the Scheduling Order, ECF 72 (Sept. 6, 2022); Minute Order dated September 6, 2022 ("any pretrial proffer supporting a claim of self-defense shall be filed by September 19, 2022); Motion for Extension of Time to File Self Defense Claims, ECF 79 (Sept. 19, 2022) (seeking more time to perfect Defendant's self-defense and defense of others claims); Minute Order dated September 19, 2022 ("any pretrial proffer supporting a claim of self-defense shall be filed by September 26, 2022); Trial Brief Regarding Self-Defense and Defense of Others, ECF 80 (Sept. 27, 2022) ("Further, a detailed breakdown and pre-trial proffer will require much more time of the defense because counsel still needs to review additional hours of videos supporting our claims, about which requires extreme detail. Then counsel still needs to have Lang review the same as to provide this Court with the specific facts required to provide a pre-trial proffer, and for the Court to decide, whether Lang is entitled to assert any of these defenses. In the interest of judicial economy, Defendant Lang submits the instant brief and defers to the Court as to whether additional, more detailed pre-trial proffers are required to be filed by the defense"); United States' Response in Opposition to Defendant Lang's Brief Regarding Self-Defense of Another Person and Related Affirmative Defenses, ECF 87 (Oct. 21, 2022) ("Lang has filed a brief instead, apparently, of a court-ordered proffer. His failure to comply with an order from this Court for a proffer supporting any claim of self-defense is reason enough to deny the relief Lang requests and provides grounds to preclude evidence of his affirmative defenses altogether"); Revised Scheduling Order, ECF 90 (Dec. 16, 2022) at ¶2 ("any factual proffers in support of affirmative defenses by **February 3, 2023**); Minute Order dated February 24, 2023 ("any factual proffers in support of affirmative defenses by March 17, 2023").

In effect, Lang is using his motion *in limine* to seek reconsideration of this Court's order

requiring a pretrial proffer supporting the admissibility of his affirmative defense. Motions *in limine* have a limited purpose, which is to narrow evidentiary issues at trial. *See United States v. Rhine*, Crim. Action No. 21-687 (RC), 2023 WL 2072450 at *3 (D.D.C. Feb. 17, 2023) (citing *Williams v. Johnson*, 747 F.Supp.2d 10, 14 (D.D.C. 2010)). A motion *in limine* is not "a backdoor motion to reconsider." *See Barnes v. District of Columbia*, 924 F.Supp.2d 74, 81-82 (D.D.C. 2013). Thus, the defendant cannot appropriately use a motion *in limine* to seek reconsideration of an order issued months ago without objection. No part of Lang's motion attempts to meet the standard for seeking reconsideration, which requires demonstration of an intervening change in law, new evidence, or a need correct clear error or prevent manifest injustice. *United States v. Villongco*, Crim. Action No. 07-9 (BAH), 2017 WL 2560905 at *2 (D.D.C. June 13, 2017). The defendant's motion addresses none of these factors and this Court should not entertain its unsupported and untimely challenge to its order. Moreover, even if the motion *in limine* were treated as a motion for reconsideration of this Court's order requiring a proffer, a motion for reconsideration is "not simply an opportunity to reargue facts and theories upon which a court has already ruled." *United States v. Hassanshahi*, 145 F.Supp.3d 75, 80-81 (D.D.C. 2015).

In the alternative, Lang asks the Court to accept the limited "proffer" that he is willing to make at this time and yet still forebear from precluding his affirmative defenses at trial. *See* ECF 103 at 3 ("Asking for the preclusion of an affirmative defense or to assess (and exclude) potential evidence regarding such a defense is entirely premature"); 4 ("These Are the Facts Mr. Lang Is Willing to Proffer at This Point To Highlight He Acted In Self-Defense And In Defense of Others on January 6th" and "at this time we are willing to proffer . . . ") and 8 (claiming "this Court should not preclude Lang from a jury instruction and ability to pursue his claims of Self-Defense and the Defense of Others for failure to present a proffer set of facts . . . " and asking that the "Court hold

this issue in abeyance until such time as this matter gets closer to a trial.").   The request should be denied.  Lang's purported proffer is wholly insufficient as a matter of law, and accordingly the defendant should now be precluded from raising either a self-defense or defense of others affirmative defense at trial.  "[W]here the evidence proffered . . . is insufficient as a matter of law to support the affirmative defense a pre-trial ruling precluding the presentation of the defense at trial is appropriate."  *United States v. Tokash*, 282 F.3d 962, 967 (7th Cir. 2002).

To establish a *prima facie* claim of self-defense, a defendant must prove two elements: (1) a reasonable belief that the use of force was necessary to defend himself or another against the immediate use of unlawful force and (2) the use of no more force than was reasonably necessary in the circumstances.  *United States v. Biggs*, 441 F.3d 1069, 1071 (9th Cir. 2006).  Moreover, "[a] defendant cannot claim self-defense if he was the aggressor or if he provoked the conflict upon himself."  *Waters v. Lockett*, 896 F.3d 559, 569 (D.C. Cir. 2018) (internal quotation marks and citation omitted).  That principle applies fully to Section 111 prosecutions.  *See, e.g.*, *United States v. Mumuni Saleh*, 946 F.3d 97, 110 (2d Cir. 2019) ("Mumuni was the initial aggressor in the altercation with Agent Coughlin; as such, he could not, as a matter of law, have been acting in self-defense"); *United States v. Acosta-Sierra*, 690 F.3d 1111, 11126 (9th Cir. 2012) ("[A]n individual who is the attacker cannot make out a claim of self-defense as a justification for an assault."); *see also Harris v. United States*, 364 F.2d 701, 702 (D.C. Cir. 1966) ("One who is attacked may repel the attack with whatever force he reasonably believes is necessary under the circumstances, but only if he has not provoked the fight.").  A theory based upon the defense of others in the context of prosecution under Section 111 "justifies the use of a reasonable amount of force against an adversary when a person reasonably believes that he [or another] is in immediate danger of unlawful bodily harm from his adversary and that the use of such force is necessary to avoid this

danger." *United States v. Middleton*, 690 F.2d 820, 826 (11th Cir. 1982).

In *United States v. Slatten*, 395 F. Supp. 45, 112-113 (D.D.C. 2018), a federal murder case,

District Court Judge Royce C. Lamberth instructed the jury on defense-of-others as follows:

> Self-defense or defense-of-others is a complete defense to murder where Mr. Slatten actually believed that he or another person was in danger of serious bodily injury, and actually believed that the use of deadly force was necessary to defend against that danger and both of these beliefs were reasonable. Every person has the right to use a reasonable amount of self-defense or defense-of-others if: One, he actually believes he or another person is in imminent danger of bodily harm; and if, two, he has reasonable grounds for that belief. The question is not whether looking back on the incident you believe that the use of force was necessary. The question is whether Mr. Slatten, under the circumstances as they appeared to him at the time of the incident, actually believed he or another person was in imminent danger of bodily harm, and could reasonably hold that belief. A person may use a reasonable amount of force in self-defense, including, in some circumstances, deadly force.

*Id.*; *see also id.* (citing Barbra Bergman, *Criminal Jury Instructions for the District of Columbia* §§ 9.500, 9.501 (B) – (C), 9.502 (5th ed. 2018)).

A defendant must satisfy five elements for a defense-of-others claim: (1) the defendant actually believed that another person was in danger or injury; (2) that belief was reasonable; (3) the defendant actually believed that the use of force was necessary to defend the person against the danger; (4) that belief was reasonable as well; and (5) the defendant used a reasonable amount of force in response. *See Slatten*, 395 F. Supp. 3d at 112-113; accord Pattern Criminal Jury Instructions of the Seventh Circuit, 6.01 (2012 ed.) ("A person may use force when he reasonably believes that force is necessary to defend [himself/another person] against the imminent use of unlawful force."); Wayne R. LaFave, *Substantive Criminal Law* § 10.5, Defense-of-others (Dec. 2021) ("[O]ne is justified in using reasonable force in defense-of-others, even a stranger, when he reasonably believes that the other is in immediate danger of unlawful bodily harm from his

adversary and that the use of such force is necessary to avoid this danger.").

The defense of others has important limitations.  First, Congress enacted Section 111 "to protect both federal officers and federal functions."  *United States v. Feola*, 420 U.S. 671, 679 (1975).  As a result, "[a]n individual is not justified in using force for the purpose of resisting arrest or other performance of duty by a law enforcement officer within the scope of his official duties."  *United States v. Drapeau*, 644 F.3d 646, 653 (8th Cir. 2011); *see also United States v. Branch*, 91 F.3d 699, 714 (5th Cir. 1996) ("[Self-defense] principles must accommodate a citizen's duty to accede to lawful government power and the special protection due federal officials discharging official duties.").  Second, even in circumstances where an individual might be justified in using some force to resist a federal officer, that resistance must be reasonable under those circumstances.  *See Abrams v. United States*, 237 F.2d 42, 43 (D.C. Cir. 1956) ("observing that "the use of 'reasonable force' only would have been open to defendants"); *see also United States v. Wallace*, 368 F.2d 537, 538 (4th Cir. 1966) (explaining that Section 111 permits "reasonable force employed in a justifiable belief that it is exerted in self-defense"); *United States v. Perkins*, 488 F.2d 652, 655 (1st Cir. 1973) (a defendant may be convicted under Section 111 where "he used more force that was necessary to protect the person or property of himself or others.").

"To entitle a defendant to present an affirmative defense to the jury, his proffer must meet the minimum standard as to each element of the defense, so that if a jury finds it to be true, it would support the defense.  In doing so, the defendant must present 'more than a scintilla of evidence' that demonstrates that he can satisfy the legal requirements for asserting the proposed defense."  *United States v. Tokash*, 282 F.3d 962, 967 (7th Cir. 2002) (internal citation omitted) (citing and quoting *United States v. Blassingame*, 197 F.3d 271, 279 (7th Cir. 1999)).  Lang's purported proffer of evidence falls far short of addressing the elements of the affirmative defenses he seeks

to raise.

Counts One, Two, and Three charge Lang with assaults on police officers that occurred prior to 4:02 p.m. His proffer is silent with respect to any use of force by any officer that Lang actually observed prior to 4:05 p.m.; accordingly, his proffer cannot satisfy the elements of any affirmative defense with respect to the first three Counts. Lang's proffer also asserts that he watched Victoria White "getting beat by various male officers between 4:05 – 4:08 p.m." ¶8. However, his proffer fails to state why his attack on police officers from 4:10 p.m. and thereafter were reasonable, let alone necessary, responses to an immediate use of force. Indeed, his proffer fails even to assert even that the officers he attacked from 4:10 p.m. and on were the same officers involved in the use of force on White. Lang's proffer also asserts that he "saw Philip Anderson in distress and bodies completely on top of him . . . and ripped Philip Anderson out of the crowd" and minutes later "ripped Tommy Tatum out of the crowd." ¶¶9-10. Lang's proffer fails to identify any immediate use of force by police officers that made assaulting them (or any other police officers) reasonable and necessary. Indeed, Lang's proffer fails to even assert that there were police officers in the vicinity of either Anderson or Tatum at that time that Lang "ripped [them] out of the crowd." *Id.* Likewise, Lang's proffer states that "Roseann[sic] Boyland is killed around 4:20 p.m." ¶11. His proffer, however, fails assert why his assault on police officers *prior* to that time (Counts One through Four) was necessary or reasonable, or to offer how his assaultive conduct more than twenty minutes later constituted a necessary and reasonable response to an immediate use of force by a police officer (Counts Five, Six, and Seven).

More generally, Lang's self-defense claims cannot succeed because Lang and the other rioters were the aggressors. The defendant's proffer does not assert that he or any of the individuals were authorized to be at the United States Capitol Building on January 6, 2021. Lang and his

fellow rioters provoked a confrontation with police by going with others where they were not authorized to go. His proffer fails to explain how any force used by the police was unreasonable in the context of a continuing and violent riot, or how his own use of force against police officers was reasonable given when he could simply have left the riot. His proffer fails to describe how his assaultive conduct was necessary to defend himself (or anyone else) from immediate use of unlawful force. His proffer fails to explain why he did not simply depart from the Capitol entirely.

The references in Lang's proffer to Roseanne Boyland, Philip Anderson, Tommy Tatum, and Victoria White likewise fail to establish any basis for a defense-of-others claim. Lang assaulted police officers long before he encountered any of those individuals. Likewise, Lang's proffer fails to assert any basis for a reasonable belief that assaulting the specific officers that he attacked was necessary to defending Victoria White, Roseanne Boyland, Phillip Anderson, and Tommy Tatum from immediate unlawful force. Indeed, Lang's proffer fails to even suggest that the individuals he assaulted had anything to do with the individuals he claims to have defended. And Lang does not explain what force officers used against those individuals, why any such force used against them was unreasonable, or—critically—how his assaults on random officers defending the U.S. Capitol building constituted a reasonable response or served to defend anyone.

In short, defendant's proffer is wholly insufficient to raise either a self-defense or defense of others affirmative defense to the jury. For the last year, defendant has promised to make good on his obligation to provide a meaningful proffer in support of his affirmative defense claims. He has failed to do so, and instead now insists that he should not be required to provide any such proffer at all. Defendant's request to further postpone providing a sufficient evidentiary basis for his claimed affirmative defenses should be denied, and he should be precluded from raising those defenses at trial.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that this Court deny the defendant's motions *in limine* and hold that defendant's failure to provide a sufficiently detailed evidentiary proffer in support of his claimed self-defense and defense of others affirmative defenses, despite having been ordered to do so repeatedly, precludes his raising those affirmative defenses at trial.

<div style="margin-left:40%">

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

</div>

By:    <u>/s/ Craig Estes</u>
        CRAIG ESTES
        Assistant United States Attorney
        United States Attorney's Office for the District of
        Massachusetts (detailee)
        Massachusetts Bar No. 670370
        craig.estes@usdoj.gov
        (617) 748-3100

        <u>/s/ Karen Rochlin</u>
        Karen Rochlin
        Assistant United States Attorney Detailee
        DC Bar No. 394447
        99 N.E. 4th Street
        Miami, Florida 33132
        (786) 972-9045

CERTIFICATE OF SERVICE

     I hereby certify that this document has been served by electronic mail to both Court Chambers and to counsel of record for the defendant on April 7, 2023, after the undersigned Assistant U.S. Attorney was unable to access the Court's Electronic Filing System (CM/ECF).

/s/ Craig E. Estes
CRAIG E. ESTES
Assistant U.S. Attorney

Date: April 7, 2023