## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *v.* ) | No. 21-CR-53 (CJN) |
| ) | |
| EDWARD JACOB LANG, ) | |
| ) | |
| *Defendant.* ) | |
| _____ ) | |

## LANG'S MOTION TO RENEW AND RECONSIDER HIS REQUEST FOR IMMEDIATE TEMPORARY RELEASE ON AN EXPEDITED BASIS BECAUSE OF HIS INABILITY TO REVIEW DISCOVERY AND WHAT WILL SOON BE TRIAL EVIDENCE

Now comes EDWARD JACOB LANG, by and through his undersigned counsel, and moves this Court to reopen his detention hearing, pursuant to 18 U.S.C. § 3142(i), and to order the immediate temporary release of Mr. Lang from pretrial confinement to the custody of his mother or father, on conditions suitable to the Court because of the following:

(1)  Lang was transported to his thirteenth (13th) jail in January 2023, and currently is housed at Brooklyn MDC;

(2)  the Marshals have continued to move Lang from jail-to-jail, without justification;

(3)  however, since the time Mr. Lang has been transferred to Brooklyn MDC he has not caused or been a part of any disciplinary issues or problems, and remains intent on obtaining

all the discovery possible as to allow him to assist in his own defense;

(4) when transferred Lang is exposed to a new jail facility imposing blatantly punitive and unlawful measures intended to prejudice Defendant's defense in his criminal case and, worse, to attempt to psychologically torture him;

(5) the length of Defendant Lang's pretrial confinement is a violation of his due process rights which demands immediate release;

(6) the conditions of confinement themselves create an environment that make Defendant unable to prepare for his own trial, violating his right to a fair trial; and

(7) numerous January Sixth (hereafter referred to as "J6") Defendants that were charged with similar charges as Lang were automatically released or eventually released upon a further Bond Motion.

Additionally, Lang submits the following supporting reasons. Lang has a Sixth Amendment right to participate in, and, indeed, conduct—his own defense. *McKaskle v. Wiggins*, 465 U.S. 168, 174, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984) (highlighting "Counsel Clause" of the Sixth Amendment "implies a right in the defendant to conduct his own defense, with assistance at what, after all, is his, not counsel's trial."); *See also Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983) (recognizing that "the accused has the ultimate authority to make certain fundamental decisions regarding the case, such as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal") (*citing*

*Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 2509 n. 1, 53 L.Ed.2d 594

(1977) (Burger, C.J., concurring); ABA Standards for Criminal Justice 4–5.2,

21–2.2 (2d ed. 1980)).

Other United States Supreme Court case have taken this concept even further

in explaining "we have held that, with some limitations, a defendant may elect to act

as his or her own advocate." *Id.* (*citing Faretta v. California*, 422 U.S. 806, 819, 95

S. Ct. 2525, 45 L. Ed. 2d 562 (1974) (stating that the Sixth Amendment "does not

provide merely that a defense shall be made for the accused; it grants to the accused

personally the right to make his defense").

Thus, Lang's complete inability to access trial materials constitutes a Sixth

Amendment violation. *United States v. Darden*, 2017 U.S. Dist. LEXIS 137942, at

6 (M.D. Tenn. Aug. 28, 2017) (holding that defendant's inability to access discovery

in jail, if uncorrected, would create Sixth Amendment problem).

Simply stated, in this matter, Lang just seeks to be heard on his Section 3142

(i) claims, about which encompass and grant this Court the power and authority, by

subsequent order, to permit the temporary release of a detained person, in the custody

of a United States marshal or another appropriate person, to the extent that the

judicial officer determines such release to be necessary for preparation of the

person's defense or for another compelling reason. 18 U.S.C. § 3142(i).

Here, it is respectfully submitted that this Court reconsider Section 3142(i) for the following reasons: first, Lang, remains currently detained at CTF. On July 30, 2023, an organized-detailed hard drive was sent to the CTF facility and received on August 1, 2023, and despite this transfer being discussed and agreed to – CTF returned the hard drive, where the whereabouts of such drive are currently unknown to the defense team, thus further delaying Lang's access to his discovery. Prior to being placed at CTF, he was detained in in New York City (Brooklyn MDC); second, such transfer to New York City was conducted during a time when his attorney of record had to move out of NYC because he started an aggressive trial that remains ongoing since December 19, 2022, in Washington, DC (*See US v Nordean, et.al.*, Criminal Action #: 21-175 (TJK) before Judge Kelly in the District of Columbia). Lang needs to be a more active member in his own defense under the Sixth Amendment, which cannot be stressed enough.[1]

---

[1] Mr. Lang needs to be able to assist in his defense obtaining all his trial witnesses and trial exhibits; not to mention he must be a more active participate in reviewing his discovery as to assist his defense in conducting theories for his defense and cross examination questioning, such examples do not include his ability to frame a complete defense. Additionally, Lang wishes to testify on his own behalf at his trial, and such pretrial measures need to be taken seriously and take time to prefect. Lang is in a unique position to substantially assist in each of these factors, which are examples and an non-exhaustive list of him being an asset to his own defense.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| _____ ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *v.* ) | No. 21-CR-53 (CJN) |
| ) | |
| EDWARD JACOB LANG, ) | |
| ) | |
| *Defendant.* ) | |
| _____ ) | |

## LANG'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO <u>RENEW AND RECONSIDER</u>

STEVEN A. METCALF II, ESQ.
Metcalf & Metcalf, P.C.
99 Park Avenue, 6th Flr.
New York, NY 10016
(*Office*) 646.253.0514
(*Fax*) 646.219.2012

# I. RESPECTFULLY, LANG REQUESTS JUST HIS SECTION 3142 (I) APPLICATION BE RECONSIDER BY THIS HONORABLE COURT BECAUSE HIS CIRCUMSTANCES HAVE DRASTICALLY CHANGED SINCE, AND SUCH JANUARY 23, 2023 DECISION WAS FOUNDED WITHOUT A HEARING.

A defendant's inability to review discovery or trial evidence in jail is the locus classicus for temporary release under § 3142(i). *United States v. Persico*, No. 84-cr-809 (JFK), 1986) U.S. Dist. LEXIS 27586, 1986 WL 3793, at p. 1 (S.D.N.Y. Mar. 27, 1986) (reviewing cases in which "temporary releases of defendants therein were granted prior to trial in order to facilitate the defendants' expeditious preparation for trial and thus to promote the prompt disposition of the charges against each defendant" where "[t]he concern in each case was that, given the admittedly limited access to telephones and attorney conference rooms at the detention facilities, the effective preparation of a defense might have been impossible in the short time available before the commencement of trial").

Lang's case, with these cases as a backdrop involve two commonalities: first, the defendant's total or near-total inability to access discovery, trial evidence, or otherwise prepare for trial, and second, a short period of time before trial, even if months away can fly away if each day is not maximized to its capacity. And such is a problem now with counsel of record being engaged in an ongoing trial that has been lasting months. *See*, *e.g.*, *United States* v. *Angiulo*, Cr. No. 83-235-N, slip op.

(D. Mass. Feb. 25, 1985); *United States* v. *Franzese*, No. 85 Cr. 755, slip op. (E.D.N.Y. Feb. 19, 1986).

Lang's case features all the usual release factors. First, he has little to no access to discovery whatsoever. Each time he is transferred to a new jail or facility he loses all of his paperwork, and then the struggle starts over for counsel and him to re-gain effective communication. Its undisputed that there were various issues in each of the facilities Lang was housed at based on the filing of grievances, etc., however, in the last 30-45 days such Marshal and jail facility complaints have seized to exist. Lang just wants to prepare for trial, without any further interference or unnecessary interaction.

As the Court knows, Lang was transported to – and from – several jails and has had his discovery documents mishandled, lost and destroyed.

The urgency of the situation cannot be understated. As set forth above, On July 30, 2023, an organized-detailed hard drive was sent to the CTF facility and received on August 1, 2023, and despite this transfer being discussed and agreed to – CTF returned the hard drive, where the whereabouts of such drive are currently unknown to the defense team, thus further delaying Lang's access to his discovery.

At this moment, sensitive and confidential attorney-client information is lost that can irreparably prejudice Defendant in this case.

Due to the disparity in resources and the ability to prepare, Lang cannot possibly assist in his defense preparing a viable defense against the government, in this case.

In this case, it has been spoken about, even on the record that some defendants may chose to leave their case and defense solely in the hands of their attorneys; however, Lang, is not one of those defendants – and has expresses his demands, *ad nauseum*, which he is well within his rights, to be more hands on. (*See Jones v. Barnes*, 463 U.S. 745, 751 (1983) – line of cases cited, *infra*).

This Courts January 23, 2023 Decision and Order even makes mention of Lang's ability to proven himself to be useful in aiding in his defense, by pointing out various arguments that his legal team did not see at first, such as pointing out clips from a video. However, respectfully, this Court's decision falls short in recognizing and appreciating how much Lang actually contributes, and can assist in his own defense.

### A. Similarly Situated Defendants, With Similar Charges as Lang Have Been Released on Bond, With Conditions, Time-and-Time Again.

Furthermore, it cannot be understated that several defendants, with similar, if not the same charges, have been released, and each of these Defendants are J6 Defendants. Conditions of release vary. For example, the following Defendants were either released on either personal recognizance, monitoring or home detention. (*See*

**Exhibit A:** *US v Craig Bingert*, Case #: 1:21-cr-91; **Exhibit B:** *US v Jamie Buteau*, Case #: 21-mj-487; **Exhibit C:** *US v Steven Capuccino*, Case #: 1:21-cr-40; **Exhibit D & E:** *US v Luke Coffee*, Case #:  1:21-cr-327; **Exhibit F:** *US v Cody Connell*, Case #: 1:21-cr-84; **Exhibit G & R:** *US v Bruno Cua*, Case #: 1:21-cr-107[2]; **Exhibit H & I:** *US v Harkrider*, Case #: 1:21-cr-117; **Exhibit J:** *US v Emanuel Jackson*, Case #:  1:21-cr-395; **Exhibit K:** *US v Federico Klein*, Case #: 1:21-cr-236; **Exhibit L:** *US v Joshua Lollar*, Case #: 1:21-cr-152; **Exhibit M:** *US v Clifford Mackrell*, Case #:1:21-cr-276; **Exhibit N:** *US v Mark Middleton*, Case #: 21-cr-367; **Exhibit O:** *US v Paul Rae*, Case #:  1:21-cr-378; **Exhibit P & Q:** *US v Daniel Scott*, Case #: 1:21-mj-411.

Notably, in *Cua* the Court highlighted that the third factor—the history and characteristics of the defendant—weighs in favor of release. *See US v. Cua*, 2021 WL 918255 attached as **Exhibit R**. Specifically, the Court highlighted that in considering *Cua's* history and characteristics, the Court must "take into account the available information concerning [Cua's] character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. §

---

[2] *See also US v. Cua*, 2021 WL 918255 attached as **Exhibit G & R**.

3142(g)(3)(A). The *Cua* Court stressed how the defendant had strong ties to his family and his community, as shown by the many letters submitted on his behalf. *See US v Cua*, Case #: 1:21-cr-107 (RDM) at Dkt. 11-4 (Ex. 4); *See US v. Cua*, 2021 WL 918255.

Additionally, defendant *Cua* assured the Court that he will "diligently abide by any and all conditions the [C]ourt places on [him]." *Id.* at ECF Doc. 25 at p. 8. Lastly, *Cua* had a nominal, if non-existing criminal history. Overall, in *Cua* "the Court concludes that Cua's young age, family and community ties, expressed remorse, and lack of a significant criminal history weigh in favor of his pretrial release". *Id.*

Here, similar to *Cua*, Lang was charged with assault amongst other charges, like many J6 defendants. All of these factors present in *Cua* are similar to that of Lang in this matter. Lang has strong family ties, a nominal criminal history, is of a young age, and has expressed a unique position to be daily-actively-aggressively a participant in assisting in his own defense. Additionally, like *Cua*, Lang has presented his parents as his third party custodians, both of which were not present on January 6th.

Also notably, in the *Coffee* case, where he was charged with assaulting an officer with a dangerous weapon, he was placed on high intensity supervision. In the

*Coffee* case, the Court stated, with regards to the history and characteristics of the defendant:

> I'll start, first, with the fact that he doesn't have a criminal record. In *Munchel* that was highlighted certainly by Judge Katsas in his dissent, but it was also highlighted by the majority opinion in that the defendants had very little, if any, criminal record. So that's in his favor. He also has close ties to his family and community in Texas. As defense counsel has pointed out, he has frequent contact with his family and he has very close ties there, including the people who testified at the hearing on his behalf; and he actually is the owner of his own business in Texas with no history of mental illness and very minimal substance abuse history. As already noted, he didn't attempt the assault on the Capitol as a member of an organized gang. And in his comments and interviews following the attack which the government has quoted from, they certainly don't appear remorseful about his conduct on that day or what that day did to this country's standing in the world, in terms of the embarrassment of a constitutionally-mandated function being disrupted by a mob. But at the same time, despite the fact that he has shown no remorse that I can see -- some regret perhaps that he was caught and highlighted in his role as a member of the mob. At the same time, those comments that the government has pointed out to the Court appear to be more descriptive of what he was seeing and feeling and doing on January 6th rather than an indication that he plans to go out and find the next mob he can in a political environment to express his political opinions which would pose a danger in the future; so I don't find those comments as particularly probative of his future danger which is what *Munchel* has made clear has to be examined. Importantly, the defendant turned himself in once his lawyer was contacted by the FBI and told that there was an arrest warrant for him. Certainly, prior to his arrest he said he was in hiding; but

to the extent that that shows a risk of flight, this Court is not buying it because at the point where he said that - -

there was not even an arrest warrant for the defendant and he stayed, it appears, in fairly constant contact with an FBI agent who talked to him multiple times. I think the FBI agent said he talked to him about 10 or 12 times; that's a lot of contact with an FBI agent when you are trying to stay in hiding from law enforcement. The defendant got himself a lawyer who also stayed in close contact with the FBI agent, and turned himself in and provided a fairly cooperative attitude overall, in terms of the subsequent search of his car and his apartment. So this factor weighs generally and strongly in favor of release. As to the nature and seriousness of the danger to any person in the community posed by the defendant's release in this case, to my mind this weighs in favor of release, particularly based on the D.C. Circuit's instructions in *Munchel*. Nonetheless, even with this different category of January 6 defendants, the district courts must still proffer an explanation of how a defendant would be capable of acting in a dangerous way now that the specific circumstances of January 6 have passed.

Here, Lang would be released to a residence of his Mother or Father, who would serve as his third-party custodians. There, he would have access to the government's and his own discovery without counsel having to be physically present. Upon release, Lang would also be able to adequately confer with counsel about fundamental decisions he must make alone, including whether to proceed to trial and ultimately testify on his own behalf. *Barnes*, 463 U.S. at 751.

For these reasons and those highlighted above, Mr. Lang's detention deserved further review of his temporary release under § 3142(i). Lang is a 27-year-old man,

with extensive ties to the community, who has no prior convictions for violent or serious conduct; notably only has one minor drug related blemish on his record. On January 6th, Lang did not remove barriers, did not possess any weapons and did not encourage or assist anyone else to do any of those things. He went to Washington, DC on his own, without any connection to any group or organization.

Thus, neither his background, nor his alleged criminal conduct "make[s] clear that he poses a concrete prospective threat to public safety" as *Munchel* requires and the *Coffee* case later explained. *See also United States v. Klein*, 533 F.Supp.3d 1 (D.D.C. 2021) (Bates, J.) (releasing defendant who engaged in violence, based on defendant's history and characteristics, and not finding a prospective risk).

For all these reasons, Lang requests that he be temporarily released before and during trial, at which time he will remain within the district under the supervision of third-party custodians. *Persico*, 1986 WL 3793, at p. 1.

The Court must act swiftly to review this motion, and properly order his immediate release.

**B. BRA Section 3142 (i) Assured that the Accused Be Released to Prepare his Own Trial.**

Respectfully, these allegations along with Lang's history do not support that no set of conditions could reasonably assure his appearance in court, as it would be inappropriate and unfounded to conclude that he is a future danger. 18 U.S.C. §

3142(e)(1).[3] Thus, the limited issue here is whether Lang should be immediately released under the Bail Reform Act ("BRA")'s subsection (i), which should be narrowly applied to pretrial detainees when its "necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

The BRA stresses[4] liberty as the norm, and only in extreme cases does detention apply. The conditions Lang requested, along with his history of upstanding citizenship, present no *reasonable, articulable reason* the Government can articulate as to how Jake presents an *identifiable threat* to his community or *local* law enforcement. Further, all of Lang's communications, social media accounts, and movements can be monitored on home-detention.

Again-and-again, we have requested to be heard on how Lang's case also stands for a few other principles. *First*, how better access to discovery can present the constitutionally afforded with the best defense; *second*, when a defendant has established, for approximately two years, that he is an asset in reviewing discovery and has countlessly sought to be involved in his own defense, then release is necessary to comport with the Sixth Amendment; and *third*, how a particular defendant's confinement substantially prejudices his

---

[3] The government has not advanced an argument that Lang is a flight risk, thus, such issue need not be addressed at this time.

[4] On December 31, 2020, the Bond Reform Act of 2020 was presented in Congress.

ability to communicate and assist in his defense, and such prejudice applies to a BRA analysis under subsection (i).

**C.** ***Lang's Ability to Prepare a Defense Has Been Substantially Prejudiced, and the Prospect of a Distant Trial in 2023.***

Lang's story in the last 25-months is troublesome. As jail policies drastically differ from jail-to-jail, being continuously transferred makes it extremely difficult for everyone, even defense counsel, to communicate with Lang.

Lang was arrested in January 2021, then transferred to Lewisburg, PA., then in January 2023 transferred to Brooklyn, MDC and most recently in _____ transferred to CTF. This marks, I believe Lang's fourteenth (14th) jail since Lang has been detained at since his arrest.

As stated in previous applications, and we respectfully request this Court to reconsider, other compelling reasons for release are that Lang has already been incarcerated for now 25-months, and his trial is not scheduled for months from now; additionally, counsel's situation has changed where a single enormous trial in DC has now dragged on for much longer than scheduled, and in turn, rendered counsel needing more time to prepare for Lang's trial. Further, there is no definitive date as to when the appellate decision on the §1512 count will be decided, or if another issue will arise before May 2023. Lastly, discovery in this case is voluminous, and Lang has stressed his willingness and eagerness

to not only participate in his own defense, but to also be a vital part of discovery review and his trial preparation.

Lastly, we ask this Court to reconsider this matter based on the how section 3142(i) was carefully reviewed in the *Ryan Nichols* case. (*See US v. Nichols*, 1:21-CR-00117 (TFH) at ECF Doc. 150). Section 3142(i) highlights that after an initial determination of pre-trial detention, the Bail Reform Act provides that a "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

Under this statutory provision, the defendant otherwise subject to pretrial detention, may be granted temporary release by showing the presence of two (2) factors: (1) that his temporary release is necessary for the preparation of his defense or another compelling reason; and, (2) that he could be released to the custody of the an "appropriate person." *United States v. Dhavale*, No. 19-mj-00092, 2020 U.S. Dist. LEXIS 69800, at 12-13 (D.D.C. Apr. 21, 2020).

Jake was unarmed on January 6th.  As a U.S. citizen, he appeared to stand for Liberty, the Constitution, and assert his First Amendment Rights.  Now Lang stands charged with a 13 count SI, where the last 22 months establishes how necessary it is for Lang's temporary release as to afford him the opportunity to prepare for trial.

For these reasons, and many more, we respectfully request this Court to reconsider its decision on section 3142(i) aspects, and allow Lang to be heard in person as to his requests that he be temporarily released before and during trial, at which time he will remain within the district under the supervision of third-party custodians. *Persico*, 1986 WL 3793, at *1.

## CONCLUSION

For the aforementioned reasons, this Court should order Mr. Lang's immediate release to the custody of his father, Ned Lang, or his mother. For all of these reasons, and any that may become apparent at a hearing on this matter, Mr. Lang respectfully submits that the Government has failed to meet its burden by clear and convincing evidence that he presents a risk of danger to society, in light of all the recent additional evidence that submitted herein.

Wherefore, he respectfully requests that this Honorable Court release him on high intensity supervision and conditions the Court deems necessary.

Dated:  August 3, 2023

                                        Respectfully Submitted,

                                        */s/ Steven Alan Metcalf II*

                                        _____
                                        STEVEN A. METCALF II, ESQ.
                                        Metcalf & Metcalf, P.C.
                                        99 Park Avenue, 6th Flr.
                                        New York, NY 10016
                                        (*Office*) 646.253.0514
                                        (*Fax*) 646.219.2012

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a copy of the foregoing has been served upon counsel for all parties to this proceeding as identified below through the court's electronic filing system as follows:

/s/

_____

STEVEN A. METCALF II
*Attorney for Edward Jacob Lang*

Dated: 08/03/2023