**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

          Plaintiff,

      vs.

EDWARD JACOB LANG

          Defendant.
_____/

Criminal Action
No. 21-053

Washington, DC
May 5, 2023

2:32 p.m.


TRANSCRIPT OF STATUS CONFERENCE
**BEFORE THE HONORABLE CARL J. NICHOLS**
UNITED STATES DISTRICT JUDGE

APPEARANCES:

**For the Plaintiff:**     **Karen E. Rochlin**
                      DOJ-USAO
                      99 Northeast 4th Street
                      Miami, FL 33132

                      **Craig Estes**
                      USAO
                      John Joseph Moakley Federal Cths.
                      1 Courthouse Way
                      Boston, MA 02210

**For the Defendant:**     **Steven Alan Metcalf, II**
                      METCALF & METCALF, P.C.
                      99 Park Avenue, 6th Floor
                      New York, NY 10016


**Reported By:**     **Lorraine T. Herman, RPR, CRC**
                      Official Court Reporter
                      U.S. District & Bankruptcy Courts
                      333 Constitution Avenue NW
                      Room 6720
                      Washington, DC 20001

*** Proceedings recorded by stenotype shorthand.
*** Transcript produced by computer-aided transcription.

1                        **P R O C E E D I N G S**

2              **DEPUTY CLERK:**  Your Honor, this is criminal case

3    21-053*, United States of America versus Edward Jacob Lang.*

4              Will the parties please come forward to the

5    lectern and identify yourselves for the record.  We'll start

6    with government counsel first this afternoon.

7              **MS. ROCHLIN:**  Good afternoon, Your Honor, Karen

8    Rochlin for the United States.

9              **THE COURT:**  Ms. Rochlin.

10             **MS. ROCHLIN:**  Accompanied today by Assistant U.S.

11   Attorney, Craig Estes.

12             **MR. ESTES:**  Good afternoon, Your Honor.

13             **BY THE COURT:**  Good afternoon, Mr. Estes.

14             **MR. METCALF:**  On behalf of Edward Jacob Lang,

15   Steven Metcalf, good afternoon, counsel, and good afternoon,

16   Your Honor.

17             **THE COURT:**  Good afternoon, Mr. Metcalf.

18             So I convened this hearing because obviously I

19   have the Motion to Continue the currently operative trial

20   date.

21             At a minimum, from my perspective, I wanted to

22   talk about -- assuming that we're all in agreement that that

23   makes sense and assuming that Mr. Lang acknowledges that and

24   the like, and I need to make sure that the record is clear

25   on that fact.  I want to talk about scheduling.

1          Why don't we start there, though.  Mr. Lang, could

2     you come forward to the podium, please, with Mr. Metcalf?

3          **THE DEFENDANT:**  Yes.  Good afternoon, Your Honor.

4          **THE COURT:**  Good afternoon, Mr. Lang.

5          Obviously, you've been detained a long time.

6          **THE DEFENDANT:**  Thirty months.

7          **THE COURT:**  Yes.  Trial in this matter is

8     scheduled to start May 29th.  Mr. Metcalf, as I hope you

9     know, has filed a motion asking for a modification of the

10    trial schedule.  The government is open to that.

11         I think there are decent reasons for it, but

12    before we start talking about scheduling, I want to make

13    sure that you are aware of the request, that you agree to

14    it, and that you and Mr. Metcalf have had an opportunity to

15    discuss the motion in light of the fact that, obviously, the

16    longer we go between today's date and trial, the longer you

17    would, if things don't change, remain detained.

18         **THE DEFENDANT:**  Yeah.  I think that's where the

19    crux of it remains is that, being detained and being to 12

20    different prisons now and being constantly moved around on

21    diesel therapy, a form of torture, that I have not been able

22    to settle in anywhere; that I have not been able to properly

23    review discovery.

24         I haven't had an opportunity to -- you know, I

25    have these hard drives and all of my paperwork has been

1    destroyed and moved around every single time that I move to

2    a new prison.

3              So it's become quite impossible for me to have any

4    chance to go against, you know, the threshold of magnitude

5    the United States government has to prepare their side of

6    the case compared to me sitting in 20 months of solitary

7    confinement and the other 10 months that I've been detained

8    have been moved around in the most ridiculous ways from

9    state to state, hundreds of miles away from my family, from

10   Mr. Metcalf, who has been fighting another gruesome trial.

11             If my trial is going to look like anything like

12   that trial, we need time to prepare in person, reviewing

13   video side by side and not through all of these ridiculous

14   channels and loopholes that the prison system is basically

15   just denying me all of my rights to be able to mount my own

16   defense and that's where I stand.

17             So, yes, for an extension.

18             **THE COURT:**  Which sounds like a, for a lot of

19   reasons, yes.

20             **THE DEFENDANT:**  Yes, I need an extension but I

21   also need more access to be able to --

22             **THE COURT:**  Where are you presently detained?

23             **THE DEFENDANT:**  I'm in MDC Brooklyn, one of the

24   roughest joints in America.  I mean, if you just Google the

25   name, it's like, they have power outages, blackouts,

1    lockdowns for weeks at a time, gang violence, extortions.

2    You name it.  It's no place to prepare for a trial like

3    this.  There's not many Trump supporters in that building.

4    I'm just going to be quite frank.

5              **MR. METCALF:**  Your Honor, just so the record is

6    clear, since December 12th, I believe, I have been living in

7    D.C.  I actually was scheduled to leave D.C. today, and I

8    extended my hotel for just long enough for me to be able to

9    come for this conference today.

10             **THE COURT:**  Yeah.

11             **MR. METCALF:**  So during that time, Mr. Lang was

12   moved to Brooklyn.  So we did a complete flip-flop.

13             **THE COURT:**  Right.

14             **MR. METCALF:**  And I plan on returning to New York

15   next week.

16             **THE COURT:**  Right.

17             And do you, Mr. Metcalf, you'll have a sentencing

18   presumably coming up, but that's out in the future.  Are

19   you, at least for the present purpose, sort of near future

20   period, expecting to be back in New York?

21             **MR. METCALF:**  I plan on going back to New York and

22   having me and at least three others buckle down to be able

23   to speak about and with Mr. Lang about --

24             **THE COURT:**  Right.  So at least location-wise, at

25   that point, Mr. Lang's presence in Brooklyn -- I recognize

1    what else he said -- but at least with respect to the

2    physical location, that's better than Mr. Lang being here in

3    the D.C. jail or at Northern Neck or something like that?

4         **MR. METCALF:**  I have properties in Maryland, so I

5    can meet -- I can make either work.  I would want to talk to

6    Mr. Lang a little bit further about how he's doing in

7    Brooklyn.  But Brooklyn is very convenient for me as far as

8    just location goes.

9         **THE COURT:**  And trial prep.  Right?

10        **MR. METCALF:**  Yes.

11        **THE COURT:**  All right.

12        So I think the record reflects that, for all of

13   the reasons Mr. Lang and you, Mr. Metcalf, have identified,

14   that I am comfortable that Mr. Lang understands the

15   implications of possibly shifting the trial date.  He has

16   articulated -- you both have articulated, Mr. Lang has

17   articulated reasons for that.

18        A separate question about the where of the

19   detention, but I want now then to talk about the trial date.

20        **MR. METCALF:**  Absolutely.

21        **THE COURT:**  Okay.

22        So, Mr. Metcalf, is it your view, Mr. Lang's view

23   and perhaps you haven't had a chance to talk to him about

24   this recently, that this will be a jury trial?  Is that

25   still the plan or do you not know yet?

1          I'm not trying to hold you to a particular view.

2     I'm just thinking through how long this trial will take and,

3     as a result, where it could be put into the calendar.

4          **MR. METCALF:**  I say for all intents and purposes

5     right now let's say jury trial.  And then timeframe is going

6     to be a different situation because I would like to finalize

7     hiring a couple of witnesses.  So I don't know how deep Your

8     Honor wants to get into that as far as witnesses go.

9          **THE COURT:**  Let me just ask you this general

10    question, and then I'm going to ask Ms. Rochlin the same

11    thing.  I know we've had prior conversations about it but,

12    based on your knowledge of this case, how long do you think?

13    And I get that the government has to go first.  So this is,

14    I'm just trying to understand both parties' general views.

15    How long do you think this case will take?

16         **MR. METCALF:**  I would say realistically between

17    picking a jury -- and now, I don't know how many officers or

18    how many witnesses the government is going to -- is prepared

19    to put on.

20         **THE COURT:**  Right.

21         **MR. METCALF:**  But I would say that this is a

22    two-week trial in my mind.

23         **THE COURT:**  Okay.

24         **MR. METCALF:**  I don't think that we're going to

25    suffer the things that have happened in other juries, as far

1    as Mr. Lang is not associated with a group or anything along

2    those lines, so that usually is what takes up most of the

3    time from my experience.

4            **THE COURT:**  Right and it's a single-defendant

5    case.

6            **MR. METCALF:**  Exactly.

7            **THE COURT:**  And that two-week estimate is

8    consistent with what we talked about all along, and is how

9    long I had scheduled the trial for here.  So I just wanted

10   to make sure from your perspective that was basically right.

11           Okay.  Thank you.

12           Let me hear from Ms. Rochlin on these questions

13   and then we can talk about specific timing.  Okay?

14           **MR. METCALF:**  Thank you.

15           **THE COURT:**  Thank you.

16           **THE DEFENDANT:**  God bless.

17           **THE COURT:**  Ms. Rochlin, same, why don't we start

18   there.  Do you continue to think that this is in the nature

19   of a two-week trial, assuming it's a jury trial?

20           **MS. ROCHLIN:**  Your Honor, I'm going to tell you we

21   should stick with the two-week estimate.  At an earlier

22   proceeding, I had expressed some optimism that the

23   government's case might shorten.  And I continue to believe

24   that that is the case.

25           But sensing that there will be a defense case and

1    that, at least as of today, this is a jury trial, while I

2    wouldn't expect, based on my own experience, that jury

3    selection would go past two or three days, I think a

4    two-week estimate is probably safer under the circumstances.

5         **THE COURT:**  Okay.

6             This is a question I should have asked

7    Mr. Metcalf.  The government obviously wasn't the movant

8    here but is not opposed to the motion.  Putting aside

9    specific schedules, do you have a view about -- I know the

10   parties discussed any date after August 1st.  Is that really

11   just, from the government's perspective, a willingness to

12   accommodate that request from the defendants or does the

13   government need a certain amount of time between today's

14   date and whatever the new trial date is to get ready?

15        **MS. ROCHLIN:**  Your Honor, we were concerned that,

16   if the trial was not going to remain on the schedule for May

17   30th, since we do go first and we call witnesses, which the

18   defense may or may not, August for the United States

19   accommodates some issues for at least one witness and

20   perhaps others.

21            But if the Court has a date that is going to work

22   for the Court, is going to work for the defense and means

23   that we can go forward, the United States will work to push

24   through any witness issues and take the trial date.

25        **THE COURT:**  Thank you.

1          Mr. Metcalf.

2          **MR. METCALF:**  Your Honor, I have one concern that

3     I would like to raise with you.  Your decision on the 1512

4     and obviously what just recently happened at the Court of

5     Appeals, I read that decision for hours.  I understand where

6     each of the Judges sit as far as their respective positions.

7          That created, in the other trial I was doing,

8     various different opinions flying back and forth as to how

9     to even do or what the proper wording of the jury

10    instructions should have been on that 1512 count.  The 1512

11    count and your decision on that is something that Mr. Lang

12    is very -- he's very adamant that he wants to keep

13    continuing to fight that scenario.

14         That was a motion that we brought that Your Honor

15    granted that the government then appealed to the Court of

16    Appeals and then the appellate court split three ways with

17    the essence of that decision, from my read, essentially

18    overturned Your Honor's decision and allows for that count

19    to remain.

20         Now, with that being said, I haven't really really,

21    really had a chance to speak to Mr. Lang about this, but he

22    has hired counsel to go to the Supreme Court with this, and

23    that is currently actively being worked on from my

24    understanding.

25         So I don't know how Your Honor wants to factor

1    that into our conversation today.  That was an issue that

2    was brought up in December when we did originally start the

3    May date.

4          **THE DEFENDANT:**  Your Honor, may I have permission

5    to add to that?

6          **THE COURT:**  Sure.  I mean, I probably would like

7    you to run by Mr. Metcalf what you're going to say.

8          **MR. METCALF:**  Just one second, Your Honor, for

9    your indulgence.

10        (Discussion off the record between Mr. Metcalf and

11   Mr. Lang.)

12        **THE DEFENDANT:**  Your Honor, in my opinion, the

13   1512 charge being overturned by the appellate division, when

14   we push this up to the Supreme Court, which we just hired

15   more counsel to do and, literally, I think within a couple

16   days we're going to be filing that writ, I believe that the

17   way the Supreme Court --

18        **THE COURT:**  You probably shouldn't do that until

19   the Court of Appeals acts on the petition for re-hearing.

20        **THE DEFENDANT:**  I believe that the way that the

21   Supreme Court has been leaning recently and I think that it

22   is very likely that they're going to take this case in 2024

23   or maybe later 2024, right around election time, it's going

24   to be like sparks flying, heated match up there.

25              And it could be possible that the same reason we

1    extended out my trial from January 9th so that there was not

2    a two-trial situation where I have the 1512 charge and I

3    don't, is very likely to occur if my trial happens between

4    now and when that decision comes down from -- God willing --

5    from the Supreme Court taking this case, which the

6    implications of the 1512 charge being offered by the January

7    6th Select Committee to charge Donald Trump with, I think

8    the Supreme Court's going to jump on the opportunity to

9    really give an actual sound legal and stand by you on this

10   decision that you made because of the implications with

11   Donald Trump and the obstruction of Congress they're trying

12   to get him with.

13          So it's almost guaranteed they're going to take

14   it.  And it's going to create a situation for me where I'm

15   going to be tried twice, once with this, once without this.

16          And all that being said, me remaining indefinitely

17   detained without my liberty throughout this whole entire

18   time, is just not tenable.  I don't think it's in the best

19   interest of justice and I think it's outrageous.

20          **THE COURT:**  So I'm obviously well aware of the

21   various moving parts on the 1512 question.  You have the

22   petition for re-hearing that's been filed by folks as to the

23   opinion's already occurred or already been issued.

24          There's another argument coming up in the Court of

25   Appeals about the definition of "corruptly."  So I get that

1      there is a lot that's moving in the Court of Appeals even on

2      1512.  And then, of course, as you said, there could be

3      additional review.

4              It seems to me that, even if we had perfect

5      knowledge about where the law is going to land on 1512, that

6      you've articulated reasons that we should be moving the

7      trial.

8              **THE DEFENDANT:**  Yes.

9              **THE COURT:**  I think what we should do is we should

10     move the trial to a date that works, assume that we're going

11     to get some clarity from the Court of Appeals on at least

12     the definition of "corruptly."  We don't need to have that

13     debate, but that's three to four months from now we would

14     set the trial date for, and we take it up as it goes.

15             The reason I was asking about when people would be

16     ready is because, when the motion to move the trial first

17     came in, I was not available in August.  I had another trial

18     sitting on my calendar, but that's about to move; very

19     likely.

20             It's also for someone who is not detained.  And my

21     view, in general, is I'm bumping any non-detained defendant

22     trial for a detained defendant trial recognizing you would

23     rather not be detained but, for present purposes, you are.

24             So taking things sort of bit by bit, could the

25     parties start this trial presently, assuming we have all of

1    the clarity that we need that we wouldn't have to have

2    multiple trials, I recognize that may not be perfect, start

3    the trial on August 1st, Monday, August 1st?

4           Mr. Metcalf, would that work?

5           Or how about this?

6       (Discussion off the record between Mr. Metcalf and

7    Mr. Lang.)

8       **THE COURT:**  Any other Monday in August starting

9    that Monday for the two-week period thereafter.  I have

10   another trial later in August, but that's also a defendant

11   who is not detained and I could bump that one too.

12      **MR. METCALF:**  Your Honor, do you mind if I look at

13   my phone real quick at my calendar?

14      **THE COURT:**  Please.

15      (Brief pause.)

16      **MR. METCALF:**  Okay.  So Your Honor is saying --

17      **THE COURT:**  So August 1st is a Tuesday.  I just

18   happen to have another trial that's currently scheduled to

19   go through July 31st.  It may not but, just to be safe and

20   because your motion said move the trial to starting on

21   August 1st or later, I could start the trial in this

22   matter -- frankly, I could start it any day in August.

23          I was just picking that August 1st, Tuesday, or

24   any of the other -- or any of the Mondays in August, the

25   7th, the 14th, the 21st or 28th.

1          **MR. METCALF:**  I would prefer the 28th if we're

2    going to do August.

3          **THE COURT:**  Okay.  And why is that?

4          **MR. METCALF:**  Because I need as much time as I can

5    to prepare and ultimately speak with Mr. Lang.  So I know

6    that there are going to be -- that there's going to be a

7    bump somewhere, no matter what happens.

8          And I would -- I would like to be able -- I need

9    to be afforded the opportunity to actually take all of the

10   material I have on Mr. Lang and get it on a new hard drive

11   and be able to get it to a way where the new jail that he's

12   in will allow him to review it.

13         I just got four -- I just got sent four discovery

14   dumps again that were reproduced to me that we're not

15   able -- that I was not able to save based on USAfx deleting

16   it every 60 days.  I just got four of those reproduced to me

17   by the government, and I'm having difficulty downloading all

18   the stuff from those four productions.

19         So I know that any day in August means I am going

20   to be spending an astronomical amount of time preparing for

21   this.

22         **THE DEFENDANT:**  I'd like to add to that, Your

23   Honor, that I have only seen the exhibits held against me by

24   the government and had zero opportunity whatsoever to review

25   any exculpatory evidence or the wide berth of data available

1    on discovery on Evidence.com and Relativity and the

2    terabytes of video that I believe will exonerate me for the

3    massive amounts of police brutality that happened that day

4    in many different circumstances that need to be weeded out.

5              It's video sleuth -- we have a video sleuth here

6    with us in court today, one of the best in the world, who

7    has dedicated his life to this for the last two years, and

8    he's still not even -- with freedom, for the last 30 months,

9    he's still not even been able to go and find every instance

10   of police brutality and misconduct that occurred.

11             THE COURT:  Well, just to be clear, instances of

12   police brutality that you weren't involved in have zero

13   relevance in this case and I will not be admitting them.

14             THE DEFENDANT:  Okay.  I may have seen them from

15   my vantage points of different places where I was at and I

16   did see --

17             THE COURT:  Okay.  Well, then they would have some

18   relation to you.  But random instances of alleged police

19   brutality are going to have no role in this case.

20             MR. METCALF:  Your Honor, we'd be looking to, and

21   that's where Mr. Lang becomes a vital part of his own

22   defense is he knows what he saw, where he was during certain

23   points in time that I'm not able to pinpoint him there.  So

24   we're not going to be looking to introduce anything that

25   does not fall squarely within the relevance of what Mr. Lang

1    saw, did and heard that day.

2    **THE COURT:**  So let me ask you another question on

3    scheduling.

4    August 28th is a little bit complicated for me,

5    not so much about that first week, the 28th, but the next

6    week, and then mid-September is not great.  I know the

7    government may have a different view on all of this.  But

8    just from your perspective --

9    **MR. METCALF:**  Are you talking late September then?

10    **THE COURT:**  Late September or early October --

11    late September, I have a different detained defendant who's

12    been detained substantially longer than Mr. Lang for

13    different reasons.  So I actually couldn't do a trial really

14    September 25th through October 6th.

15    **MR. METCALF:**  I'm amenable and agreeable to

16    September/October, and then I will have discussions with

17    Mr. Lang about pending motions, about everything that has to

18    get done going forward as far as motion practice goes, about

19    his bond situation or just every single aspect that has to

20    go through so I can find --

21    **THE COURT:**  Would you, meaning the defense, you,

22    Mr. Metcalf, and you, Mr. Lang, having discussed this with

23    Mr. Metcalf for all the reasons you've been talking about to

24    prepare for your defense, would you prefer a trial that

25    would begin -- these are really the two best two-week

1    periods on my calendar -- either -- just making sure I'm

2    getting the dates right -- either August 21st through

3    September 1st?  That's two weeks.  Or because what I

4    basically just said about September or, alternatively,

5    August 10th through 20th or, I suppose, 16th through 27th?

6    Those two weeks there.

7            Basically, would you rather have this case moved

8    to August or have the case moved to October where we, of

9    course, are talking about balancing different

10   considerations.  That would be two more months of

11   preparation but two more months of potential continued

12   detention.

13           **MR. METCALF:**  So what's the date for -- is

14   there -- September is completely out?  It would then have to

15   be October and, if so, is it the first week of October?

16           **THE COURT:**  No.  It would be in October -- so

17   these are the two easiest periods for me.  All right?

18   August, the date I already gave, August 21st through

19   September 1st, that two-week period.  Then the earliest in

20   October would be October 10 through October 20.

21           **MR. METCALF:**  I prefer that, Your Honor.

22           **THE COURT:**  Let me just now -- okay.  What I'm

23   going to do is I'm just going to -- the other alternative,

24   which is a little bit more complicated for various reasons

25   but could be September 5, so that's Tuesday after Labor Day,

1    through September 15.

2            So basically there's three periods.

3            **MR. METCALF:**  October, Your Honor.

4            **THE COURT:**  Okay.

5            The defense would prefer October 10 to 20 or, I

6    suppose, if -- I got it.

7            Let's hear from the government now and then we'll

8    figure this out.

9            **MR. METCALF:**  Thank you.

10           **THE COURT:**  Ms. Rochlin, for the government.

11           **MS. ROCHLIN:**  Your Honor, I'm certain we can make

12   any of the Court's proposed dates in August work.  I think

13   that would be the government's preference.  But we can also

14   work with the Court and the defense if the chosen dates are

15   the ones the Court has proposed, September 5 through 15th or

16   October 10th through 20.  I am not going to tell you those

17   won't work.

18           **THE COURT:**  You'd rather do it a little bit

19   earlier, but you can make the 10th through the 20th work,

20   October?

21           **MS. ROCHLIN:**  We can make those dates work.

22           And for the sake of the record, Your Honor, I

23   would also like to clarify what, I guess, was a deep enough

24   assumption on my mind that it didn't occur to me to mention

25   it, but my assumption walking into court today was that the

1    trial schedule we were discussing at least contemplated --

2    perhaps complicated -- but contemplated a trial without the

3    1512 count.

4            The United States assumed that, until things were

5    resolved by the Court of Appeals, and I am not making

6    predictions about that timeframe at this point, that --

7            **THE COURT:**  Well, I don't have jurisdiction right

8    now over the 1512 count to start with.

9            **MS. ROCHLIN:**  Understood.

10           **THE COURT:**  But the mandate could issue --

11           **MS. ROCHLIN:**  Anytime.

12           **THE COURT:**  -- anytime.  Well, the mandate could

13   issue in the near future.  There might be a cert petition

14   that may or may not hold up the issuance of the mandate.  It

15   seems to me, I guess I was assuming it's an open question.

16           **MS. ROCHLIN:**  It could be.  But because we were

17   having this conversation now, my assumption was that we

18   would be going forward without the 1512 count, if we go

19   forward in the near term.

20           And I am not making bets on when the mandate

21   issues and when jurisdiction on the 1512 count is restored

22   to this Court.  So I guess part of what I want to

23   communicate is, whether or not the 1512 count remains in the

24   appellate forum or returns to this forum, it is the

25   preference of the United States to go forward with at least

1    a trial.

2             **THE COURT:**  Let me ask this question then:  If we

3    set October 10th as the trial date here, does the government

4    anticipate any difficulty in being ready to try a case that

5    might -- a different way to put it is, where it might have

6    to be flexible as we get closer to the trial date about

7    whether 1512 is in or out?

8             **MS. ROCHLIN:**  We can be flexible, Your Honor.  I

9    will prepare --

10            **THE COURT:**  It seems to me that most of the proof

11   is going to be very similar whether that count is in or out.

12            **MS. ROCHLIN:**  There might be an additional --

13            **THE COURT:**  Some additional.

14            **MS. ROCHLIN:**  Right.  Some of those are witnesses

15   or not, those will be judgment calls that I think occur

16   closer to the actual date, but I don't forecast significant

17   differences in the length of the trial.  And I forecast

18   being ready to pivot, depending on how things break with the

19   scheduling.

20            **THE COURT:**  Right.

21            Yeah, it's certainly true, as a technical matter

22   that, if the trial in this case started in the present

23   posture, we could not do a trial of the 1512 count because I

24   don't have jurisdiction over it.

25            **MS. ROCHLIN:**  Right.

1          **THE COURT:**  That's simple.

2          The question is whether, if we set the trial date

3     for October 10th, there will be adequate clarity around the

4     1512 count in this case such that it's in or out.  And it

5     may be that there isn't adequate clarity, and then we have

6     to decide that it's out or it may be that there is adequate

7     clarity and that means it's in.

8          It seems to me that, if we set the trial date for

9     October 10th, that's five months from now, there will be

10    developments.  They may not be fully and final but there

11    will be developments.

12         So as long as the government is available October

13    10th -- and you've said you are even though that's not your

14    preference -- and so long as the government has acknowledged

15    that it could be at least flexible to a point and -- as it

16    has -- and we all recognize that the proof is going to be,

17    in substantial part, overlapping whether 1512 is in or out,

18    which we get, then it seems to me, from the government's

19    perspective, it's acceptable to set this trial for October

20    10th and figure out as we get closer whether that trial does

21    or does not include the 1512 count.

22         Do you agree with all of that?

23         **MS. ROCHLIN:**  We can work with that, Your Honor.

24         **THE COURT:**  Okay.  You can work with that.  Great.

25         Okay.  Mr. Metcalf -- Ms. Rochlin, apologies.

1          Is there anything else, before I just confirm with

2    Mr. Metcalf that an October 10 deadline -- a trial date and

3    some of the topics you and I just discussed, anything else

4    you would like to raise with me?

5          The one thing I will just preempt is, as before,

6    if we move the trial date to October 10th, I will ask the

7    parties to see if they can meet and confer and reach

8    agreement on a revised set of pretrial deadlines.

9    Recognizing that some of those deadlines have passed

10   already --

11         **MS. ROCHLIN:**  Yes, Your Honor.

12         **THE COURT:**  -- as to the current schedule and the

13   parties may have different positions about the implications

14   of that, but I don't really want to weed through those if

15   the parties can reach agreement in the first instance on

16   that.  Right?

17         A motion that was filed and there was no

18   opposition filed, how do we treat that?  If the opposition

19   was due before or if the motion was due before but wasn't

20   filed, how do we deal with that?

21         I want, in the first instance, assuming we're

22   talking about October 10th, the parties to have those

23   conversations and see if they can reach agreement.  Okay?

24         With that, are there any other topics from the

25   government's perspective you'd like to discuss?

1          **MR. ESTES:**  Yes.

2          **THE COURT:**  Okay.

3          **MS. ROCHLIN:**  With respect to meeting and

4   conferring, what I would urge the Court to consider, because

5   I believe it will be most helpful for the parties, is to set

6   two dates, the first being by X date, I'm open to what that

7   might be, the parties will meet and confer.  So there's a

8   clear indication of when the conferring has to happen.

9          And from there --

10         **THE COURT:**  And then a later date for when the

11  joint submission must be --

12         **MS. ROCHLIN:**  Yes, exactly.

13         **THE COURT:**  -- filed?

14         **MS. ROCHLIN:**  That would be my first.

15         **THE COURT:**  I understand.  Okay.

16         **MS. ROCHLIN:**  My second -- and it's probably a

17  moot point given contemplation of the October trial date

18  but, to the extent that counsel raised the reproduction of

19  discovery, I would just like the record to be clear that the

20  discovery materials in question were produced in February

21  and through June of 2021.

22         The request for reproduction was made in March of

23  this year.  So there's been substantial -- some substantial

24  passage of time between the original production and the

25  request.

1          I mention this only to emphasize that the

2     reproduction is not because of any dereliction on the part

3     of the government.  We produced material timely.  We are

4     responding to counsel's request for reproduction.

5          It sounded a little bit in court, and maybe a

6     transcript will reflect things differently, as if there were

7     perhaps other reasons about the timing of the reproduction

8     but --

9          **THE COURT:**  I didn't take it that way, but I think

10    the record, from the government's perspective, is clear.

11         **MS. ROCHLIN:**  Thank you, Your Honor.

12         **THE COURT:**  Okay.  Thank you.

13    So, Mr. Metcalf --

14         **MR. METCALF:**  Can I address counsel's last part

15    first real quick?

16         **THE COURT:**  Sure.

17         **MR. METCALF:**  I did not mean to suggest at all

18    that there was any wrongdoing by the government.  I simply

19    called counsel and told her I was missing those materials,

20    not that they were not turned over to me prior.

21         USAfx deletes the materials, I believe, after 60

22    days or so.  And there were certain materials that I thought

23    I had uploaded onto my servers or on a flash drive.  And

24    throughout the course of this case, I've dropped off flash

25    drives that have not been returned to me at various

1    different jails.

2              There are so many different things that have

3    happened or I just didn't download the material.  So counsel

4    was great.  She --

5              **THE COURT:**  You don't have to worry --

6              **MR. METCALF:**  -- responded to my request and I was

7    grateful.

8              **THE COURT:**  I didn't take it that way from you.  I

9    took Ms. Rochlin's representations.  I was not blaming

10   anyone for this.  In a way, if we move the trial date, we

11   now have five months between today's date and the trial

12   date.  There will have to be discovery reviewed by you and

13   with Mr. Lang and, who knows, you may have follow-up

14   questions and the like.

15             I get it.

16             I also understand that the servers -- I mean, the

17   government servers or the repositories are voluminous and

18   can be somewhat unwieldy from time to time, no fault of the

19   AUSAs here, of course.

20             **MR. METCALF:**  Of course.  Your Honor, I've had two

21   computers crash on me in the last three months just trying

22   to upload materials from these cases.

23             **THE COURT:**  Yeah, I get it.

24             **MR. METCALF:**  It's completely shut down.

25             **THE COURT:**  Right.

1    **MR. METCALF:**  Your Honor, a lot of this has been

2    the scheduling and the frustration is because of me.  I have

3    been on trial since literally December.  I have not had

4    adequate sleep, had a chance to actually breathe.

5    I plan on going back home to my family today for

6    the first time in a very long time, not having to come back,

7    run back immediately for trial.  And with that said, I will

8    make this an absolute priority this week, starting Monday,

9    where Your Honor can make it the meet and confer start as

10    early as Monday, Tuesday.

11    I am open to getting a move on this immediately

12    because I promised that of Mr. Lang.  He was patient enough

13    to work with me throughout my trial and I am ready to go.

14    So as early as next week meet and confers, I have no problem

15    with.

16    **THE COURT:**  All right.  And I appreciate that.

17    Let me just raise one relatively substantive

18    question raised by the government, which is, present posture

19    of this case, I don't have jurisdiction over the 1512 count.

20    **MR. METCALF:**  Yes.

21    **THE COURT:**  If we had been going to trial on May

22    29th, I very likely would not have had jurisdiction over the

23    1512 count; that's my guess.  Mandate probably won't drop by

24    then.  By October 10th, I may have jurisdiction over the

25    count and I may or may not have full and final guidance from

1    higher courts, whether there's a cert petition or for some

2    other reason.

3              Are you comfortable, at this time at least, moving

4    the trial date to October 10th and, as the summer goes or

5    perhaps the spring and summer goes, essentially having to

6    decide as we go whether that count is in or out and, if for

7    whatever reason it's out, taking up the question, as

8    Mr. Lang was saying before, about whether it would be

9    appropriate to do a trial on the non-1512 counts and then

10   leave the 1512 count later?

11             Obviously, Ms. Rochlin's -- the discussion I had

12   with her, at least would admit of the possibility that there

13   would be two trials in this matter.  I get that that may not

14   be Mr. Lang's preference.  We don't have to decide that

15   today.  We have five months.

16             I just want to make sure you're comfortable with a

17   world in which that question, whether -- and then as to say

18   whether the October 10 trial scope, whether we continue to

19   discuss that question as the year progresses?

20        **MR. METCALF:**  I think that's the only reasonable

21   thing that we can do.

22             I do want to note that that is a concern of

23   Mr. Lang, is that count not being included so on and so

24   forth.  But at least this October date gives us more time

25   for us to figure out where we're going to be.  In the next

1    couple of months, I believe we'll be in a different

2    position.

3              **THE COURT:**  Yes.

4              **MR. METCALF:**  And I just wanted to be able -- as

5    long as it's noted, which I think Your Honor has adequately

6    done, that we are going to continue to address this issue, I

7    am perfectly fine with that.

8              **THE COURT:**  Yes, we will.

9              Okay.  So here's what we're doing by way of

10   scheduling.  I am granting the Motion to Continue.  The new

11   trial date is October 10th.  It is anticipated that the

12   trial will last approximately 10 business days.  I get that

13   things change but that's just what I'm assuming.

14             The parties are ordered to meet and confer by no

15   later than May 12th, so the end of next week, to discuss the

16   revised scheduling order in light of that new trial date,

17   and to submit to me, no later than May 19th, a revised

18   scheduling order that either reflects full agreement between

19   the parties or agreement and, where there's disagreement,

20   the disagreement noted with the reasons.

21             That all will enable me to get that submission no

22   later than May 19th and to thereafter enter the revised

23   scheduling order and then we'll have a schedule for this

24   case.

25             **MR. METCALF:**  Excellent.

1          **THE COURT:**  And I would say included in that --

2     I'm going to say two things -- one is, as I said,

3     discussions around dates, but also the implication of the

4     fact that some of the dates under the earlier scheduling

5     order passed.  The parties will have potentially different

6     positions on those questions or the implications of that,

7     the effect of that.  I want that discussion to be wrapped

8     into this.

9          The second thing is -- and I just don't remember

10    if it existed in this case -- I have been putting in my

11    scheduling orders in criminal cases an obligation that the

12    parties meet and confer to see if they can reach agreement

13    before filing any motion.

14         So any motion contemplated by the revised

15    scheduling order itself must be preceded by an effort to

16    narrow any issues in dispute, just like we would have by

17    operation of the local rules in a civil case.  It is in the

18    current scheduling order so I want to make sure it stays in

19    there; that's Paragraph 4.  Good.

20         Okay.  A small point, Mr. Metcalf, does Mr. Lang

21    agree that, in light of trial preparation, all of the things

22    we've been talking about today, that it's appropriate to

23    exclude time under the Speedy Trial Act between probably

24    what was the last date, May 29th, through which we had

25    excluded, through the new trial date of October 10th?

1          **MR. METCALF:**  Yes, Your Honor.

2          **THE COURT:**  And I assume the government agrees,

3     Ms. Rochlin?  You don't have to come all the way up.

4          **MS. ROCHLIN:**  The government agrees, Your Honor.

5          **THE COURT:**  I agree as well that it's appropriate

6     and that the ends of justice are best served and outweigh

7     the interests of the public, Mr. Lang, a speedy trial for

8     all the reasons we've discussed today.

9          And therefore, the time between what would have

10    been the old trial date, May 29th, and what is now the new

11    trial date of October 10th, shall be excluded in computing

12    time within which the trial must commence in this case under

13    the Speedy Trial Act.

14         **THE DEFENDANT:**  Your Honor, may I make a comment

15    on this?

16         **THE COURT:**  Let me just say one more thing.

17         **THE DEFENDANT:**  Thank you.

18         **THE COURT:**  I recognize that I have passed

19    multiple times on the question of Mr. Lang's pretrial

20    detention, which is a question of pretrial detention and

21    there is also a question of trial preparation.

22         Sitting here today, we have not had a week or a

23    month or a period where you, Mr. Metcalf, have been

24    physically --

25         **MR. METCALF:**  Available.

1    **THE COURT:**  -- proximate.  Available but proximate

2    to Mr. Lang.

3    **MR. METCALF:**  Uh-huh.

4    **THE COURT:**  I want to allow that to work some,

5    whether it's at Brooklyn or some other facility near you.

6    But as always, if you, for whatever reason, encounter an

7    issue you would like to raise with me, I'll resolve it.

8    You know, as I've said before, I've resolved those

9    motions based on the arguments that were being presented to

10   me at the time.  And those have always been without

11   prejudice to you raising issues in the future.  I'm not

12   suggesting I'm going to grant a motion.  I'm just saying

13   that no one should assume that --

14   **MR. METCALF:**  Your Honor, if I may, I think that,

15   in light of the meet and confer that Your Honor just

16   ordered, I think it's great because all outstanding motions,

17   this will make us go back to the table on anything that --

18   maybe even if a reply was not submitted.  Your Honor

19   mentioned opposition.

20   I'm going to go back over everything.  I'm going

21   to speak to the government.  We're going to go through where

22   we stand with every single issue.  I am going to go back

23   through Mr. Lang's status at the Brooklyn MDC jail.  I'm

24   going to see if any changes are necessary and meet and

25   confer with the government about updates.

1          Every single thing is going to be back on my

2     agenda, and I want to address everything going forward with

3     this meet and confer.

4          **THE COURT:**  Okay.

5          **MR. METCALF:**  So I appreciate that Your Honor --

6     I'm going to go through everything that I believe and see

7     outstanding.  And even preparation as far as witnesses go, I

8     have a different view as to how I want to handle that as

9     well.

10         So I'm going to treat this meet and confer as a

11    global scenario going forward for as much preparation as we

12    possibly can do.

13         **THE COURT:**  Okay.  Thank you.

14         Mr. Lang, do you want to mention to Mr. Metcalf

15    what you're about to say just to make sure he is

16    comfortable?

17         **THE DEFENDANT:**  I mentioned it.

18         Your Honor, there's a few topics we just brought

19    up.  I'm going to start with I believe that the way the

20    discovery has been dolled out, the way that many different

21    truths of January 6th have come to light throughout the last

22    30 months, throughout all these different various trials,

23    investigative journalism done by *Epoch Times* and many other

24    reputable sources about government agents inside the crowd

25    and stuff that it's taken 30 months for all of these things

1    to come out.

2            So my speedy trial has had to have been postponed

3    because of the berth of just the video footage and the

4    calamity that this whole entire situation occurred.  I

5    couldn't go to trial one week after I got arrested, 30 days

6    after I got arrested, because we are still learning so much

7    more about January 6th, the causes and forces behind it, the

8    aberration -- the derelictions of duty from the higher-ups

9    to the improper treatment of the peaceful protestors at the

10   bottom, through so many different channels that, including

11   the trials that have just occurred that my attorney has

12   grueled through, the trials coming up are going to bring out

13   more and more information to light.

14           So I have been put in a position where I have been

15   forced to give up my speedy trial because I've been playing

16   this in a most strategic way saying, I need to sit back and

17   watch every single day.  I mean, I keep on reading through

18   *Epoch Times*, which is the number three newspaper in America

19   by volume that does amazing investigative journalism on

20   January 6th.

21           I just keep on sitting back and watching more and

22   more FBI ridiculousness and them having federal agents

23   dispersed throughout the crowd come to light and all of

24   these different things come to light.

25           So for me, on my side, I've been forced to give up

1    my speedy trial because the way that this whole entire

2    situation has occurred and the discovery dumps, I haven't

3    had an opportunity through 12 different prisons to go over a

4    terabyte of information that is pertinent to me in my case

5    because of how long I was in the tunnel and how long -- and

6    the places I was at.

7            It's been -- I haven't had the time to review it

8    myself.  The public is reviewing it and doing the work.

9    They just released -- Kevin McCarthy just released the

10   40,000 hours of video footage to Fox News for independent

11   journalism to do the job of this monstrosity of discovery

12   and data.

13           So all of this has been forced upon me.  I have

14   been mistreated, moved to 12 different prisons and had to

15   lay back strategically waiting for Fox News, *Epoch Times*,

16   Gary McBride, who is sitting in here right now,

17   investigative journalism, to go through and find out the

18   data that is important to me, because it is such a massive

19   berth of data that we're still looking through it.  And I

20   haven't even had the chance to do my due diligence on it.

21           So I just wanted to say that it is a complete

22   aberration of justice, in my opinion, what I've had to go

23   through thus far, getting all the exculpatory data from

24   other people's trials and stuff.

25           This has never before been seen in America where

1    the correct data for me to be found not guilty and be

2    exonerated has been just slowly leaked out and found

3    through -- oh, another fed in the crowd, nine DHS agents in

4    the crowd and a couple different FBI agents telling them,

5    yeah, let's go into the Capitol and stuff like this.  This

6    is all proven and this will all be related at my trial.

7         But if I went to trial back in, even in January,

8    our first scheduled trial or a year prior to that, I'd have

9    been like a roasted duck because nothing -- none of this

10   information that we currently are sitting on is what was

11   priorly available.  And the information five months from now

12   will be better than the information we have now.

13        And the information a year from then will be even

14   better, because we're -- you see how this is going.

15   Everyone sees it.  If you just are tuned into the

16   investigative journalists that are covering January 6th, you

17   can physically see the slow leak of important data and

18   important points that are so important to my trial that I've

19   just had to sit back and just go through abuses and hunger

20   strikes and macing and beatings in jails from guards, and

21   diesel therapy all because the government can't produce

22   proper exculpatory evidence where they are the ones saying,

23   yeah, we had federal agents in the crowd.

24        You see our own Congress approaching the FBI

25   asking them, Ted Cruz was grilling one of the directors of

1    the FBI, grilling her saying, Did you have federal agents in

2    the crowd?  What were their goals that day?  What were their

3    instructions?  Where are the reports?

4            She says, there's a current ongoing investigation.

5    We cannot answer that.  So when is this?  When are we going

6    to get these answers?  When is Congress going to have a real

7    January 6 Select Committee that is a truth-finding not a

8    let's-get-Donald-Trump-finding scenario.

9            These things remain to be seen.  I'm indefinitely

10   detained waiting for the truth of January 6th to come out.

11   And I personally have had no opportunity to find that truth

12   out myself.

13           **THE COURT:**  Thank you, Mr. Lang.

14           Mr. Metcalf, did you want to add something?

15           **MR. METCALF:**  Yes.

16           I get Mr. Lang's position, and I've personally

17   been dealing with some of the things that he's speaking

18   about.  And I'll give you an example, Your Honor.  You have

19   individual discovery.  Then you have this concept of this

20   global discovery.

21           And I'm on a trial for months.  There's nine

22   defense attorneys, including myself at the time, going

23   through these massive amounts of discovery and the evidence

24   that was presented and all of a sudden something would come

25   out.  And all nine of us, as the attorneys, who all had

1    staff go through these files as well, would go, where did

2    this come from?

3            Lo and behold, it would come out that, Oh, it was

4    turned over in a global discovery batch in like March of

5    2021.  It's like, okay, how were we supposed to be capable

6    of finding and knowing things that weren't even relevant

7    going into the trial but then were just part of a big

8    massive dump that later on became relevant?  How were we

9    supposed to pinpoint that, find it and know that it was

10   there?

11           It's a massive, massive undertaking as far as how

12   much information is out there.  Everybody captured this

13   event from a different phone or from a different camera and

14   it is a lot.

15           So it has actually raised a talk amongst defense

16   attorneys as to the constitutionality of the global -- of

17   global discovery in these matters, in general, because it's

18   that -- it's that unfair.  It's that fundamentally unfair

19   that an issue or of something vital that maybe the

20   government did not anticipate being specific towards one

21   person's case can just get mass produced and pumped into

22   this global discovery concept that no one would ever

23   actually look at.

24           In the heat of everything that you're doing to

25   prepare for trial, you're not going back through the

1    beginning of global discovery scenarios that were turned

2    over in the beginning of 2021.  So there's a lot of

3    information that does get mixed in there.

4            Having done this now for at least the last year

5    and a half, spending a lot of my time on these cases, I get

6    what Mr. Lang is saying.  And that is going to be a

7    continued discussion between him and I.  And if I find -- if

8    I feel that that's an issue that I want to raise in writing,

9    I will meet and confer and then raise it to Your Honor.

10           But I, every time that we have come here, have

11   agreed to waive time based on the circumstances because that

12   was what was necessary for Mr. Lang's defense.

13           **THE COURT:**  Thank you.

14           Thank you, both.

15           **MR. METCALF:**  Thank you, Your Honor.

16           **THE DEFENDANT:**  I want to make one more statement

17   for the record.

18           **THE COURT:**  Keep it short.  I wasn't kidding.

19           **MR. METCALF:**  Your Honor, one second.

20       (Discussion off the record between Mr. Metcalf and

21   Mr. Lang.)

22           **THE DEFENDANT:**  In light of the last filed motion

23   not having a hearing date, I feel like sometimes I'm stuck

24   in random facilities in America and I have no voice to the

25   Court.  We compiled a very comprehensive due process motion

1    and a bond motion that was stricken down without me having

2    my chance to stand before you and explain myself, not just

3    the paperwork, but a man standing before you on those

4    issues.

5              So while I'm here before you, I'd like to just

6    raise -- I have a couple things here quickly so that, when

7    you're reviewing my bond motion later, you can remember

8    these things.

9              I think the main crux of my bond motion and the

10   government's opposition to it is they claim that I have a

11   dangerousness based on my ability to influence other people

12   to violence.  I have been detained for 30 months.  I have

13   been blessed by God to have a very strong voice in the

14   January 6th movement.

15             I have partaken in hundreds of interviews,

16   podcasts.  I've developed two documentaries that have had

17   millions of views.  And in all of those things, I've never

18   espoused any violent rhetoric to influence people to go and

19   do anything violent when I've had the platform to do that

20   such thing literally hundreds of times with millions of

21   people listening.

22             So by evidentiary, what they're claiming against

23   me, their main reason to hold me without bond is completely

24   stricken down.  I've been given the biggest voice of January

25   6th, and I've used it to proclaim God's truth, peace through

1    the Holy Spirit and love of America, not hatred of our

2    enemies.

3              And so the whole entire argument falls apart if

4    you just look at me as a man and you listen to what I say in

5    every interview back to back to back on some of the biggest

6    platforms of America.  And I would love for you to take that

7    into your consideration when you're reviewing my third bond

8    motion.  And that's the main crux of this.

9              **THE COURT:**  Okay.  Thank you, Mr. Lang.

10             **MR. METCALF:**  Your Honor, I think I just want to

11   make one point clear.  What Mr. Lang referred to is as a

12   bond application that was decided without a hearing I

13   believe is Your Honor's December 15th decision.

14             That is everything that Mr. Lang just raised to

15   Your Honor, I will be speaking with the government about,

16   and if anything in addition to that needs to be brought to

17   Your Honor's attention, I will do so.  And that will be part

18   of everything that we're going to go through at our next

19   meet and confer.

20             **THE COURT:**  I agree with that.

21             **MR. METCALF:**  And I appreciate --

22             **THE COURT:**  Sounds appropriate.

23             **MR. METCALF:**  And I appreciate Your Honor taking

24   the time to listen to Mr. Lang as well so thank you.

25             **THE DEFENDANT:**  I do as well.

1    **THE COURT:**  Yes.  Yes.

2         I do want to just say one thing about discovery.

3    In other cases, what I understand the government has done

4    is, of course, the government has made available the global

5    discovery -- I'm talking about other cases -- global

6    discovery to the other defendants but has also pointed those

7    defendants to the information that the government, if it

8    wasn't engaged in global discovery but was doing

9    case-specific discovery, would have produced.

10        Do I know if that's happened here?  I just don't

11   recall.  But if it hasn't I would like it to.

12   **MS. ROCHLIN:**  Your Honor, there has been

13   case-specific discovery in this case.  That's the discovery

14   that began in early 2021, continued through the June 6th

15   production and after.

16   **THE COURT:**  Okay.  Thank you.

17   **MS. ROCHLIN:**  And when we meet and confer, I think

18   there are some specific suggestions that I can offer to

19   opposing counsel that might help with Relativity searches

20   and perhaps might even help him focus on specific locations

21   where the defendant was present and had perspective on

22   activity around him that may also help focus counsel's

23   efforts.

24   **THE COURT:**  Great.  Thank you for that.

25        Ms. Rochlin, while you're up, I know I asked you

1      this question already.  Anything else from the government's

2      perspective?

3              **MS. ROCHLIN:**  No, Your Honor.  I should have

4      mentioned speedy trial earlier but, no, nothing from the

5      government's perspective.

6              **THE COURT:**  Okay.  Thank you.

7              Mr. Metcalf, anything else from the defense

8      perspective?

9              **MR. METCALF:**  No, Your Honor.  And I think today

10     was necessary, and I think it's going to make at least my

11     side of the table be extremely productive.  So I thank you,

12     Your Honor.

13             **THE COURT:**  You're welcome.

14             **MR. METCALF:**  The only thing I just -- I don't

15     know who the appropriate party is to ask.  I'm going to ask

16     the marshals.  I don't know if we know about Mr. Lang being

17     moved back to Brooklyn.  Is that going to happen today?  I

18     don't know if there's going to be any changes.  I don't know

19     who I could speak to about that.

20             **THE COURT:**  I don't know the answer to that.

21             **THE DEFENDANT:**  Since all of my property is there,

22     it would be, once again, another situation where I am left

23     naked and hungry --

24             **THE COURT:**  You would like to go back to Brooklyn?

25             **THE DEFENDANT:**  Yeah, all of my property is there

1    and, you know --

2            **THE COURT:**  I don't have any reason to believe

3    you're not going back there.  Do either of the folks in the

4    courtroom know?

5            **THE DEFENDANT:**  When they packed me up, they did a

6    WAB, with all belongings, which usually means, like, you're

7    out of here, not like you're coming to and from court

8    scenario.  So I don't know where I'm going right now.

9            **MR. METCALF:**  When I call the facility, I'm

10   getting transferred back and forth to people who know

11   nothing.

12           **THE DEFENDANT:**  Do the marshals know?

13           **MS. ROCHLIN:**  Your Honor, if I may, for security

14   reasons, the marshals are not going to disclose the timing

15   of any prisoner movement and will likely not disclose the

16   destination.

17           **THE COURT:**  Right.

18           How about this?  In the event that Mr. Lang is not

19   brought back to Brooklyn or somewhere in New York that is

20   proximate to you, Mr. Metcalf, bring it to my attention.

21           **MR. METCALF:**  I will, Your Honor.  Thank you.

22           **THE COURT:**  Okay.  Thank you, all.

23       (Proceedings concluded at 3:32 p.m.)

24

25

1                         **C E R T I F I C A T E**

2

3            I, **Lorraine T. Herman, Official Court Reporter,**

4     certify that the foregoing is a true and correct transcript

5     of the record of proceedings in the above-entitled matter.

6

7

8

9

10

11       _____May 21, 2023_____        ___/s/___Lorraine T. Herman_____
                    **DATE**                        **Lorraine T. Herman**
12

13

14

15

16

17

18

19

20

21

22

23

24

25