**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Criminal No. 21-CR-53 (CJN)** |
| | : | |
| | : | |
| **EDWARD JACOB LANG,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OMNIBUS RESPONSE IN OPPOSITION
TO DEFENDANT LANG'S MOTION TO RENEW AND
RECONSIDER  HIS REQUEST FOR IMMEDIATE
TEMPORARY RELEASE ON AN EXPEDITED BASIS
AND HIS EMERGENCY SUPPLEMENTAL BOND
APPLICATION BASED ON NEW FACTS AS OF
<u>FEBRUARY 6, 2024</u>**

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, respectfully submits this omnibus response in opposition to defendant

Edward Jacob Lang's most recent filings: a motion, ECF 125, for reconsideration of this Court's

denial of an earlier application for temporary release from detention, and a supplemental bond

application, ECF 126, seeking release from detention on an expedited basis.  Lang's filings recycle

claims from earlier motions that this Court has previously rejected; fail to provide adequate factual

or legal support for the relief he seeks; contain inaccurate information, and are properly viewed

with skepticism. The motion is now largely out of date.  None of its contentions merit temporary

release from detention, and his motion should be denied.

RELEVANT BACKGROUND AND PROCEDURAL HISTORY

After Lang breached the U.S. Capitol's restricted perimeter on January 6, 2021, he

assaulted multiple police officers for hours, at times deploying a baseball bat or a riot shield as a

weapon and causing serious injury.[1]  Soon after the attack on the Capitol and its failure to alter the results of the 2020 presidential election, in a conversation streamed over Instagram Lang was asked what would happen next and he responded, "Guns … That's it. One word."  He also recruited others to form an armed militia to stop the 2021 presidential inauguration and otherwise disrupt the government.

Lang was charged with multiple assaults against federal officers and other felony and misdemeanor offenses. His Superseding Indictment, ECF 36, includes three counts alleging violations of 18 U.S.C. § 111(b), an offense providing a maximum sentence of incarceration for 20 years; four counts alleging violations of 18 U.S.C. § 111(a)(1), an offense providing a maximum sentence of incarceration for 8 years; one count alleging violation of 18 U.S.C. § 231(a)(1), an offense providing a maximum sentence of incarceration for 5 years; and two counts alleging violations of 18 U.S.C. § 1752(a) and (b)(1)(A), providing a maximum sentence of incarceration for 10 years. These felonies are charged along with various misdemeanor offenses and one count alleging violation of 18 U.S.C. § 1512(c)(2), a statute now the subject of a pending appeal before the U.S. Supreme Court.

Following his arrest, a magistrate judge ordered Lang's pretrial detention pending trial. February 9, 2021 Minute Order.  Lang unsuccessfully appealed that order to this Court.  September 20, 2021 Minute Order; ECF 93 at 71-78.  He unsuccessfully appealed this Court's detention order.

---

[1] Lang's current motion incorrectly asserts that Lang "did not possess any weapons" and that "Again, Lang was unarmed on January 6th."  ECF 125 at 9, 14.  This is utterly incorrect.  Lang armed himself with a baseball bat and riot shield that he deployed against multiple officers, striking them repeatedly. For the purposes of 18 U.S.C. § 3142, a grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged."  *E.g., United States v. Klein*, 539 F.Supp.3d 145, 151 (D.D.C. 2021) (internal citations omitted).  Here, Lang is charged under Section 111(b) with using a deadly or dangerous weapon, establishing probable cause that he had weapons and was armed.  Additionally, the D.C. Circuit found that the government's evidence proffered at Lang's detention hearing showed that Lang "struck other officers first with a stolen riot shield and later with a metal baseball bat." ECF 52-1.

ECF 52, 52-1.  He has returned to this Court several times since his detention order was affirmed attempting to challenge his detention without success.  ECF 69, 69-1 at 17-20 (seeking dismissal based on his conditions of confinement); ECF 91 (seeking temporary release); 97 (denying ECF 69 and 91); ECF 115 (seeking temporary release; denied *ore tenus* during September 8, 2023 status conference).

In approximately May, 2023, Lang was brought to the District of Columbia Jail (DCJ) from another facility for court proceedings. On September 8, 2023, this Court held a hearing where Lang argued for release from detention, asserting, among other reasons, difficulty reviewing discovery and preparing for trial. This Court denied his application for release but requested DCJ to provide Lang with greater access to a laptop computer for discovery review.  During the September 8 hearing, this Court also found that it was "crystal clear" that the United States wanted to preserve an October, 2023 trial date the Court had previously scheduled.  Persuaded, however, by Lang's desire to postpone that date despite his continued detention, and over the government's objection, this Court set a new trial date for September 9, 2024.

In October, 2023, Lang was moved to restrictive housing within the DC Jail for his own safety.  The move did not change Lang's access to the laptop dedicated to his use or to discovery materials.  On February 6, 2024, Lang was moved to even more restrictive housing for his own safety.  On February 9, 2024, Deputy General Counsel for the D.C. Department of Corrections confirmed that Lang "has all of his discovery, laptop and flash drive."  *See* Exhibit 1, attached to this response. As of February 14, 2024, while at DCJ, Lang was returned to the original level of restrictive housing in effect in October, 2023.

FACTS RELEVANT TO LANG'S ABILITY TO REVIEW DISCOVERY,
PREPARE FOR TRIAL, AND INVESTIGATE THE EVENTS OF JANUARY 6, 2021

Unlike most defendants housed at DCJ, Lang had a discovery laptop dedicated to his own

use.  *Cf.* District of Columbia Department of Corrections Policy and Procedure No. 4160.3K, ¶ 38b(2) and (3) (effective October 26, 2022) (addressing use on a rotating basis of available laptop computers for discovery review).[2]  DCJ Inmates reviewing discovery on a laptop are required to do so alone in a cell for the duration of the discovery review.  *Id*. at ¶ 38b(2).  Lang's assignment to a restrictive housing unit remained consistent with his ability to use his laptop for discovery review.  Laptop chargers are located within housing units.  Laptop charging is handled by DOC staff rather than the individual inmate.  *See id*., Attachment D at ¶ 5.

On February 9, 2024, while in restrictive housing, Lang called in to a broadcast of "Lou Dobbs Tonight."[3]  During the broadcast, Lang acknowledged having access to counsel; referring to counsel in the above-captioned case by name, he stated, "I talk to him and see him quite often." *Id*. at timestamp 38:28. Lang also described his attorney's most recent filings in this case, namely, ECF 125 and 126 that are the subject of this response.  *Id*. at 38:42 (commenting that his attorney filed an emergency bond application "yesterday" which was "on top of another bond application").

While assigned to restrictive housing, and as the lead and *pro se* plaintiff, Lang has successfully prepared and filed a civil action against Metropolitan Police Department (MPD) officers and the United States Capitol Police that concerns the events of January 6, 2021. Lang intends to seek certification of the plaintiffs in this suit as a class.  *See Lang, et al. v. Thau, et al.*, 24-cv-295 (DLF) (D.D.C. filed Jan. 5, 2024) (ECF 5, Second Amended Complaint filed Feb. 6, 2024). *See also* Figure 1 below.

---

[2] Available at: https://doc.dc.gov/sites/default/files/dc/sites/doc/publication/attachments/PP%204160.3K%20%20Access%20to%20Legal%20Counsel%20%28Attorney%20Visits%29%2010-26-2022.pdf.
[3] Available at: https://blessednewstv.com/watch/lou-dobbs-tonight-2-9-2024_3ghhWN5rmkb4DHb.html (call from Lang begins at timestamp 32:47) (last checked February 20, 2024).

**Jake Lang - January 6 Political Prisoner**  @JakeLangJ6 · Jan 8     ...
WE FILED A NEW JANUARY 6 CLASS ACTION LAWSUIT!!

Improper Training & Use of Force by the Capitol Police lead to loss of life & serious bodily injury for HUNDREDS of Jan 6ers

Over 22 Jan 6ers are already named in the suit & we have until today at 4pm est to add more!!

Visit -->...
Show more

*Figure 1: January 8, 2024 Tweet From Lang's Account Announcing The Lawsuit*

On January 25, 2024, Lang called a podcast from restrictive housing and was able to discuss plans to file an additional motion to change the venue for the above-captioned case.[4]  The podcast interviewer had apparently received PowerPoint slides showing results from a survey of eligible jurors.[5]  During the podcast, Lang was able to discuss individual slides and his beliefs relating to the significance and outcome of the forthcoming motion for a change of venue which the survey was intended to support. Screenshots from the podcast showing slides with survey questions  appear below.

---

[4] Available at https://rumble.com/v49adn2-j6-bombshell-news-tgs-w-jake-lang.html (last checked February 15, 2024).
[5] Lang filed a motion to change venue on March 10, 2023.  ECF 101, 101-1.  With that motion, Lang did not provide his own survey of eligible jurors but cited to a survey presented on behalf of a defendant in another case. ECF 101-1 at 7.



*Figure 2A: Screenshot From Lang's Discussion Of Survey Result*



*Figure 2B: Screenshot From Lang's Discussion Of Survey Result*



*Figure 2C: Screenshot From Lang's Discussion Of Survey Result*

On January 6, 2024, Lang touted the release of his second film about January 6, 2021. According to a tweet from Lang's account reproduced below in Figure 3B, Lang's recently released film shows Lang's "entire day at the Capitol" on January 6, 2021.   His first film became available in June, 2022, as noted in the tweet reproduced below in Figure 3B.  Lang has claimed that he narrated and directed his first film from "solitary confinement."[6]

**Jake Lang – January 6 Political Prisoner** 🇺🇸 ✔ @JakeLangJ6 · Jan 6       · · ·
MY NEW JANUARY 6 DOCUMENTARY IS DONE! WATCH 'PATRIOT DAY' & SHARE!!

WARNING! Viewer discretion is advised for only REAL PATRIOTS!

The long awaited NEW January 6 Documentary: Patriot Day is finally launching for the world to see! The heavily anticipated follow up documentary to...
Show more

*Figure 3A: Tweet, Showing January 6 Date, Which Announces Lang's New Film*

---

[6] *See* https://www.wgso.com/ringside-politics-august-31-2022/ at timestamp 35:01 ("it was created by me and my team, I directed it and I actually, um, narrated a good part of it here in solitary confinement") (last checked Feb. 15, 2024).



← Post

**Jake Lang – January 6 Political Prisoner** 🇺🇸 ✓
@JakeLangJ6

MY NEW JANUARY 6 DOCUMENTARY IS DONE! WATCH 'PATRIOT DAY' & SHARE!!

WARNING! Viewer discretion is advised for only REAL PATRIOTS!

The long awaited NEW January 6 Documentary: Patriot Day is finally launching for the world to see! The heavily anticipated follow up documentary to the #1 video video EVER on Rumble 'The Truth About January 6' that premiered on Gateway Pundit in June 2022 is HERE!

Produced by political prisoner for over 1080 days with NO trial - Jake Lang & his team at J6Truth.org , Patriot Day is truly a 1776 Spirited film that takes you into a riveting first person perspective of the January 6 Capitol protest. We actually are lead through Jake's entire day at the Capitol, and what it was like to be on the ground that day, standing boldly shoulder to shoulder with One Million MAGA Patriots!

*Figure 3B: Continuation Of Tweet Announcing Lang's New Film*



*Figure 3C: Photo Accompanying Tweet Announcing Lang's New Film*

While detained, Lang has authored and continues to market a book that addresses his version of what transpired on January 6, 2021. From detention, he broadcasts a regular podcast which includes his commentary and interviews of others concerning the attack on the Capitol. He

8

takes responsibility for a website, J6Truth.org, which contains visual content promoting Lang's view of the Capitol riot. Lang has also promoted various fundraising ventures for the benefit of other January 6 defendants.  According to Lang, he not only raises money to retain counsel for other defendants but also "manages" their attorneys.  *See generally* "NY Capitol riot suspect records podcast, manages TV network from jail cell in D.C.," published October 2, 2023 at https://www.lohud.com/story/news/politics/2023/10/02/capitol-riot-suspect-jake-lang-starts-podcast-tv-network-from-jail/70991709007/ (last checked February 15, 2024); and Red Pill News, "January 6 SCOTUS Case Breakdown With Jake Lang Friday Night Livestream, https://player.fm/series/red-pill-news-2900299/january-6-scotus-case-breakdown-with-jake-lang-fri-night-livestream, at 40:01 timestamp (Lang states, "I have the J6 legal fund I run getting managing literally dozens of lawyers for dozens of Jan Sixers I'm very, very involved in that I do all the negotiations and make sure everything runs smooth").

LANG'S DISRUPTIVE CONDUCT WHILE DETAINED

Lang reacted to his February 6 placement within DCJ by causing transmission of a tweet from his account calling on his followers to contact specific individuals within DCJ.  The tweet named the officials and provided telephone numbers.  Lang had engaged in similar conduct from other detention facilities, including Rappahannock Regional Jail and a Bureau of Prisons facility in Lewisburg, Pennsylvania.  Lang's communication from Lewisburg was addressed in a government filing, ECF 92, that included a Declaration, ECF 92-1, addressing the security issues for the institution resulting from his publication of staff names and numbers, that included threatening, harassing, and disruptive calls.  By February 6, 2024, Lang had received clear notice that such communications were inappropriate.

From restrictive housing, Lang issued additional tweets, such as one reporting that DCJ

had received a record-breaking number of calls from his supporters and another inaccurately claiming that DCJ had caved to public pressure when Lang was returned to the level of his October 23 placement.  As recently as February 19, 2024, Lang issued another tweet containing a "Call to Action" seeking to  have his followers "call the US Marshalls [*sic*] / DC Jail officials first thing in the morning to demand explanation for this sudden move."  The tweet, which remains accessible online as of February 21, 2024, lists the name and number for DCJ and U.S. Marshals personnel. Lang is no longer housed at DCJ.

ARGUMENT

Lang demands "temporary" release from pretrial detention because he claims the conditions of his confinement interfere with his ability to prepare for trial.  Inconsistently with the position he took before this Court, he also objects to the length of his detention on the grounds that Lang received what he asked for: postponement of his October, 2023 trial date until after a ruling in *United States v. Fischer*, No. 23-5572,  --- S.Ct. ---, 23 WL 8605748 (Dec. 13, 2023), which may address the scope of 18 U.S.C. § 1512(c)(2).  Lang's arguments do not withstand scrutiny or meet the requirements for the release he seeks pursuant to 18 U.S.C. § 3142(i).

It has been settled in this case that no conditions or combination of conditions can be imposed on Lang that will reasonably assure the safety of any other person and the community. ECF 52-1.  When a judicial officer makes such a determination after a hearing pursuant to 18 U.S.C. § 3142(f), "such judicial officer *shall* order the detention of the person before trial."  18 U.S.C. § 3142(e) (emphasis added).

Section § 3142(i) provides a limited basis to release a detained defendant, providing that a judicial officer:

> "may, by subsequent order, permit the temporary release of the person, in the
> custody of a United States marshal or other appropriate person, to the extent that

10

the judicial officer determines such release to be necessary to the preparation of a
person's defense or for another compelling reason."

*Id.* This provision applies in "extraordinary circumstances." *United States v. Rebollo-Andino*, 312

Fed.Appx. 346, 348 (1st Cir. 2009); *United States v. Hill*, No. 3:17-CR-276, 2020 WL 4208936 at

*2 (M.D. Pa. July 22, 2020) ("Release under § 3142(i) is intended for 'extraordinary

circumstances' which are exceedingly rare") (quoting *Rebollow-Andino*); *United States v. Blue*,

No. ELH-19-286, 2020 WL 60443328 at * 4 (D. Md. Oct. 9, 2020) ("courts have invoked § 3142(i)

parsimoniously and for truly extraordinary circumstances").  A defendant moving under Section

3142(i) bears the burden of showing that he is entitled to relief.  *United States v. Chansely*, 525

F.Supp.3d 151, 160 (D.D.C. 2021); *United States v. Riggins*, 456 F.Supp.3d 138, 149 (D.D.C.

2020).

For a host of reasons, and as this Court has previously ruled, ECF 97, Lang does not qualify

for release under this provision or under any other authority he provides.  His motion should be

denied.

I.    Lang Seeks Relief That The Statute He Invokes Does Not Provide

Section § 3142(i) allows for "temporary" release from pretrial detention; however, Lang is

not seeking temporary release.  Instead, he has moved for release until, at the very least, his trial

begins.  ECF 125 at 3 ("the only way Mr. Lang can properly assist and prepare his defense for his

upcoming trial is for him to be released on [*sic*] pretrial detention. Over the course of

approximately *the next nine months*, Lang can make the best of this time in assisting and preparing

his best defense on all aspects") (emphasis added).  In other words, Lang is not moving for

temporary release.  Instead, contrary to Section 3142(i) which may permit a "temporary release"

and Section 3142(e) which mandates his detention as a danger to the community, Lang seeks

indefinite release.  Lang does not explain how a period of "approximately … nine months" is

11

temporary.

This Court noted an identical flaw in an earlier motion of Lang's, ECF 91 (seeking release pursuant to Section 3142(i)), which was denied. ECF 97 at 12 (noting that Lang's argument for release based on the length of his detention "offers no explanation of how release on this ground would be "temporary" within the meaning of 18 U.S.C. § 3142(i)"). In his current motion, Lang fails to explain how his release because of any ground he raises would be temporary within the meaning of the statute. He provides no authority supporting release which, contrary to the explicit text of the statute, would be permanent for the pretrial phase of his case.

Temporal factors also highlight another recurring defect in Lang's motion, which does not show that "temporary release" is "necessary" to prepare his defense. As of this writing, Lang's trial is nearly seven months away. His asserted reason for release thus lacks the immediacy that courts, including this Court, have found applicable to applications for release under Section 3142(i):

> To start, Lang has not shown the degree of immediacy that could make temporary release appropriate; again, over four months remain until the scheduled start of trial. *Compare United States v. Leake*, No. 19-cr-194, 2020 WL 1905150, at *4 (D.D.C. Apr. 17, 2020) (stating that temporary release could be warranted, for instance, if a "merits hearing is scheduled for the following week" (quotation and brackets omitted)), *with United States v. Otunyo*, No. 18-251, 2020 WL 2065041, at *10 (D.D.C. Apr. 28, 2020) (concluding that temporary release was not necessary over five months in advance of trial).

ECF 97 at 10. Lang has not established that his release is necessary to prepare a defense when his trial date is nearly seven months in the future. Additionally, conditions specific to DCJ no longer apply because Lang is no longer there. Accordingly, his motion should be denied.

II. The Conditions Of Lang's Confinement Do Not Warrant His Temporary Release

Lang objected that his cell was cold, he did not have a charger or access to the Relativity[7]

---

[7] Relativity is a cloud-based eDiscovery platform. The United States has produced voluminous

or evidence.com[8] databases, and he did not have the ability to "analyze and highlight" video evidence that is crucial to his case. ECF 125 at 3, 14. He has also objected, ECF 126 at 3, to his placement in more restrictive housing on or around February 7, 2024, and his "removal from the tablet program" which left him "cut off from the outside world and his attorneys" (a claim that as to his attorney Lang contradicted in public statements on February 9, 2024). Lang's supplement further claimed that "months and months" of legal work "has literally just been destroyed."[9]

Regardless of his transfer from general population to more restrictive housing, Lang was not supposed to have access to a charger. According to standard DOC policy cited above, inmates are not supposed to have chargers; instead, discovery laptops must be provided to staff for charging. The United States disputes that Lang has been deprived of his discovery laptop or that months of his legal work have been lost or destroyed. On February 9, 2024, DOC Deputy General Counsel confirmed that Lang had his laptop, discovery, and flash drive, as reflected in Exhibit 1.

Although Lang is no longer detained at DCJ and certain details such as the temperature of his cell are now moot, other claims are not expected to change. For example, Lang will not have access to Relativity or evidence.com regardless of his placement and regardless of whether he is released.

---

discovery materials to a defense "instance" of Relativity, administered by the Federal Public Defender's Office. Defense counsel in all Capitol Siege cases are able to obtain licenses allowing them to access the defense instance of Relativity. Defendants are not provided access to the Relativity workspace. ECF 49 at 8. Lang's lack of access to Relativity does not result from his detention and would not be altered if he were released.

[8] Evidence.com is an online video repository. There is also a defense instance of evidence.com. Under certain circumstances, Capitol Siege defendants detained within the D.C. Department of Corrections may access evidence.com. ECF 49 at 4-5. Lang does not have such access because, as communicated by his counsel, he has refused to acknowledge or accept the protective order, ECF 18, this Court has entered. *See* ECF 50. As long as Lang maintains this position, he will not have access to evidence.com. Thus, Lang's access does not depend on whether or not he is released. Lang's counsel in the above-captioned case are able to access or obtain access to evidence.com.

[9] Since Lang had his computer, discovery, and flash drive in his possession on February 9, 2024, the United States submits this claim is inaccurate.

Once again, however, and at most, Lang describes inconveniences resulting from detention. Courts have consistently rejected claims that the inconveniences of detention are adequate grounds for temporary release. *United States v. Otunyo*, No. CR 18-251 (BAH), 2020 WL 2065041, at *10 (D.D.C. Apr. 28, 2020) (agreeing that if every pretrial detainee is entitled to temporary release to aid working with counsel, then the exception in Section 3142(i) would swallow all detention orders) (internal citations and quotations omitted); *United States v. Krol*, 642 F. Supp.3d 28, 45 (D.D.C. 2022) ("Although Krol himself may not be allowed access to electronic devices, his defense counsel has not averred that counsel is barred from bringing electronics into the jail to show Krol the relevant video evidence. The limitation on Krol's access, while inconvenient, does not lead the Court to conclude that release would be *necessary* for Krol to participate in his defense"); *United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *7 (W.D. La. Jan. 18, 2013) (90-minute commute to jail and complexity of case with thousands of documents requiring thousands of hours to review was common to all incarcerated defendants and did not justify release); *Petters*, 2009 WL 205188, at *2 ("While this case may, in fact, be complicated and require Defendant to review hundreds if not thousands of documents and meet with his lawyers for dozens of hours, that fact, standing alone, simply does not justify Defendant's release" and "accepting such an argument would mean that the more complicated the crime, the more likely a defendant should be released prior to trial. This is clearly an absurd result"); *United States v. Blue,* No. CR ELH-19-286, 2020 WL 6044328, at *7 (D. Md. Oct. 9, 2020), *appeal dismissed*, No. 21-4500, 2021 WL 7569805 (4th Cir. Sept. 23, 2021) (defendant's detention at Northern Neck, a two and one half hour commute from the courthouse, was an inconvenience and did not establish necessity required for temporary release under Section 3142(i)).

As in *Krol*, DCJ offered Lang the option of reviewing electronic evidence during in-person

visits with counsel.  He will have the same option available following his relocation from DCJ. For this additional reason, Lang has not met his burden of showing his release is necessary to prepare for trial.

Moreover, objective evidence exists to treat Lang's claims that he cannot prepare for trial from DCJ with skepticism.  Acting *pro se,* and from restrictive housing, Lang has successfully filed what he hopes to certify as a civil class action.  In that action, he has filed a Second Amended complaint, that, with attachments collected from numerous named plaintiffs, totals 236 pages.

In an interview broadcast on February 9, 2024, Lang stated that he met and spoke with defense counsel quite often and he was able to describe the filings addressed in this response.  He appears able to keep current with events in his case and has access to his attorney. In fact, in addition to interactions with his own attorney, Lang maintains that he negotiates with and "manages" other lawyers on behalf of other January 6 defendants.

In another recent interview, Lang has discussed a prospective change of venue motion and reviewed the results of a survey.  Nothing about this interview indicates that Lang is unable to grasp legal concepts or the kind of factual detail encompassed in polling results obtained for a forthcoming motion; accordingly, he appears able to assist in his defense.

Lang's website and his recently released film contain excerpts from police body-worn camera and other videos of the Capitol riot.  If Lang, whether working by himself or with a team, including from restricted housing within DCJ, can coordinate the use of body-worn camera and other footage for a film, then similarly, on his own or with his defense team he can surely manage to compile footage from police body-worn camera and other sources that he believes will support his defense.  Additionally, Lang has developed a sufficiently detailed knowledge of the events of January 6, 2021 to conduct a weekly podcast and participate in additional interviews where he

discusses Capitol riot prosecutions other than his own and opines on topics such as the pending appeal before the Supreme Court in *Fischer*. *See also* ECF 121 at 40 (statement of defendant Lang to this Court on May 5, 2023: "I have partaken in hundreds of interviews, podcasts. I've developed two documentaries that have millions of views."). This Court should not credit Lang's claims that he cannot prepare for trial.

Lang's circumstances are not and have not been unusual or extraordinary. At times, inmates must be moved from general population, which occurred in this to prevent harm to Lang. He has not provided evidence that he is being treated differently from other detainees in a manner that is abnormal or punitive.[10] Lang's complaint about access to a charger was also without merit; like other inmates, he is not supposed to have one. He has failed to show extraordinary circumstances warranting the unusual remedy of temporary release.

III. The Letter From A Clinical Psychologist Creates No Basis For Release

Lang attempts to support his motion with a December 22, 2023 letter from a Dr. N.G. Berrill. The letter provides almost no information about Dr. Berrill. It states that he has read unspecified documents from the above captioned case, and that he interviewed Lang over the phone on November 14, 2023. ECF 125-1. The bulk of the six-page letter then reports statements provided by Lang and finally offers a "professional opinion" that "Mr. Lang is unable to effectively assist his attorney in the preparation of his own defense" and concludes that Lang can "most effectively" assist his attorney if he is released. ECF 125-1 at 5.

For many reasons, Dr. Berrill's letter should receive little or no weight. First, the letter

---

[10] In his supplement, ECF 126, Lang maintains that his transfer from general population resulted because he was physically attacked. This is not the prosecution's understanding, and Lang has not provided documentation for his claims or specific details of any physical attack. The prosecution has not located public statements from Lang contending that he has been physically attacked since his return to DCJ in May, 2023.

provides almost no information about Dr. Berrill himself.  It says nothing about his background, education, training, or credentials.  It does not indicate the length of his practice, whether he has published, or whether he claims relevant expertise.  It provides no basis for this Court to credit or rely upon the statements in his letter, most of which functions as a conveyance for Lang's own self-serving statements.

Second, the letter provides no meaningful discussion of procedures for assessing Lang's ability to assist in his defense.  Although the letter indicates that Dr. Berrill has reviewed "the documents sent to the United States District Court for the District of Columbia, The United States of America versus Edward Jacob Lang, Defendant" the documents reviewed are not specified or listed; their relevance to questions of Lang's ability and the thoroughness of any review remains unknown.

Third, the letter is based on what appears to be a single telephone interview that occurred on November 14, 2023.  Whether the timing of the interview allows insight into Lang's current abilities is not addressed.  In light of Lang's recent activity that includes his *pro se* filing of a multi-defendant, multi-plaintiff civil suit with the potential to become a class action; his role in creating a film that shows his "entire day at the Capitol" on January 6, 2021 (*see* Figure 3B, above); his broadcasted ability to discuss current filings in his case; his admitted ability to meet and speak with counsel, and his broadcasted ability to discuss the details of polling data to support a future motion, the letter may fairly be considered out of date.

Fourth, the letter provides no further discussion of assessment procedures or methodology and does not explain if a single telephone interview is adequate to evaluate a defendant's ability to assist counsel and whether such an evaluation meets generally accepted professional standards for this purpose.

Fifth, the letter contains no description of Lang's education or work history. It does not address whether he has any history of mental or physical health affecting his ability to assist counsel. The letter offers no objective measure of Lang's intelligence or intellectual capability.

Sixth, the content of the letter does not address whether Lang understands the nature and consequences of the proceedings against him or the role of his defense counsel, the prosecuting attorneys, or this Court. *Compare Dusky v. United States*, 362 U.S. 402 (1960) (to determine whether a defendant is competent to stand trial, the Court must evaluate whether he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as factual understanding of the proceedings against him"); *Indiana v. Edwards*, 554 U.S. 164, 172 (2008) (describing the standard in *Dusky* as "a minimal constitutional requirement" in comparison to a somewhat higher standard measuring competence for another legal purpose); *United States v. Battle,* 613 F.3d 258, 263 (D.C. Cir. 2010) (the relevant legal question is not whether the defendant will assist properly in his defense but whether he is able to) (cleaned up). Lang admits to meeting and speaking with counsel. His public statements, at a minimum, reflect an understanding of the charges against him and the facts of his case. Lang has submitted a letter from a forensic psychologist that borrows language from the standard for mental competency without appearing to apply or meet that standard.

Seventh, the letter does not address the existence of tests that can be administered to determine competency. *Compare Battle*, 613 F.3d at 263 (describing specific tests administered to the defendant). Although such tests exist, since they are not mentioned in the letter, it appears they were not utilized in this case. The letter does not explain what if any consideration was given to the use of available tests.

Eighth, apart from an unspecified level of review of unidentified court documents, the letter

appears to rely almost exclusively on statements from Lang; however, the letter does not account for any possibility of malingering and it does not describe any effort to corroborate Lang's statements through other sources. The letter offers no attempt to address Lang's evident self-interest or his reliability. This Court need not credit Lang's statements especially when compared with other recorded evidence demonstrating his competence. *See also United States v Hines*, 694 F.3d 112, 122 (D.C. Cir. 2012) (considering a defendant's conduct leading up to trial as a factor demonstrating his awareness of the nature and significance of the proceedings against him); *Battle*, 613 F.3d at 263 (evidence of a defendant's demeanor is relevant in determining competency and court was justified in relying on its own observations of the defendant when crediting one doctor's view over another's).

Ninth, Dr. Berrill's letter concludes that Lang cannot effectively assist his counsel without addressing what comprises effective assistance. Lang may or may not be able to access videos in the manner he prefers, but neither the letter nor the motion itself explain how this prevents Lang from assisting in his own defense. *Compare United States v. Celis*, 608 F.3d 818, 840-41 (D.C. Cir. 2010) (defendant who did not understand English was not deprived of ability to assist in defense because discovery was not translated into defendant's native tongue).[11] If no requirement

---

[11]  *See also Carillo v. United States,* 995 F.Supp. 587, 591 (D.V.I. 1998) ("[T]here is no constitutional duty to share discovery documents with petitioner. Petitioner cites no case law for this proposition, and this court finds none"); *United States v. Ingram*, No. 3:19CR113-MCR, 2021 WL 4134828, at *3 (N.D. Fla. Sept. 10, 2021) (professional obligations of defense counsel did not mandate that defendant see every item of available discovery material and court was not aware of any such constitutional requirement); *United States v. Thompson*, No. 2:10-CR-200-DBH, 2013 WL 1809659, at *6–7 (D. Me. Apr. 29, 2013) (rejecting argument that defendant needed to personally review discovery in order to enter valid plea because Courts appoint lawyers for defendants in criminal cases so that the lawyers can do the legwork in preparing for trial and give sound advice about whether a defendant should go to trial or plead guilty), *aff'd*, 851 F.3d 129 (1st Cir. 2017); *United States v. Stork*, No. 3:10-CR-132 JD, 2014 WL 1766955, at *7 (N.D. Ind. May 1, 2014) (a defendant represented by counsel does not have a right under either the Constitution or the Federal Rules of Criminal Procedure to be provided with discovery personally) (collecting cases); *United States v. Neff*, No. 3:11-CR-0152-L, 2013 WL 30650, at *6 (N.D. Tex. Jan. 3, 2013)

exists for Lang to have full access to all discovery, his alleged inability to review discovery in the manner or under the conditions her prefers does not support an argument that he cannot assist counsel.

Finally, Dr. Berrill's letter fails to address the inquiry relevant for relief pursuant to Section 3142(i), which is the necessity for release. The letter states that Lang can "most effectively" assist his attorney if he is released but does not conclude that there are no other alternatives to release. *See Krol*, 642 F. Supp.3d at 45 ("Until the Government reports that the jail cannot make … accommodations, and defense counsel has demonstrated with sufficient specificity that other means of providing Krol access to relevant evidence are wholly inadequate or that any such problems cannot be remedied with a transfer of facility, the Court will decline to release Krol under § 3142(i)"). Dr. Berrill's letter did not rule out available alternatives within DCJ, and in fact, the level of Lang's restricted housing had already been reduced since his motion and supplement were filed. Similarly, the letter does not refute that a transfer to another institution with different conditions will remedy Lang's apparently situational claim that he is unable to assist in his own defense. Lang has now been removed from DCJ. Thus, even if this Court were to credit Dr. Berrill's letter, which the United States urges the Court not to do, the letter would not meet Lang's burden to show the necessity for release.[12]

---

("Contrary to what Defendant contends, he does not have a constitutional right to a personal laptop to help his attorney prepare his defense. Defendant is represented by counsel, who does not have any limitations on computer access or usage"), *aff'd*, 544 F. App'x 274 (5th Cir. 2013); *cf. United States v. Faulkner*, No. 3:09-CR-249-D(02), 2011 WL 3962513, at *4 (N.D. Tex. Sept. 8, 2011) (denying motion to continue trial because detained but represented defendant had not completed review of digital discovery).

[12] On January 21, 2024, opposing counsel responded to an inquiry from the prosecution that the defense is not seeking to invoke the provisions of 18 U.S.C. § 4241. That statute addresses "mental competency" and applies when a court has "reasonable cause" to believe that a defendant may "presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). Dr. Berrill's letter does not claim that

IV.    The Length Of Lang's Detention Does Not Warrant Release

Lang returns to arguments seeking release based on the length of his detention.  ECF 125 at 1 (noting his trial date), 2 (claiming the length of his detention violates due process), 7 ("Lang's case encompasses a substantial length of confinement thus far, and it will take some time before trial commences"), 12 ("Lang has been held for 36 months in pretrial confinement … his trial is scheduled months from now.), 12-13 (questioning the viability of the currently scheduled trial date).

The United States previously addressed an earlier challenge from Lang based on the length of his detention.  ECF 92 at 12, 23-29.  This Court rejected Lang's challenge.  ECF 97 at 12-14. For the reasons stated in its earlier response, ECF 92, and in this Court's order, ECF 97, Lang's challenge premised on the length of his detention should be rejected again.

Lang acknowledges that continuances of his trial date occurred at his request and that he has consented to tolling the deadlines of the Speedy Trial Act, 18 U.S.C. § 3161 et. seq. ECF 125 at  12 n. 6.  Lang cannot dispute that he affirmatively sought to continue an October, 2023 trial until a date likely to fall after resolution of the *Fischer* appeal.  This Court took pains to ensure Lang was willing to postpone his trial notwithstanding his continued detention, questioning defense counsel and engaging in a colloquy with Lang on that point.  Lang provides no authority supporting release when the continued detention he objects to has been caused by Lang's own knowing, voluntary and informed request for the delay extending the period of his detention. Lang's current objection to the length of his detention has even less merit than the request this Court previously denied, and it should be rejected again here.

V.    The Pending Appeal In *Fischer* Provides No Basis For Lang's Release

---

Lang suffers from a mental disease or defect.

Lang now tries to fashion grounds for release through comparison with three other cases concerning convicted Capitol siege defendants, referencing *United States v. Bledsoe*, No. CR 21-204 (BAH), 2024 WL 341159 (D.D.C. Jan. 30, 2024); *United States v. Adams*, No. 21-CR-354 (APM), 2024 WL 111802 (D.D.C. Jan. 10, 2024); *United States v. Sheppard*, No. CR 21-203 (JDB), 2024 WL 127016 (D.D.C. Jan. 11, 2024).[13]  Each of these defendants was convicted of a single felony, 18 U.S.C. § 1512(c)(2), and misdemeanors.  Each sought release pending appeal pursuant to 18 U.S.C. § 3143(b)(1) from service of their respective sentences because of the Supreme Court's possible reversal of the basis for their convictions under Section 1512(c)(2).  Each defendant received some measure of relief: Bledsoe and Adams were ordered released, and Sheppard is to be released once he serves six months of his sentence.

Unlike Lang, Bledsoe, Adams, and Sheppard were each released pending trial; none were determined to be a flight risk or a danger; and each was allowed to report to jail to start serving his sentence.  In contrast, a determination has been made that no condition or combination of conditions can reasonably assure the safety of any other person or the community if Lang is released.  The D.C. Circuit affirmed that determination, and the time allowed for an appeal of that ruling has long passed.  Had a determination of danger been made for either Bledsoe, Adams or Sheppard, release pending appeal would have been foreclosed, *see* 18 U.S.C. 3143(b)(1)(A), just as the finding of dangerousness forecloses Lang's release.  Because none of the cases Lang cites involved defendants found to be dangerous or risks of flight, they are not valid comparators for

---

[13] Lang also cites *United States v. Clark,* No. 21-cr-538 (DLF) as an example where service of a defendant's sentence was stayed because of the pending appeal in *Fischer*.  ECF 125 at 18.  In *Clark*, Judge Friedrich granted a stay of the date for the defendant to report to jail. *Id.* (December 21, 2023 Minute Order).  Clark nevertheless reported and began serving his sentence.  After several weeks, Clark moved for release from custody for the same reason; his application was denied.  *Id.* (February 13, 2024 Minute Order finding Clark did not meet the standard for release stated in 18 U.S.C. § 3143(b)(1)(A).

this case.

Additionally, Bledsoe, Adams, and Sheppard were convicted of Section 1512(c)(2) and misdemeanors; thus, their cases presented the possibility that if the obstruction convictions were overturned, the misdemeanor sentences would have been insufficiently long to keep them in custody until resolution of the *Fischer* appeal.  In contrast, Lang confronts multiple felony charges in addition to the single charge under Section 1512(c)(2).  He has made no attempt to argue that if convicted for these other offenses his sentence will be insufficient to equal the duration of his pretrial detention.  Because Lang faces trial on multiple felonies that carry significant sentences, the Bledsoe, Adams, and Sheppard cases have no application here and provide no justification for his release, temporary or otherwise.

CONCLUSION

None of Lang's arguments justify his release.  Even if reconsideration of Lang's detention were an option, Lang continues to demonstrate that he should not be a candidate for release on conditions.  He knowingly violates the rules and regulations of the Marshals Service and the institutions where he is housed.  His claims that he cannot assist in his own defense continue to be contradicted by other evidence of Lang's own conduct.  His motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:    s/Karen Rochlin
Karen Rochlin
Assistant U.S. Attorney Detailee
DC Bar No. 394447
99 N.E. 4th Street
Miami, Florida 33132
(786) 972-9045

Karen.Rochlin@usdoj.gov

Craig Estes
Assistant U.S. Attorney Detailee
John Joseph Moakley Federal Courthouse
1 Courthouse Way
Boston, MA 02210
(617) 748-3100
Email: craig.estes@usdoj.gov