United States District Court
For the District of Columbia

UNITED STATES OF AMERICA,

-v-

EDWARD JACOB LANG,

        *Defendant*.

Docket No. 21-CR-00053 (CJN)

**SUPPLEMENTAL FILING TO DEFENDANT LANG'S
BOND APPLICATION AND RESPONSE TO GOVERNMENT'S
ADDITIONAL SUPPLEMENTAL MEMORANDUM**

    Defendant Lang, by his undersigned counsel, hereby respectfully files the instant application in conjunction with his pending bond application, and request for immediate temporary release (hereafter referred to as the "instant bond application'). (*See* ECF Doc. 125).

## I. BACKGROUND

    1. Additionally, on June 7, 2024 – after oral hearings were conducted before this Court – the Government filed yet another supplemental in opposition to Lang's Motion to Renew and Reconsider for Immediate Temporary Release. (*See* ECF Doc. 133).

*USA v Lang*, **Case #: 21-cr-00053**
**Update: Lang is Back in Prolonged Solitary Confinement, on a Hungry Strike,
While Brooklyn MDC Guards Continuing to Threaten Lang**

2.      Defense counsel cannot stress enough that on or about February 2, 2024, the instant bond application was filed. (*See* ECF Doc. 125). In such application, the defense stressed and emphasized the vicious circle that has become the evolutionary version of Lang being moved from jail-to-jail, constantly being thrown in the Hole, and threatened daily while at MDC Brooklyn.

3.      Lang cannot possibly assist or play a hybrid representation role under these circumstances and during such time because *inter alia* the undergoing diesel therapy, the jails having all of Lang's legal documents, including his court ordered computer and hard drives being taken from him during each move. Simply put, all alternatives have been attempted and have utterly failed.

4.      This is precisely where the Government's recent filing falls short, and yet again becomes a smear campaign to trash Mr. Lang right before this Court is set to render decisions on the instant bond application and the *hybrid representation* application.

5.      Going back to the timeline, after this Court set the instant matter down for a hearing, in approximately March of 2024, Brooklyn MDC was then requested and demanded to produce an employee, who can testify and address the Court about

Page **2** of **17**

*USA v Lang*, **Case #: 21-cr-00053**
**Update: Lang is Back in Prolonged Solitary Confinement, on a Hungry Strike,
While Brooklyn MDC Guards Continuing to Threaten Lang**

its procedures at Brooklyn MDC with regards to inmates reviewing discovery and preparing for their own defenses.

6. Brooklyn MDC did not produce such employee and the hearing scheduled was adjourned. (*See* Minute Entry dated 3/22/2024 highlighting "Set/Reset Hearings as to EDWARD JACOB LANG: Status Conference set for 3/28/2024 at 2:30 PM. . .".).

7. Between February 8, 2024 and March 27, 2024, the Defense continued to update the Court of the changes and updates taking place with Mr. Lang while awaiting such bond hearing. (*See* ECF Doc. 130).

8. Upon recollection, and after a series of following up, it took Brooklyn MDC more than a month to respond to this Court. (*See* Minute Entry dated 5/20/2024 highlighting "Set/Reset Hearings as to EDWARD JACOB LANG: Status Conference set for 5/23/2024 at 9:30 AM. . .".).

9. Then on May 22, 2024, the hearing was canceled. (*See* Minute Entry dated 5/22/2024 highlighting "Terminate Deadlines and Hearings as to EDWARD JACOB LANG: Status Conference set for 5/23/2024 at 9:30 am is TERMINATED due to jail unavailability, and will be rescheduled.".).

Page **3** of **17**

*USA v Lang*, **Case #: 21-cr-00053**
**Update: Lang is Back in Prolonged Solitary Confinement, on a Hungry Strike,
While Brooklyn MDC Guards Continuing to Threaten Lang**

10. The next morning, on May 23, 2024 the hearing went forward at the last minute anyway. (*See* Minute Entry dated 5/23/2024 highlighting "MINUTE Entry for proceedings held . . . Oral Motion for Release by EDWARD JACOB LANG; Taken Under Advisement. . .".).

11. Then on June 7, 2024, the Government still needs to get in the last words. (*See* ECF Doc. 133).

12. This gossip and government storyline is full of half-truths, all of which have all been heard before and will be broken down further below.

13. What is important is that the Court needs to know Mr. Lang's situation at the Brooklyn MDC jail, currently, and how such has, yet again drastically been altered within the last week.

14. First and foremost, Lang is back in solitary confinement, where he is undoubtably being held either without a single infraction, or for a minor trumped up infraction to keep Lang silent, continuing to be unable to communicate with his family and loved ones, from preparing and assisting in his own defense, and from exercising his constitutional fundamental rights.[1]

---

[1] This does not encompass conversations with his attorneys, which are heavily monitored, and thus non-privileged.

Page **4** of **17**

*USA v Lang*, Case #: 21-cr-00053
**Update: Lang is Back in Prolonged Solitary Confinement, on a Hungry Strike,
While Brooklyn MDC Guards Continuing to Threaten Lang**

15.   As will be explained, the jail infraction system, especially at the Brooklyn MDC jail is broken, and if the jail wanted to charge and find an inmate guilty of possessing a ham sandwich – they easily can do so within minutes, not even hours. Also, all communication with lawyers there that needs to be conducted for Lang's defense is non-privileged because its so heavily monitored – there is no level playing field.

## II.  LANG'S CURRENT SITUATION AND RECENT CHANGES

16.   Lang has been under these conditions for at least a week now, and all that I can report is that Lang took issue with his most recent, untrue infraction, that he has been on a hunger strike, and has not received nourishment in seven days.

17.   Brooklyn MDC 's response is to threaten Lang that his water will be shut off, so he will be unable to shower or have proper hygiene.

18.   Brooklyn MDC's next threat is to take a hose and stuff it down his throat, so Lang can at least be forced to have water.

19.   All calls, and emails to Brooklyn MDC's legal department about Lang, and specifically regarding his well-being have gone unanswered.

20.   We are losing sight here that the purpose of the instant application is that pursuant to 18 U.S.C. § 3142(i), Lang should be ordered the immediate

Page **5** of **17**

*USA v Lang*, Case #: 21-cr-00053
**Update: Lang is Back in Prolonged Solitary Confinement, on a Hungry Strike,
While Brooklyn MDC Guards Continuing to Threaten Lang**

temporary release to prepare his defense. (*See* ECF Doc. 125 at p. 1). Now the conditions are dire to a point where Lang either needs to be released or, alternatively moved from Brooklyn MDC jail.

### III. GOVERNMENT'S RECENT SUPPLEMENT AND FURTHER OPPOSITION TO INSTANT BOND APPLICATION REPEATS THE SAME CLAIMS.
(Responding to Government's Argument Three)

21. The main purpose of the Government's supplement does not appear to make an entrance until towards the end of the filing – which essentially is that Lang "since the hearing [in May 2024] further demonstrate[s] his unsuitability for release. (*See* ECF Doc. 133 at p. 1; at p. 8-9).

22. More than half of the Government's new supplement goes on to state the same position its continued to address to this Court, "Lang has also not identified a specific software program that he wants to employ." (*See* ECF Doc. 133 at p. 5). However, the instant bond application filed back in February 2024, supported in the May 2024 hearing highlighted that of the thousands of hours of video to be reviewed and analyzed, Lang was not able to use his court ordered laptop while at the DC jail because officers took the charger. (*See* ECF Doc. 125 at p. 3).[2]

---

[2] *See* ECF Doc 125-1 (supporting Lang's instant bond application with Dr. Berrill's report, essentially explaining

Page **6** of **17**

*USA v Lang*, Case #: 21-cr-00053
**Update: Lang is Back in Prolonged Solitary Confinement, on a Hungry Strike,
While Brooklyn MDC Guards Continuing to Threaten Lang**

23. Nonetheless, the government continues to take this position that unless Lang can "identify an editing program that will function . . . without access to the internet, this Court should decline to order provision of a laptop for his use." (*See* ECF Doc. 133 at p. 5).

24. While the defense completely understands the internet aspect, we also have explained solutions and addressed prior issues. First, Lang already was ordered a laptop, where either his charger or laptop were both taken from Lang, either by other inmates or staff. This plan was tried and utterly failed. Further, we compared the *Nicolas* case, where the Defendant was granted independent access to Relativity while he was incarcerated, pretrial. (*See* ECF Doc. 125 at p. 15) (*citing USA v. Nichols*, 1:21-CR-00117-TFH at ECF Doc. 150).

25. Because the jail could not comply or grant defendant Nicolas access to Relativity or Evidence.com, the Court fashioned an order, where Defendant on bond designated an independent third party, who could monitor Defendant's ability and access to Relativity. (*See* ECF Doc. 125 at p. 15) (*citing USA v. Nichols*, 1:21-CR-00117-TFH at ECF Doc. 150).

---

how an environment – without a charger for a court ordered laptop, in inclement weather (at times lower than 50 degrees), without a place to properly sit, and wearing four layers of clothing to just keep warm – is not an environment conducive to higher degree learning. (*See* ECF Doc 125-1).

Page **7** of **17**

*USA v Lang*, Case #: 21-cr-00053
**Update: Lang is Back in Prolonged Solitary Confinement, on a Hungry Strike,
While Brooklyn MDC Guards Continuing to Threaten Lang**

26. Similarly, here, Lang has presented solutions that can be effective and the most productive manner in being released under 18 U.S.C. § 3142(i). Lang has identified specific software programs and strengthens of his that are vital in the video analysis and presentation of his defense in this case.

27. Going back to Lang's social media posts, which is respectfully submitted the genius of this Supplemental filing, the government showcased a May 27, 2024 photograph that someone put on one of Lang's social media accounts, specifically his Twitter. (*See* ECF Doc. 133 at p. 8-9). This photograph captures[3] the following message, "since the hearing on May 23 at which Lang sought to convince the Court that he would not pose a threat to the community if released, Lang has posted the following messages on social media: "[the rest of the message reads as follows]"

> On Memorial Day, we remember those who gave the FULL MEASURE for American Liberty
> . . . .
>
> Today I would like to commemorate those who were forced to take human life to preserve this Constitutional Republic
> . . . .
>
> Both of your sacrifices are not forgotten [American Flag emoji]

---

[3] *See* ECF Doc. 133 at p 4 (quoting Lang as stating ". . . there's pretty much, um, instantaneous ability to email back and forth here, where I'm at, so and I can answer all my messages, I'm on the computer most of the day.").

Page **8** of **17**

*USA v Lang*, Case #: 21-cr-00053
Update: Lang is Back in Prolonged Solitary Confinement, on a Hungry Strike,
While Brooklyn MDC Guards Continuing to Threaten Lang

> . . . .
>
> Your ancestors didn't die for your freedoms. They killed for them. Remember that.

(*See* ECF Doc 133 at p. 9 displaying a photo someone put on Lang's social media account).

28. Assuming one does not like or agree with the statements in this photo, or its relevance to Memorial Day, I still cannot find how this photo in any way, shape, or form misled this Court at its most recent hearing. Additionally, Memorial Day was designed to cherish and remember those who in American history went to war for this country and actually died in the line-of-duty.

29. With the purpose of what Memorial Day stands for, especially for some whose family were lost during war, this photo neither advocates for violence nor establishes that Lang will "pose a threat to the community if released". (*See* ECF Doc. 133 at p. 8-9).

30. Essentially, the Government's real point is that Lang is seeking to be part of a Militia, called NAPALM, which from what I can tell is a coalition or group of people who seek to protest, in a peaceful manner, without violence, and exercise their constitutional rights. Since this has been brought to my attention, I have not seen anything on social media advocating violence. The language is too

Page **9** of **17**

*USA v Lang*, **Case #: 21-cr-00053**
**Update: Lang is Back in Prolonged Solitary Confinement, on a Hungry Strike,
While Brooklyn MDC Guards Continuing to Threaten Lang**

ambiguous for the Government to even draw such a conclusion. Rather, the focal point is on the use of the word of belief of a "militia".

31.     The government then wants the Court to review "Image 2", which is a June 2, 2024 Twitter Post that includes an advertisement for North Carolina State, or also known as NAPALM. (*See* ECF Doc. 133 at p. 10). This posts states, in substance, "after being vetted . . . you can message back and forth with other members & the leadership! . . . God Bless you & keep yours hearts BOLD AS A LION. . .". (*See* ECF Doc. 133 at p. 10). Besides the words "CONSTITUTIONAL MILITIA", there is no advocating for violence, and seems rather more of a brotherhood, even if one does not agree with the name or its members political beliefs.

32.     The government then wants the Court to review "Image 3", which is a June 3, 2024 Twitter Post that includes an announcement of the formation of the North American Patriot and Liberty Militia, which is what acronym NAPALM must mean. (*See* ECF Doc. 133 at p. 11).  Again, these tweets are not advocating for violence, the language is ambiguous and speaks of city and state chapters, and a joined brotherhood amongst those apparently sharing similar political beliefs.  Just because the "M" stands for "militia" does *not* mean the group, if it truly exists stands for advocating for violence.

Page **10** of **17**

*USA v Lang*, Case #: 21-cr-00053
**Update: Lang is Back in Prolonged Solitary Confinement, on a Hungry Strike,
While Brooklyn MDC Guards Continuing to Threaten Lang**

33. The government then wants the Court to review "Image 4", which is a June 4, 2024 Twitter Post that includes an advertisement for NAPALMUSA.com; so apparently NAPALM has created a website. (*See* ECF Doc. 133 at p. 12).

34. Lastly, "Image 5" is a June 5 Twitter Post, where Lang's social media refers to himself as the Chairman of the NAPALM. (*See* ECF Doc. 133 at p. 13). A cursory review of these posts leads to the belief that NAPALM merely quotes the Second Amendment of the US Constitution. Again, right, wrong, or indifferent, the language in the First and Second Amendments affords others to read these words written centuries ago literally, and belief that they are individuals of faith, and strict constitutionalists.

35. Again, this Supplement is nothing more than a smear campaign to go after Lang's credibility, but in doing so, the government falls short of successfully being able to do so. This is a character assassination attempt.

### IV. GOVERNMENT'S RECENT SUPPLEMENT AND JAIL INFRACTIONS
(Responding to Government's Argument Two)

36. Similar to over emphasizing the word "militia", the government states that "Lang's supplemental motion likewise omits any reference to his cellmate while in SHU, a fact inconsistent with his claims of being held in solitary confinement." (*See* ECF Doc. 133 at p. 4).

Page **11** of **17**

*USA v Lang*, Case #: 21-cr-00053
**Update: Lang is Back in Prolonged Solitary Confinement, on a Hungry Strike,
While Brooklyn MDC Guards Continuing to Threaten Lang**

37.   Regarding jail infractions, what is not spoken about, however, is that no inmates prevails on these cases because the system is designed for to lose or fail based on the infraction ticket being "rubber stamped". The Government's supplement talks about mere allegations, but it does not actively explain how such allegations are so egregious as to pursue them. (*See* ECF Doc. 133-1, 133-2, and 133-3). Each of the government's Exhibits 1, 2, and 3 do not substantiate anything, and call for outlandish speculation.

38.   The Court instead maintains the position that Lang's claims "to have been unjustly placed in "solitary confinement" are false . . . [that] Lang was housed in SHU as a result of his repeated and documented disciplinary infractions . . . [and most importantly the] SHU was not "solitary". (*See* ECF Doc. 133 at p. 8).

39.   It is respectfully submitted that the government's argument that Lang's "omission of certain facts to the Court undermines any argument that Lang is an appropriate candidate for release." (*See* ECF Doc. 133 at p. 8)(*citing* 18 USC 3142(g)(3)(A)).

40.   For Lang to either not be charged with certain behavior or for such behavior to be uncharged means that the essence of these disciplinary tickets are either frivolous, or never truly existed in the first place.

Page **12** of **17**

*USA v Lang*, Case #: 21-cr-00053
**Update: Lang is Back in Prolonged Solitary Confinement, on a Hungry Strike,
While Brooklyn MDC Guards Continuing to Threaten Lang**

41.     The government's first exhibit regarding jail infractions is entitled Inmate Discipline Data, Chronological Disciplinary Record, and thereby lists three infraction numbers, 297, 218, and 397, respectfully. (*See* ECF Doc. 133-1). The first incident date is 4-10-2024, and the hearing date was on 5-14-2024. There are two infractions of "phone abuse" and one for the destruction of property over $100.00 (One Hundred Dollars).

42.     For example, the charge 297 is labeled as "phone abuse-disrupt monitoring". The only notes are that Lang stated "I didn't engage in criminal incitement", and then guilty on weight of evidence. Then the section "DIS GCT" lists 27 days. The other type of infraction, regarding property, has an incident date of 4-12-2024, and the hearing date was on 5-02-2024. The charge 218 is labeled as a "sanctioned incident". The only notes are that Lang stated "I didn't destroy property", and then guilty on weight of evidence. Then the section "DIS GCT" lists 27 days. There is an additional section that states "LAW" and that "sanction imposed . . . until mon rest paid in full." The "MON REST" section then states "119.00.00 dollars".

43.     If Lang can be charged and a sentence imposed on these two infractions, then there are at least eight floors, with four sections on each floor of other inmates who can be punished the same way on any date or time at Brooklyn

Page 13 of 17

*USA v Lang*, Case #: 21-cr-00053
Update: Lang is Back in Prolonged Solitary Confinement, on a Hungry Strike,
While Brooklyn MDC Guards Continuing to Threaten Lang

MDC. For the phone infractions, the Government alleges that Lang "was cited twice for committing prohibited acts, namely, the 'use of the telephone for an illegal purpose or to commit or further a Greatest category prohibited act." (*See* ECF Doc. 133 at p. 6). Further, the government claims that Lang "provide[d] a voluminous stream of instructions related to his various businesses" to both his girlfriend, Rachel Myers, and his believed to be employee, Hoang Quan. (*See* ECF Doc 133 at p. 6).

44.   However, nothing that Lang said in his calls constitutes illicit criminal conduct outside of the Brooklyn MDC walls and procedures. It seems as if even Lang himself thought his infractions were for something different and remarked that he "didn't engage in criminal incitement". (*See* ECF Doc 133 at p.6). As a result of these sanctions, Lang was disallowed 27 days of Good Conduct Time (GCT) and lost commissary and email privileges for 120 days. (*See* ECF Doc 133-2). By sanctioning Lang, Brooklyn MDC has continued its efforts to chill Lang's speech and exercise his First Amendment rights.

45.   For the destroyed property infraction, the Government alleges that Lang destroyed property within his cell, amounting to over 100 dollars. However, there is no evidence that expressly points to Lang being responsible for the damages. On the contrary, Lang maintains that he was "given destroyed property".

Page **14** of **17**

*USA v Lang*, Case #: 21-cr-00053
**Update: Lang is Back in Prolonged Solitary Confinement, on a Hungry Strike,
While Brooklyn MDC Guards Continuing to Threaten Lang**

(*See* ECF Doc 133-3). At the time of the incident report, Lang remarked that he "didn't destroy property". (*See* ECF Doc 133-1). As a result of this sanction, Lang was disallowed 27 days of GCT and lost commissary privileges for five years, or until the monetary rest of $119.00 is paid in full. (*See* ECF Doc 133-1).

46.   Similar to Lang's posts on social media, the government wants this Court to believe these jail infractions justify prolonged solitary confinement, and that he remains a threat to the public because his social media has a picture which states "Your Ancestors didn't die for your freedoms. They killed for them. Remember that." (*See* ECF Doc. 133 at p. 8-9). Again, this language is what the government is using to claim that Lang will use violence in the future. (*See* ECF Doc. 133 at p. 13).

47.   Overall, Brooklyn MDC will stop at nothing to silence Lang's First Amendment rights; as well as placing a chilling effect on Lang's Second Amendment which does not "prevent the prohibition of private paramilitary organizations." *District of Columbia v. Heller*, 554 U.S. 570, 261 (2008) (citing *Presser v. Illinois*, 116 U.S. 252 (1886)).

Page **15** of **17**

*USA v Lang*, Case #: 21-cr-00053
**Update: Lang is Back in Prolonged Solitary Confinement, on a Hungry Strike,
While Brooklyn MDC Guards Continuing to Threaten Lang**

48.     Under all of these circumstances it is now more appropriate than ever that Lang be temporarily released on pretrial bond, or immediately transferred from Brooklyn MDC jail.

## V. CONCLUSION

For the aforementioned reasons, this Court should order Lang's immediate release to the custody of his father, Ned Lang, or his mother. For all of these reasons, and any that may become apparent at a hearing on this matter, Mr. Lang respectfully submits that the Government has failed to meet its burden by clear and convincing evidence that he presents a risk of danger to society, in light of all the recent additional evidence that submitted herein.

𝔚𝔥𝔢𝔯𝔢𝔣𝔬𝔯𝔢, he respectfully requests that this Honorable Court release him on high intensity supervision and conditions the Court deems necessary. Alternatively, Lang needs to immediately be moved from Brooklyn MDC jail.

Dated: June 25, 2024                                   Respectfully Submitted,

                                                                    */s/ Steven Alan Metcalf II*
                                                                    _____
                                                                    STEVEN A. METCALF II, ESQ.
                                                                    Metcalf & Metcalf, P.C.
                                                                    99 Park Avenue, Suite 810
                                                                    New York, NY 10016
                                                                    (*Office*) 646.253.0514
                                                                    (*Fax*) 646.219.2012

Page **16** of **17**

*USA v Lang*, Case #: 21-cr-00053
**Update: Lang is Back in Prolonged Solitary Confinement, on a Hungry Strike,
While Brooklyn MDC Guards Continuing to Threaten Lang**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been served upon counsel for all parties to this proceeding as identified below through the court's electronic filing system as follows:

/s/
_____
STEVEN A. METCALF II
*Attorney for Edward Jacob Lang*

Dated: 6/26/2024

Page **17** of **17**

*USA v Lang*, Case #: 21-cr-00053
**Update: Lang is Back in Prolonged Solitary Confinement, on a Hungry Strike,
While Brooklyn MDC Guards Continuing to Threaten Lang**