UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

EDWARD JACOB LANG,

        *Defendant.*

Criminal Action No. 1:21-cr-00053 (CJN)

**ORDER**

    Defendant Edward Jacob Lang has been charged with numerous offenses for his violent conduct during the Capitol Riot on January 6, 2021. He is presently detained pending trial at the Metropolitan Detention Center, Brooklyn. Although the Court has twice rejected his previous requests to be released from custody, *see* September 20, 2021 Minute Entry; ECF No. 97; *see also United States v. Lang*, No. 21-3066, 2022 WL 127437 (D.C. Cir. Jan. 12, 2022) (per curiam) (affirming the Court's initial denial of pretrial release), he now moves for his "immediate temporary release" under 18 U.S.C. § 3142(i) so that he may prepare for his September 2024 trial, *see* ECF No. 125 at 1–2. The Court will deny the motion.

    Under 18 U.S.C. § 3142(i), the Court may "permit the temporary release" of an inmate to "the custody of a United States marshal or another appropriate person" if the Court "determines such release to be necessary [1] for preparation of the person's defense or [2] for another compelling reason." A defendant bears the burden to show his entitlement to such relief. *See United States v. Riggins*, 456 F. Supp. 3d 138, 149 (D.D.C. 2020).

    Lang has not met his burden here. *First*, Lang has not shown that his temporary release is "necessary for preparation of [his] defense." 18 U.S.C. § 3142(i). Although Lang has retained two attorneys to represent him, he argues that his release is necessary so that he can personally

1

review the discovery in his case and confer with his attorneys concerning trial strategy. *See* ECF No. 125 at 7–10. But Lang can already do both of those things from the facility where he is presently located. As discussed during the hearing the Court held on the motion, inmates at MDC Brooklyn have access to computers for reviewing discovery and computers for sending emails and conducting legal research. Inmates may also confer with their attorneys during in-person visits. And the government represents that all this is true even for inmates like Lang who are kept in the jail's Special Housing Unit. Although preparing for his trial using these resources might be less convenient for Lang than if he were released, mere inconvenience does not demonstrate that release is "*necessary*" for Lang to prepare for his trial. 18 U.S.C. § 3142(i) (emphasis added); *see, e.g.*, *United States v. Krol*, 642 F. Supp.3d 28, 45 (D.D.C. 2022). Moreover, the jail permits attorneys to provide their clients with laptops for their own personal use in reviewing discovery (at least when ordered to do so by a court), *see* ECF No. 133 at 2–3, and can transfer inmates to a housing unit known as the "discovery unit," which has additional computers for inmates with greater need to review discovery. Lang has not asked for the Court's assistance in obtaining either of those options, so he cannot show that the extreme remedy of release is truly "*necessary*" for him to prepare for trial. 18 U.S.C. § 3142(i) (emphasis added).

Lang's counterarguments do not change the situation. Most importantly, Lang insists that he cannot adequately review discovery or communicate with his attorneys while he is housed in the SHU, which he compares to solitary confinement. *See, e.g.*, ECF No. 132 at 1–2; *but see* ECF No. 133 at 8 (noting that Lang has a cellmate in the SHU). But as the Court has already explained, Lang has access to computers and his attorneys while he is incarcerated in the SHU. In any event, it also appears that Lang bears responsibility for his placement in the SHU because he has

repeatedly flouted jail rules. *See* ECF No. 133 at 5–8. Thus, his release is not necessary because he has another option for leaving the SHU—namely, refraining from violating the jail's rules.

Lang also claims that the hard drives containing his discovery were taken from him by jail officials when he was transferred from the D.C. Jail to MDC Brooklyn. *See, e.g.*, ECF No. 126 at 1–2.[1] But Lang actually gave those hard drives to another inmate at the D.C. jail. ECF No. 129 at 5. They remain available for one of his attorneys to pick up from the D.C. Jail and return to him at MDC Brooklyn. ECF No. 129-1; *see also* ECF No. 130 at 3 (acknowledging this fact). Any challenges in reviewing discovery based on this allegation are thus due to the actions of Lang and his attorneys, not the fact of his pretrial detention. Lang also complains that his personal laptop (which was owned by the D.C. Jail) and his notes were taken away from him during the move. ECF No. 126 at 1–2. But Lang has access to computers at MDC Brooklyn, can request that his attorney be permitted to provide him with his own laptop, and can email his notes to his attorneys to make sure that he always has access to them.

Finally, at the hearing on this motion, Lang argued that he needed to be released in order to use software tools (such as collaboration software and video editing software) that are not available to him on the jail's computers. But Lang can adequately communicate with his attorneys through email and in-person visits. And to the extent he wants to prepare specific video clips for use at trial, he can identify those clips in jail and email instructions for preparing them to his attorneys. Thus, any inconvenience he faces here does not provide a basis for his release.

*Second*, Lang has not shown that there is "another compelling reason" for permitting his release. 18 U.S.C. § 3142(i). Comparing himself to Nelson Mandela, Lang appears to maintain

---

[1] Although Lang initially claimed that his hard drives had been destroyed, ECF No. 126 at 1–2, he withdrew that allegation after the government corrected the record, *see* ECF No 130 at 3.

3

that the restrictive conditions of confinement in the SHU merit his release. ECF No. 132 at 2–4. This argument fails because, as noted above, Lang bears responsibility for his placement in the SHU.

Lang also insists that he does not pose a danger to the community. *See, e.g.*, ECF No. 125 at 11. But as the Court of Appeals has explained,

> [t]he evidence proffered by the government shows that, over the course of two and a half hours on January 6, 2021, [Lang] repeatedly pushed, punched, and kicked at police officers defending the Lower West Terrace entrance to the Capitol building. He also slammed a door against one officer's head and struck other officers first with a stolen riot shield and later with a metal baseball bat.

*Lang*, 2022 WL 127437, at *1. That last attack was captured on camera:



ECF No. 31 at 17 (Lang is identified with the red arrow).[2] Lang then "boasted about his conduct, advocated taking up arms against the government, and attempted to organize militias for future acts of violence" before he was brought into custody. *Lang*, 2022 WL 127437, at *1; *see also* ECF No. 133 at 8–14 (noting that Lang has been working in recent months to organize an armed militia).

---

[2] In light of this objective evidence, it is unclear how Lang's attorneys are willing to tell the Court that Lang was unarmed during the Capitol Riot. ECF No. 125 at 9 ("On January 6th [sic], Lang . . . did not possess any weapons . . . ."); *id.* at 14 ("Lang was unarmed on January 6th [sic].").

4

Coupled with his continued refusal to adhere to the jail's rules, Lang's conduct on January 6 leaves the Court no basis to conclude that he poses anything but a continuing danger to the public.

Finally, Lang argues that he should be released because his trial has been delayed pending the Supreme Court's decision in *Fischer v. United States*. ECF No. 125 at 16–20. *But Lang himself asked for the trial to be delayed pending that decision*, and Lang is charged with *seven* counts of assaulting police officers that are not impacted by the decision and that justify his continued detention.

*Third*, as the Court held in connection with Lang's second request for pretrial release, "Lang has not shown the degree of immediacy that could make temporary release appropriate." ECF No. 97 at 10. Many months remain before trial. Accordingly, release is not appropriate at this time. *Compare United States v. Leake*, No. 19-cr-194, 2020 WL 1905150, at *4 (D.D.C. Apr. 17, 2020) (stating that temporary release could be warranted, for instance, if a "merits hearing is scheduled for the following week" (quotation omitted)), *with United States v. Otunyo*, No. 18-cr-251, 2020 WL 2065041, at *10 (D.D.C. Apr. 28, 2020) (concluding that temporary release was not necessary over five months in advance of trial).

\*   \*   \*

Accordingly, it is hereby

**ORDERED** that Lang's Motion for Immediate Temporary Release, ECF No. 125, is **DENIED**.

DATE: July 8, 2024

CARL J. NICHOLS
United States District Judge