UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>  v.<br><br>**EDWARD JACOB LANG,**<br><br>  Defendant. | Case No. 1:21-cr-00053-CJN |

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT LANG'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE

The United States of America, through undersigned counsel, respectfully responds to Defendant Lang's Supplemental Memorandum, ECF 143, that seeks to support a motion to transfer venue filed over a year ago. *See* ECF 101, 101-1. The Supplemental Memorandum and its supporting attachments, ECF 143-1 and 143-2, are untimely, but even if they were not, they lack any information that is relevant to whether venue is appropriately transferred to another district. Neither the supplement nor Lang's original motion support a change of venue for the reasons outlined in the government's earlier response, ECF 104 (incorporated by reference herein), and the Supplemental Memorandum provides no basis to conclude that a fair and impartial jury cannot be selected to try this case. The transfer Lang seeks in his Supplement should be denied.

As a result of his conduct during the January 6, 2021 breach of the United States Capitol, Lang is now charged with numerous assaults and related offenses in a Second Superseding Indictment, ECF 141. In an attempt to convince this Court that that the District of Columbia cannot supply fair and impartial jurors for his trial, Lang now offers a survey from Triton Polling and

Research (the "Triton survey") conducted by phone and "text to web" from January 4, 2023 to January 8, 2024.  ECF 143-1 at 1.[1]

To justify a transfer of venue from the district where the offense occurred, Lang must show extraordinary local prejudice that prevents the venire's impartiality.  *See Skilling v. United States*, 561 U.S 358, 378 (2010); *United States v. Webster*, 102 F.4th 471, 479 (D.C. Cir. 2024). "Prejudice across an entire jury pool can be presumed only in the extreme case, where prejudicial publicity so poisoned the proceedings that it was impossible for the accused to receive a fair trial by an impartial jury."  *Webster*, 102 F.4th at 479 (citations omitted); *see also United States v. Hutchinson, et al.*, 21-cr-447 (CJN), (ECF 240 at 5, Transcript of Video Status Conference, January 25, 2023 ("a presumption of prejudice attends only in the extreme case")). The Triton survey fails to show extraordinary local prejudice or the type of extreme case that warrants a presumption of prejudice.

Lang's Supplemental Memorandum emphasizes the survey's conclusion that a majority of District residents have favorable opinions of President Biden and unfavorable opinions of former President Trump.  ECF 143 at 4-5. From this, Lang concludes that such views raise "a significant inference of bias."  ECF 143 at 5. Yet neither the survey itself, ECF 143-1, nor its "Key Findings Draft," ECF 143-2, report this inference, and the opinions Lang objects to apparently do not rate inclusion as a "key" finding by the Triton survey's authors.  Neither President Biden nor former President Trump is charged or mentioned in the Second Superseding Indictment or any previous

---

[1] In contrast, a survey Lang cited in his previous motion was conducted over four days, from January 18, 2022 to January 21, 2022. *See* ECF 101-1 at 7, 11, 13 (citing a survey filed in *United States v. Garcia,* No. 21-cr-129 (ABJ)) (*see id*. at 54-1, pages 16-47, stating the dates of the survey in the page header).  The Triton survey does not address the impact of a 12-month survey period or explain whether survey results are meaningful eight months after the survey's conclusion.  The survey in *Garcia* was filed approximately one week after its conclusion.

2

indictment. Even if they were, the questions asked in the Triton survey did not address whether favor or disfavor for either individual was connected in any way to the events of January 6, 2021, as opposed to other factors unrelated to those events. The Triton survey does not explain how such attitudes have any bearing on attitudes towards Lang or the charges he confronts.

Insofar as Lang seeks to equate favorability or political views with bias towards this case or against Lang himself, the survey provides no grounds to support such a conclusion. More significantly, courts have consistently refused, even in highly reported prosecutions of political figures, to conclude that a juror's politics indicate bias. *Webster* forecloses arguments that the political make-up of the District of Columbia prevents a fair trial. 104 F.4th at 481. As a unanimous panel found in *Webster*, "the political inclinations of a populace writ large say nothing about an individual's ability to serve impartially in adjudicating the criminal conduct of an individual… , we have held that District juries could impartially adjudicate other criminal cases arising out of political matters, including Watergate." *Id*. Accordingly, attitudes towards politics in general or particular political figures provide no support for the transfer Lang demands. *See also Hutchinson, et al.*, Tr. at 5 ("The political persuasion of the area, which clearly means Democrat, is also not a reason to transfer venue. That argument has been rejected multiple times by the Court of Appeals, including when members of the Nixon administration were on trial") (internal citations omitted); *United States v. Stone*, 613 F.Supp.3d 1, 36-37 (D.D.C. 2020) (juror's negative comments and posts about then-President Trump did not demonstrate bias against defendant Roger Stone or an inability to be impartial when considering the charges against him), 38 (rejecting argument that if you do not like Donald Trump, you must not like Roger Stone).

Lang also uses the Triton survey to support his objection that District residents claim to have knowledge of the events of January 6, ECF 143 at 5-6, and view those events unfavorably,

3

*id*. at 9-13.  Once again, however, the Triton survey only refers generally to the events of January 6, and not to Lang or his case specifically.  Thus, it lacks a sufficient basis for this Court to presume prejudice throughout this district's jury pool or to support a change of venue.  As the D.C. Circuit explained:

> We expect jurors to view significant criminal events in their hometown with an unapproving eye, whether it is the January 6th attack on the Capitol, a murder, or an armed robbery spree. Generalized disapproval of criminal conduct—even the specific conduct at issue in a defendant's case—says nothing about a juror's ability to be impartial in deciding whether a particular individual committed a crime or not. What the Constitution forbids is for a juror to hold a firmly entrenched view about an *individual defendant's* guilt or innocence before the trial starts. *See Skilling*, 561 U.S. at 384 n.17, 391–392, 130 S.Ct. 2896 (emphasizing prejudicial impact of media coverage aimed at defendant over coverage of the criminal event); *United States v. Malmay*, 671 F.2d 869, 875–876 (5th Cir. 1982) (finding jury sufficiently impartial despite jurors' broad familiarity with alleged local vote-buying scheme because jury was relatively unfamiliar with defendant).

*Webster*, 104 F.4th at 480 (emphasis in original); *see also Hutchinson, et al.*, Tr. at 6 ("juror impartiality, of course, does not require complete ignorance").  The Triton survey's conclusions about the venire's knowledge or disapproval of the events of January 6th do not differ meaningfully from similar surveys that failed to support a change of venue or a presumption of prejudice.

Lang's Supplemental Memorandum offers no explanation for the decision to file it on August 15, 2024.  The assertions in that Memorandum concerning the United States House Select Committee on the January 6 Attack on the United States Capitol, ECF 143 at 9-10, highlight the Triton survey's outdated nature.  The Committee held a preliminary public hearing on July 27, 2021[2] and, after additional hearings, issued its final report on December 22, 2022.[3]  Nearly two

---

[2] *See, e.g,* https://web.archive.org/web/20220707145248/https://january6th.house.gov/legislation/hearings/law-enforcement-experience-january-6th (last checked Aug. 26, 2024).
[3] *See, e.g.,* https://www.govinfo.gov/app/details/GPO-J6-REPORT/context (last checked Aug. 26, 2024).

4

years have passed since the Select Committee's investigation concluded. As far back as January, 2023, while addressing arguments similar to those Lang makes about the Select Committee, this Court observed, "The January 6 Select Committee, which did generate some news coverage, obviously has ended its investigation, no longer exists, I think, and so the corresponding news coverage has slowed." *Hutchinson, et al.*, Tr. at 6. This Court concluded that the appropriate way to address such news coverage was through "rigorous and robust voir dire" rather than a transfer of venue. Neither Lang's original motion nor his Supplemental Memorandum identify any part of the Select Committee hearing that featured Lang, mentioned his name, or showed his image. There is no more reason now than there was in January, 2023, to treat the Select Committee and its hearings as a basis for presuming prejudice or changing the venue for Lang's trial.

As was the case in *Webster*, the Triton survey fails to answer "the essential question" of whether "the District's potential jurors can lay aside [their] impression or opinion" of Lang or the events of January 6th and "render a verdict based on the evidence presented in court." *Id*. at 480 (internal citations and quotation marks omitted). Accordingly, the Triton survey cannot support a presumption of prejudice. The survey and its conclusions also contradict the experience and observations of this Court. *Hutchinson*, Tr. at 7 (noting the experience of the bench in this district of having been "successful in selecting, as a result of again, a rigorous and robust voir dire, a panel of impartial, unbiased jurors" in January 6 cases).

The Supreme Court observed in *Skilling* that voir dire was "well suited to th[e] task" of probing the crime's "widespread community impact." *Id.* at 384. And the Court has said that "[i]t is fair to assume that the method we have relied on since the beginning"—*i.e.* voir dire—"usually identifies bias." *Patton v. Yount*, 467 U.S. 1025, 1038 (1984) (citing *United States v. Burr*, 25 F. Cas. 49, 51 (C.C.D. Va. 1807) (Marshall, C.J.)). Similarly, the D.C. Circuit has said that "voir

dire has long been recognized as an effective method of routing out [publicity-based] bias, especially when conducted in a careful and thoroughgoing manner." *In re Nat'l Broadcasting Co.*, 653 F.2d 609, 617 (D.C. Cir. 1981); *see United States v. Haldeman*, 559 F.2d 31, 63 (D.C. Cir. 1976 (en banc) (per curiam) ("[I]f an impartial jury actually cannot be selected, that fact should become evident at the voir dire.").

This Court should decline Lang's invitation to bypass voir dire based on an outdated survey that fails to address the "essential question" of the jury pool's bias, if any, towards the individual defendant charged. The Triton survey does not establish that traditional voir dire is inadequate to detect and eliminate biased individuals from any jury selected for this case. Accordingly, his motion to transfer venue should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:   */s/ Karen Rochlin*
KAREN ROCHLIN
DC Bar No. 394447
Assistant United States Attorney Detailee
U.S. Attorney's Office
Southern District of Florida
99 N.E. 4th Street
Miami, Florida  33132
(786) 972-9045
Karen.Rochlin@usdoj.gov

Craig Estes
Assistant U.S. Attorney Detailee
John Joseph Moakley Federal Courthouse
1 Courthouse Way
Boston, MA 02210
(617) 748-3100
Email: craig.estes@usdoj.gov