UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Case Number 1:21-cr-00053-CJN |
| EDWARD JACOB LANG, : | |
| : | |
| Defendant. : | |

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT LANG'S EMERGENCY MOTION FOR ACCESS TO VIDEO EDITING SOFTWARE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits that defendant Edward Jacob Lang's Motion For Access To Video Editing Software, ECF 161, should be denied. The motion is without legal merit, relying on abrogated rulings, inapplicable cases, and arguments that conflict with D.C. Circuit precedent. Lang has failed to provide factual support for his motion while his public statements contradict its assertions. The motion did not comply with this Court's explicit and repeated directive for the parties to confer prior to filing motions. The relief Lang seeks is unwarranted and unavailable at his current location.

Lang is properly and lawfully detained pending trial. He is represented by counsel, and as of this writing, has more than one attorney of record while an additional attorney is seeking to join Lang's defense team *pro hac vice*. Nevertheless, Lang demands access to video editing software so he can prepare exhibits for his trial. He has not cited a single authority supporting the proposition that a represented defendant who is detained prior to trial must be able to create or edit trial exhibits or that he must personally have access to editing software.

Instead, he cites *Bounds v. Smith*, 430 U.S. 817 (1977), *abrogated by Lewis v. Casey*, 518 U.S. 343 (1996), and *Rivera v. Monko*, 37 F.4th 909 (3d Cir. 2022) (ruling on qualified immunity). In *Bounds,* the Supreme Court addressed the right of convicted *pro se* defendants to access the courts and held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id*. at 828; *Lewis*, 518 U.S. at 346. Lang, however, is not a convicted inmate. Unlike most convicted prisoners, such as the movant in *Bounds*, he is not *pro se*. Lang's issue is not a lack of access to this Court. Even if Lang wished to analogize to *Bounds*, a decision inapplicable to his circumstances, *Bounds* does not require assistance from his custodians in any particular form, let alone the assistance Lang demands. As explained in *Lewis*, the ruling in *Bounds*:

> does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 at 355 (original emphasis). *See also Rivera,* 37 F.4th at 920-21 (a case cited by the defendant, ECF 161 at 4) explaining that *Lewis* restricted *Bounds* in important ways, requiring a prisoner to show actual injury and limiting "access-to-courts injury" to claims involving "direct or collateral attacks on a prisoner's conviction or sentence, or civil rights suits challenging the conditions of confinement." Lang has not shown an actual injury to his ability to gain access to this Court (which he can and does accomplish through counsel) that has caused a nonfrivolous or meritorious claim to fail, he is not attacking a conviction or sentence, and he is not litigating a

2

civil suit concerning conditions of confinement. While Lang provides no basis for this Court to apply *Bounds* or *Lewis* to his case, even if this Court were to do so, it would not support Lang's demand for a specific litigation tool in the form of software or otherwise.[1]

Lang's demand for video-editing software to prepare his defense in his criminal case falls instead within the scope of *United States v. Celis,* 608 F.3d 818, 840-41 (D.C. Cir. 2010) (rejecting argument that it was necessary to translate all discovery material for represented defendant who was detained and did not speak English). If a represented defendant has no right to review discovery material in a language she can understand, Lang cannot be entitled to tools for editing material that he can access, review, and comprehend. *Compare United States v. Krol*, 642 F.Supp.3d 28, 45 (D.D.C. 2022) (finding, in January 6 case, that limitations on represented and detained defendant's access to video evidence, while inconvenient, did not require defendant's release in order for defendant to participate in his own defense).

In prior filings, the United States has provided examples of Lang's claims that he has narrated, directed, or produced "documentaries" about the events of January 6, 2021. *See, e.g.,* ECF 127. This includes a film released in 2024 that leads the viewer "through Jake's entire day at the Capitol, and what it was like to be on the ground that day . . ." (post containing the quotation is reproduced at ECF 127 at 8, along with a screenshot from the trailer for the film called a "Jake Lang Documentary"). Lang has never denied his role in the creation of these films, which include excerpts from body-worn camera footage and other recordings from the breach of the U.S. Capitol. Lang has also never explained why he has been able to coordinate

---

[1] Lang quotes *Rivera* for the proposition that "a prisoner has a valid access-to-courts claim when he alleges that the denial of access to legal materials — before and/or during trial — caused a potentially meritorious claim to fail. *Rivera*, 37 F.4th 909." ECF 161 at 5. The trial in question in *Rivera*, however, was a *pro se* prisoner's post-conviction civil rights suit filed pursuant to 42 U.S.C. § 1983 and not a criminal prosecution of a represented defendant.

3

with others to produce his films but is somehow unable to work with defense counsel to prepare exhibits for his trial. The overwhelming majority of represented defendants charged because of the Capitol breach appear able to prepare for trial without personal use of video editing software. Lang has not explained how his case differs to an extent that requires a unique accommodation providing him with software that other defendants have done without.

Lang's emphasis on his desire to engage in hybrid representation, ECF 161 at 5, fails to distinguish him from other defendants or their counsel who apparently saw no need to move for provision of editing software. First, although this Court has expressed the inclination to grant Lang's motion for hybrid representation, the motion has not been granted yet. And even if it were, Lang has never offered a response to this Court's inquiry, made more than once, questioning why Lang cannot advise his counsel or other defense team members of his desired edits and have them implemented. *See, e.g.*, Order, ECF 135 at 3 ("But Lang can adequately communicate with his attorneys through email and in-person visits. And to the extent he wants to prepare specific video clips for use at trial, he can identify those clips and email instructions for preparing them to his attorneys.").

Moreover, even if the motion for hybrid representation is granted in the future, Lang will not be a *pro se* defendant. He has invoked his right to counsel and will continue to receive representation from counsel of his choice. Thus, he has delegated responsibility for decision making and management of his case to counsel. *United States v. Reynoso*, 38 F.4th 1083, 1095 (D.C. Cir. 2022) ("The invocation of the right to counsel involves a delegation of decision-making responsibility from the accused to his lawyer"). Lang does not explain why editing video is not a responsibility for his counsel to address or delegate to other members of the

defense team. Lang has never offered authority requiring that he must be the one to edit video and the United States is aware of no authority for such a proposition.

In fact, it appears that Lang's defense team has the ability to isolate relevant sections of longer videos or add highlights or annotations. For example, on November 15, 2024, Lang began to share defense exhibits with the prosecution. Lang has not completed his production of exhibits, and the United States is continuing to review what has been produced. While a large majority appear to be copies of government exhibits produced to the defense, other exhibits are not. Defense exhibits that did not originate with the government's production of exhibits include Defense Exhibit ("DX") 307, which appears to repeat the same segment from body-worn camera footage, first without alteration, then in slow motion, and then at normal speed with the addition of a box to highlight certain images. Lang's DX 334 is a video that begins with a caption added that states "original speed," repeats the same content in slow motion after an added caption that states "slow motion," and then repeats the same content with a caption added that states "analysis" and adds a box. DX 340 appears to consist of an enlarged segment from an open-source video bearing the logo "ABQ Raw." In addition to enlarging the footage, Lang's exhibit has added various captions (*e.g.*, "Jake Lang frantically tried to get the police to stop") and adds an arrow to indicate a particular police officer. Lang's trial exhibits produced to date do not reflect an inability to benefit from tools to edit software. A screenshot from DX 340 provides one example:



*Screenshot from a recording produced as DX 340 at the 24-second mark*

The alleged need at the center of Lang's motion therefore appears to be factually unsupported. And as a practical matter, the facility where Lang is now detained cannot support his request for editing software. The provision of such software may have been a possibility (but not necessarily a certainty) at the facility where Lang was previously housed under a program specific to his prior location. Lang did not pursue that opportunity when he had the chance, and his failure to do so should not result in an imposition on his current facility which, like most other detention facilities, it is not prepared to implement.[2] At most, Lang has described an inconvenience incidental to his lawful detention; however, the inconvenience he describes is far from insurmountable, was not so grave that Lang was motivated to pursue options available at his previous location, and does not warrant special measures ordered by this Court.

---

[2] Even at Lang's prior facility, which may permit his use of an air-gapped personal laptop if it is approved, under that institution's requirements, Lang would not have been allowed to keep the laptop, with or without approved editing software, in his cell. The personal laptop would have been securely stored in another location in the detention center outside of Lang's housing unit; Lang would have been escorted to and from that location; and time he could access the personal laptop would have been more limited than for other devices made available for discovery review.

Lang also claims he has not received certain materials in case-specific discovery, as opposed to receiving them from other sources, "suggesting a possible *Brady* Materials violation," ECF 161 at 6. Defense counsel never made any request pursuant to *Brady v. Maryland*, 363 U.S. 83 (1963) to the prosecution, and no attorney for the prosecution has failed to comply with such a request from Lang. Lang filed his motion the evening before the scheduled pretrial conference date without any attempt to confer with the prosecution. When the parties appeared before this Court on the following day, the prosecution invited opposing counsel to discuss any *Brady* claims;[3] as of this writing, opposing counsel has not done so.[4]

In *Brady*, the Supreme Court held that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment. *Id*. at 87. Material evidence favorable to the defendant means evidence creating a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995); *United States v. Williams-Davis*, 90 F.3d 490, 513-14 (D.C. Cir. 1996). There is, however, no general constitutional right to discovery in a criminal case, and *Brady* did not create one. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Tarantino*, 846 F.2d 1384, 1416 (D.C. Cir. 1988).[5] Lang's motion imagines that the United States has evidence that he attempted to rescue a rioter crushed by other rioters which the prosecution failed to disclose, and

---

[3] Transcript of Pretrial Conference, Criminal Action 1:21-0053 (D.D.C. Dec. 19, 2024) ("Tr.") at 52.
[4] Government counsel have also attempted to contact defense counsel, without success as of this writing.
[5] "*Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation." *United States v. Beasley*, 576 F.2d 626, 630 (5th Cir. 1978). Accordingly, at least one jurisdiction has treated *Brady* not as a source of any pretrial remedy, but instead as a requirement that only becomes a concern after trial. *See United States v. Scott*, 524 F.2d 465, 467 (5th Cir. 1975); *United States v. Garrett*, 283 F.3d 293, 302-04 (5th Cir. 2000) (Fish, J., concurring).

7

that such video would support a "defense of others"-style defense. *See also* Tr. at 24 (Lang arguing that prosecutors, who had supplied him with videos "leading to" this fact had not supplied him with body-worn camera footage showing his "hands on" the other rioter). At the November 19 pretrial conference, this Court ruled that Lang would be precluded from raising the affirmative defenses of self-defense and defense of others. Tr. at 17-21. Any such evidence would therefore not be admissible during his trial.

Courts will not infer the existence of *Brady* material based upon a defendant's speculation. Unless a defendant "is able to raise at least a colorable claim that the disputed material contained evidence favorable to him and material to his claim of innocence or to the applicable punishment," no *Brady* violation will be established. *Williams-Davis*, 429 U.S. at 514 (cleaned up). Not only has Lang failed to state a colorable claim, he cannot show evidence that efforts to rescue another rioter are material to his guilt or innocence in light of this Court's ruling that the evidence described in his motion will be excluded from his trial.

Finally, the material Lang describes as the basis for his *Brady* claim consists of footage Lang claims he saw when other detainees displayed it from evidence.com. Evidence.com is a platform containing discovery materials that the United States has made available to defense counsel in January 6 cases. Defense counsel for Lang have access to evidence.com or can arrange to obtain it. Whether Lang himself has seen the evidence from his counsel or from any other source, if he knew or should have known of such evidence, the evidence is not suppressed for *Brady* purposes. *E.g.*, *Ellsworth v. Warden*, 333 F.3d 1, 6 (1st Cir. 2003); *United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982); *United States v. Griggs*, 713 F.2d 672, 674 (11th Cir. 1983). Here, Lang not only has personal knowledge of his conduct on January 6, his motion acknowledges that the video footage he claims was not produced is in fact available on the

discovery platform that the United States has made available to all January 6 counsel (including his own)—and that he himself has viewed the footage on that very platform. Apart from Lang's own knowledge of his own conduct on January 6, he has knowledge of the footage he complains about because the United States has provided access to evidence.com to defense counsel and because Lang has seen the evidence.com footage from others.

Even if this Court were inclined to consider Lang's *Brady* violation claim, the accusation is unfounded and it does not support Lang's demand for personal access to evidence.com or his demand for editing software. Lang's counsel do have such access, and can arrange to edit any videos obtained through evidence.com.[6] Lang's meritless claim of a *Brady* violation does not support his demand for access to either evidence.com or editing software.

In sum, his motion should be denied.[7]

---

[6] Defendants held as pretrial detainees at the D.C. Jail may obtain their own access to the evidence.com platform if one of the following three things has occurred: a) the inmate has signed Attachment A to the protective order; b) the inmate has stated on the record in court that s/he has read the protective order, reviewed it with his/her attorney, understands the protective order, and agrees to abide by it; or c) a defense attorney has represented to the assigned prosecutors in writing that they have reviewed the protective order with their client and have been authorized to sign Attachment A on their client's behalf and the defense attorney also agrees that at the next scheduled hearing in which the client is present, s/he will put on the record that s/he signed Attachment A on the client's behalf after reviewing the protective order with him or her. According to his counsel, Lang has rejected each of these three options. No order providing evidence.com access should issue from this Court, since Lang has chosen to forego access by refusing to meet the requirements for his use of the platform, a detail not addressed in his motion.

[7] During the November 19, 2024 pretrial conference, this Court indicated the instant response should be filed "right before Thanksgiving or in the two weeks generally required right after Thanksgiving". Tr. at 81. Although most of its response was drafted within a few days of the November 19 hearing, the United States had hoped to, and eventually did, receive input from other sources pertaining to Lang's location which could have been affected by the new trial date; the prosecution additionally hoped to confer further with opposing counsel. Accordingly, the undersigned did not finalize the response and file it in the days after the hearing and then received an unexpected increase in assignments with impending deadlines and did not adequately focus on the deadline for this response. Accordingly, the undersigned asks this Court for leave to file the instant response out-of-time.

                Respectfully submitted,

                MATTHEW M. GRAVES
                UNITED STATES ATTORNEY
                D.C. Bar Number 481052

By:    *s/Karen Rochlin*
                Karen Rochlin
                Assistant United States Attorney Detailee
                DC Bar No. 394447
                99 N.E. 4th Street
                Miami, Florida 33132
                (786) 972-9045
                Karen.Rochlin@usdoj.gov